## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

1. MALCOLM NIGEL SCOTT, and
2. DEMARCHOE CARPENTER,

        Plaintiffs,

v.

1. CITY OF TULSA, OKLAHOMA,
2. MIKE HUFF,
3. GARY MEEK,
4. RONALD PALMER,
5. RANDALL W. SOLOMON, and
6. JIM CLARK,

        Defendants.

Case No.: 17-CV-400-TCK-FHM

*The Honorable Terence C. Kern*

## PLAINTIFFS' RESPONSE TO DEFENDANT MIKE HUFF'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiffs, Malcolm Nigel Scott ("Mr. Scott") and Demarchoe Carpenter ("Mr. Carpenter") (collectively, "Plaintiffs"), submit their Response to the Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") filed by Defendant Mike Huff ("Mr. Huff") and respectfully request that the Court deny the same.

# TABLE OF CONTENTS

*INTRODUCTION* ............................................................................................ *1*

*ARGUMENT AND AUTHORITY* ................................................................. *3*

I.  Legal Standard ........................................................................................ 3

II.  The TAC clearly sets forth enough detail to determine which claims are being brought against Mr. Huff. ...................................................................... 4

III.  Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds. ........................................................................... 7

IV.  Mr. Huff knew or reasonably should have known that his conduct would lead to the deprivation of Plaintiffs' constitutional rights. ............... 15

V.  Plaintiffs have adequately pleaded a negligence claim against Mr. Huff under general Oklahoma tort law................................................................. 16

VI.  Plaintiffs are entitled to an award of punitive damages. .................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 3, 4

*Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008)........................................ 7

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) ............. 3

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ............................................. 5

*Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) ............... 6

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .................................. 3, 5

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013) ...................................................................................................................... 8

*Soto ex rel. Estate of Jimenez v. Bd. of Cnty Comm'rs*, 748 Fed. Appx. 790 (10th Cir. 2018) ...................................................................................................... 7

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .................................................... 4

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 3

**INTRODUCTION**

Guilty until proven innocent—Malcolm Scott and Demarchoe Carpenter spent nearly twenty (20) years in prison for a crime they did not commit based on the grievously unconstitutional misconduct of the Defendants named herein. [Third Am. Compl., Doc. No. 87, ¶ 2]. On September 10, 1994, Karen Summers was murdered by Michael Wilson at a party in Tulsa, Oklahoma. [*Id.* ¶ 30]. Almost immediately, the Tulsa Police Department ("TPD") named Plaintiffs as the primary suspects based on falsified information from inside the TPD. [*Id.* ¶¶ 24-25]. Indeed, witness statements taken shortly after the murder did nothing to bolster the TPD's weak position that Plaintiffs had anything to do with the murder of Karen Summers. [*Id.* ¶¶ 32, 39, 57].

Only after the TPD, through Defendants Gary Meek ("Mr. Meek"), Mr. Huff, Randall W. Solomon ("Mr. Solomon"), and Jim Clark ("Mr. Clark") (collectively, the "Officer Defendants"), responded to the murder scene to recover evidence and conduct interviews, using coercive tactics to illicit false information, were Plaintiffs actually (and falsely) implicated in the shooting. [*Id.* ¶¶ 31-33, 35-36, 41-43, 58-59]. In fact, the evidence overwhelmingly pointed to Michael Wilson at all times during the investigation of the murder of Karen Summers. [*Id.* ¶¶ 45-49, 83]. Complicit in the scheme to convict Plaintiffs at all costs, the Officer Defendants ignored the evidence linking

Michael Wilson to the crime and continued in their malicious pursuit of Plaintiffs as the primary suspects. [*Id.* ¶ 50, 62-64].

As a direct result of the unconstitutional tactics employed by the Officer Defendants, Plaintiffs were each convicted of one count of first-degree murder, two counts of shooting with intent to kill, and one count of using a vehicle to discharge a weapon. [*Id.* ¶ 69]. Over two decades later, on May 13, 2016, the Tulsa County District Court granted Plaintiffs' Applications for Post-Conviction Relief on the basis of actual innocence. [*Id.* ¶ 96]. The Oklahoma Court of Criminal Appeals affirmed that order, finding that Plaintiffs were "factually innocent of the crime for which they were convicted" and that such convictions were based on weak evidence and coerced witness testimony. [*Id.* ¶¶ 98-100]. Plaintiffs were subsequently released from prison after spending most of their adult lives behind bars.

On February 8, 2019, Plaintiffs filed their Third Amended Complaint ("TAC") alleging constitutional and state law violations by the Officer Defendants; the City of Tulsa, Oklahoma (the "City"); and Defendant Ronald Palmer ("Mr. Palmer"). Mr. Huff filed his Motion to Dismiss the TAC on February 22, 2019. For the reasons set forth herein, Plaintiffs have stated plausible claims for relief against Mr. Huff, and the Motion to Dismiss should be denied.

# ARGUMENT AND AUTHORITY

## I.     Legal Standard

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A complaint need not set forth "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "The [factual] allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "It is not necessary for the complaint to contain factual allegations     so     detailed     that     all     possible     defenses     would     be

obviated." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).

When reviewing a complaint for failure to state a claim, a court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## II.   The TAC clearly sets forth enough detail to determine which claims are being brought against Mr. Huff.

To avoid duplicative briefing, Plaintiffs adopt and incorporate by reference the legal standards regarding improper lumping as briefed in their response to the City's Motion to Dismiss the Third Amended Complaint.

The TAC provides more than enough notice of the claims brought against each Defendant. The facts contained in the body of the TAC when read together with each individual claim for relief provide sufficient context to put Mr. Huff on notice of the claims brought against him. [*E.g.*, Third Am. Compl., Doc. No. 87, ¶¶ 46, 63-64 (describing Mr. Huff's deliberate/reckless omission of exculpatory evidence by declining to conduct forensic testing on the maroon Ford Taurus and the Lorcin .380, both found in Michael Wilson's possession)].

As stated in Plaintiffs' response to the City's Motion to Dismiss, it is permissible to use the collective term "defendants" so long as the complaint's

allegations make a "distinction as to what acts are attributable to whom

. . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A cursory review of Counts I through III shows allegations of specific misconduct that, when reading with the facts previously alleged in the TAC, clearly point to specific Defendants. [*E.g.*, Third Am. Compl., Doc. No. 87, ¶¶ 196, 203 ("failure to conduct basic forensic testing of physical evidence . . . .")]. Count III references Mr. Huff by name. [*Id.* at ¶¶ 209-211]. It is unclear how Mr. Huff is unable to interpret such specific statements as including him within those causes of action.

Count IV is more general, but when read in conjunction with the allegations contained in the body of the TAC, is clearly based on actions by the individual Officer Defendants:

> [B]y their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so. [*Id.* at ¶ 216].

Logically, only the individual Officer Defendants, including Mr. Huff, can be described as acting "under color of law." Counts V (*Monell* Claim/Municipal Liability) and VIII (Respondeat Superior) expressly identify the City as the culpable party [*id.* at ¶¶ 219-22, 240-410], and Count VI as it is labeled names the "Individual Defendants." [*Id.* at Count VI]. Finally, the Supervisory

Liability Claim is the only claim that is being brought against Mr. Palmer, and he is so named therein specifically.

While the TAC does use the collective term "defendants," it is not so devoid of fact or based on such generalities that it renders Mr. Huff completely without any inclination of what claims are being brought against him. The allegations in the TAC are markedly more detailed than those in the complaint at issue in *Robbins*. There, the Tenth Circuit found that the complaint failed to isolate the unconstitutional conduct of the defendants. 519 F.3d at 1249. The Court reasoned that the entire complaint contained allegations referencing the "Defendants" without ever identifying which defendant engaged in what activity. *Id.* ("The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights.").

Such is not the case here. Mr. Huff need not speculate which claims apply to him. Indeed, with some diligence, Mr. Huff is capable of reviewing the allegations in the TAC to determine each instance of wrongdoing he is accused of. *See VanZandt v. Okla. Dept. of Human Svcs.*, 276 Fed. Appx. 843, 848 (10th Cir. 2008) (finding allegations more than sufficient where the complaint named specific defendants, gave a detailed factual basis for the alleged misconduct, and linked the misconduct to the end result). Accordingly,

Plaintiffs have not failed to comply with notice pleading requirements, and the Motion to Dismiss should be denied.

III. **Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds.**

For efficiency and to avoid the unnecessary recitation of legal standards already briefed in Plaintiffs' response to Mr. Meek's motion to dismiss the TAC, Plaintiffs incorporate the standards and case law concerning qualified immunity and clearly established constitutional rights.

*1. Brady Violations and Substantive Due Process*

The first two constitutional claims in the TAC are for Fourteenth Amendment violations under *Brady v. Maryland*, 371 U.S. 812 (1962) and violations of Plaintiffs' substantive due process rights. Plaintiffs allege that Mr. Huff deliberately/recklessly omitted and suppressed exculpatory evidence through the failure to conduct basic forensic testing of physical evidence (i.e., the maroon Ford Taurus and Lorcin .380), which deprived them of their right to a fair trial. [Third Am. Compl., Doc. No. 87, ¶¶ 196-99, 203, 207]. As outlined in Plaintiffs' response to Mr. Meek's motion to dismiss, these rights are clearly established under U.S. Supreme Court and Tenth Circuit precedent.

Mr. Huff relies primarily on the Tenth Circuit's decision in *Parker v. City of Tulsa*, 745 Fed. Appx. 79 (10th Cir. 2018), to support his argument that the TAC fails to state a claim for constitutional violations. First, it is important to note that the Tenth Circuit's decision in *Parker* is unpublished, and the footnote cited by Mr. Huff is dicta. Second, the cited footnote appears to conflict with prior published Tenth Circuit case law. *See Ward v. Anderson*, 494 F.3d 929, 937-38 (10th Cir. 2007) (analyzing a claim of inadequate and improper investigation under the substantive due process "shocks the conscience" standard).

Setting this issue aside, the proper analysis for Plaintiffs' claim is found in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004). In *Pierce*, the Court noted the Supreme Court has long "held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction . . . *or withholds exculpatory evidence* from the defense." *Id.* at 55-56 (internal citations omitted) (emphasis added). Applying this analysis to the parties in *Pierce*, the Court announced that "an official in [defendant's] position in 1986 had fair warning that the deliberate or reckless falsification *or omission of evidence* was a constitutional violation—even though the arrest had already occurred." *Id.* at 56-57 (emphasis added); *see also Moldowan v. City of Warren*, 578 F.3d 351, 391 (6th Cir. 2009) (discussing pre-1994 Supreme Court precedent recognizing that a citizen's due process right to present a

complete defense "may impose a duty on the state to preserve evidence where such evidence might be expected to play a significant role in the suspect's defense") (internal quotation marks omitted).

The TAC contains extensive detail outlining Mr. Huff's deliberate and/or reckless suppression/omission of exculpatory evidence, which would have demonstrated Plaintiffs' innocence. For example:

- Michael Wilson was known to the TPD to be a member of the Bloods street gang [Third Am. Compl., Doc. No. 87, ¶ 20];

- On September 7, 1994, Michael Wilson was shot in the leg while at a friend's house by members of the Hoover Crip street gang [*id.*];

- That same day Michel Wilson rented a **red/maroon Ford Taurus** from Enterprise Rental Car [id. at ¶ 21].

- Karen Summers' murder took place at a Crip party three days later on September 10, 1994 [*id.* at ¶ 30];

- The day after the shooting, Mr. Huff found the maroon Ford parked in Michael Wilson's driveway, and a Lorcin .380 in Michael Wilson's possession [*id.* at ¶ 45];

- The maroon Ford Taurus matched the description of the vehicle used during Karen Summers' murder [*id.* at ¶ 45];

- Michael Wilson admitted to driving the maroon Ford on September 10, 1994 [*id.* at ¶ 47];

- Michael Wilson admitted he did not loan the maroon Ford or the Lorcin .380 to anyone else [*id.* at ¶ 48];

- Michael Wilson was not arrested or charged at the time that Mr. Huff found him in possession of the car and murder weapon nor after Mr. Meek interviewed him at the TPD [*id.* at 48];

▪ Mr. Huff did not seize the maroon Ford (a rental car), and thus no testing for fingerprints or gunpowder residue was ever conducted [*id.* at ¶ 46];

▪ Mr. Huff did not test the Lorcin .380 for fingerprints [*id.*];

▪ The Lorcin .380 was determined to be the murder weapon [*id.* at ¶ 49];

▪ Mr. Scott was arrested and charged on September 10, 1994, and Mr. Carpenter was arrested and charged on September 11, 1994 [*id.* at ¶ 62];

▪ The Karen Summers murder case was closed by Detective Meek before the results of the ballistics were even known [id. at ¶ 62];

▪ There was never any physical or forensic evidence linking Plaintiffs to the murder, and Mr. Huff (along with the other Officer Defendants) deliberately chose to ignore the evidence pointing towards Michael Wilson's guilt [*id.* at ¶ 66];

▪ The only evidence tying Plaintiffs to the murder was the coerced and falsified statements of Kenneth Price and Rashun Williams [*id.* at ¶ 68].

▪ Plaintiffs are factually innocent of the crime for which they were charged [*id.* at ¶ 4].

Using the analysis outlined in *Pierce*, Mr. Huff deliberately and/or recklessly omitted exculpatory evidence that could have been used by Plaintiffs to present a complete defense at their criminal trial. The facts alleged in the TAC demonstrate that Mr. Huff omitted this evidence to fit the Officer Defendants' incorrect theory of the case—that Plaintiffs were responsible for Karen Summers murder. The fact that Michael Wilson was subsequently

charged and given a favorable deal—a fact that is not within the four corners of the TAC and is irrelevant for 12(b)(6) purposes—does not protect Mr. Huff from Plaintiffs' plausible claim for relief. It simply demonstrates how Mr. Huff's omission of key evidence diverted the legal system's attention away from the actual murderer, Michael Wilson. The allegations presented in the TAC are sufficient to state a claim for constitutional violations against Mr. Huff.

### 2. *Malicious Prosecution*

For efficiency and to avoid the unnecessary recitation of legal standards already briefed in Plaintiffs' response to Mr. Meek's motion to dismiss the TAC, Plaintiffs incorporate the standards and case law concerning malicious prosecution.

The TAC sets out the numerous wrongs employed by the Officer Defendants, including Mr. Huff, to procure wrongful convictions of Plaintiffs for a crime they were known not to commit. The bulk of evidence against Plaintiffs during their criminal trial was the false testimony of eyewitnesses placing them in the maroon car. [Third Am. Compl., Doc. No. 87, ¶ 68]. There was never any physical evidence linking Plaintiffs to the crime. [*Id.* at ¶ 66]. The only witness testimony directly linking Plaintiffs to the crime was coerced. The TAC alleges that Mr. Huff found both the maroon Ford and the Lorcin .380 in Michael Wilson's possession and failed to conduct forensic testing to uncover what he knew would be evidence linking Michael Wilson

and not Plaintiffs to the crime. This deliberate omission was done with the sinister motive of convicting Plaintiffs despite their innocence. Mr. Huff's unconstitutional misconduct directly lead to Plaintiffs' wrongful detention and incarceration, which lacked probable cause, and Plaintiffs sustained damages. [*Id.* at ¶¶ 209-214]. Thus, the facts in the TAC concerning malicious prosecution, taken in a light most favorable to the Plaintiffs, set forth a constitutional violation.

### 3. Failure to Intervene

The failure of a law enforcement officer to intervene to prevent another law enforcement official's constitutional misconduct was clearly established as early as June 1992. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).

The TAC alleges that "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so." [Third Am. Compl., Doc. No. 87, ¶ 216]. For example, Mr. Huff knew that the maroon Ford and the Lorcin .380 were found in Michael Wilson's possession the day after the shooting. [*Id.* at ¶ 45]. He also knew that forensic testing, a common law enforcement technique to obtain exculpatory evidence, would likely implicate Michael Wilson and not Plaintiffs in the murder of Karen Summers. [*Id.* at ¶ 46]. Rather than order testing himself or request that Mr. Meek conduct the

testing, he did nothing. He then failed retain possession of the car to preserve the evidence for Plaintiffs trial.

The only facts necessary to state a claim for failure to intervene are the factual allegations suggesting Mr. Huff could have prevented or stopped the violation of Plaintiffs' constitutional rights. *See Estate of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014) (holding that to survive summary judgment on a failure to intervene claim, plaintiffs need only present "evidence suggesting that [the Defendants] could have prevented or stopped" the unconstitutional misconduct). Plaintiffs have more than satisfied their pleading obligation and have thus stated a claim for failure to intervene against Mr. Huff sufficient to survive dismissal.

### 4. Civil Conspiracy to Violate Constitutional Rights

Allegations of conspiracy may form the basis of a § 1983 claim. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). To survive a motion to dismiss, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Id.* More specifically, a plaintiff must allege (1) a conspiracy; (2) to deprive plaintiff of constitutional rights; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

The TAC does more than allege conclusory allegations of conspiracy. Plaintiffs allege that the Officer Defendants "acting within the

scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive the Plaintiffs of their constitutional rights, including their rights to due process and to a fair trial . . . ." [Third Am. Compl., Doc. No. 87, ¶ 224]. The allegation is supported by facts in the TAC such as Mr. Clark's lie about pulling Plaintiffs over in the maroon Ford (when they were actually pulled over in a brown Oldsmobile), a lie repeated by Mr. Meek in a Prosecution Report [*id.* at ¶¶ 24-25]; Mr. Huff and Mr. Meek's joint decision to leave potentially exculpatory physical evidence untested despite having obtained more than enough information to implicate Michael Wilson and not Plaintiffs [*id.* at ¶¶ 46-51, 63-64]; Mr. Meek's closing of the case based on what he knew to be false testimony procured by himself and Mr. Solomon and prior to receiving ballistics testing on the gun found in Michael Wilson's possession [*id.* at ¶ 62].

Mr. Huff, in concert with the other Officer Defendants, chose to ignore the plain evidence pointing to Michael Wilson as the murderer of Karen Summers. Rather, they decided at the outset of the case that Plaintiffs were their target suspects and bent the evidence to achieve the desired result— conviction of Plaintiffs for murder. Drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient to state a claim for civil conspiracy to violation Plaintiffs' constitutional rights. *Compare with Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)

(finding that the plaintiff's conclusory allegations that Law School faculty met with certain administrators during an investigation without more detail regarding whether the faculty members were even aware of the investigation did not support a claim of conspiracy).

## IV. Mr. Huff knew or reasonably should have known that his conduct would lead to the deprivation of Plaintiffs' constitutional rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Individual defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.").

As established in Section III above, the TAC sufficiently alleges that Mr. Huff violated Plaintiffs' constitutional rights while acting under color of

state law.  The TAC goes further to allege that Mr. Huff knew or reasonably should have known that his actions would lead to the deprivation of Plaintiffs' constitutional rights.  Mr. Huff certainly cannot argue that in 1994, as a veteran of the TPD, that he did not reasonably know that purposefully ignoring clear evidence exculpating Plaintiffs and implicating another suspect could violate Plaintiffs' constitutional rights and result in wrongful convictions.

The facts in the TAC, taken as true, show that Mr. Huff was aware of and participated in the failure to preserve and suppression of exculpatory evidence, which, if pursued, would have eliminated Plaintiffs as suspects in the murder of Karen Summers.  But for Mr. Huff's unlawful conduct, Plaintiffs would never had been convicted and wrongfully incarcerated for nearly twenty (20) years.  *See Martinez*, 697 F.3d at 1255 (citing *Trask v. Franco*, 446 F.3d 1036, 1046-47 (10th Cir. 2006)).  Thus, the TAC alleges plausible claims for constitutional violations by Mr. Huff individually.

## V.    Plaintiffs have adequately pleaded a negligence claim against Mr. Huff under general Oklahoma tort law.

Plaintiffs incorporate by reference their argument contained in their response to the Mr. Meek's motion to dismiss regarding the negligence claim.  For the same reasons explained there, the TAC sufficiently alleges an

alternative theory for negligent wrongful conviction against Mr. Huff, and the claim was timely filed within the two-year statute of limitations.

## VI.   Plaintiffs are entitled to an award of punitive damages.

"Punitive damages are available in § 1983 actions" and will be awarded when "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983). "The focus must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Id.* Plaintiffs allegations that the Defendants "conduct, acts and/or omissions alleged [in the TAC] constitute reckless or callous indifference to Plaintiffs' federally protected rights" are adequately supported by the narrative allegations contained in the TAC as outlined herein as well as in Plaintiffs' responses to the motions to dismiss filed by the City, Mr. Meek, and Mr. Palmer.


## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny the City's Motion.

March 29, 2019                    Respectfully submitted,

                                 /s/ Emily S. Eleftherakis
                                 John W. Coyle, III
                                 W. Brett Behenna
                                 Coyle Law Firm
                                 125 Park Avenue, First Floor
                                 Oklahoma City, OK 73102
                                 Telephone: (405) 232-1988
                                 Facsimile: (405) 272-9859
                                 jc@coylelaw.com
                                 bb@coylelaw.com

                                 Michael Leon Brooks
                                 Brooks Law Firm
                                 7100 N. Classen Blvd., Ste. 300
                                 Oklahoma City, OK 73116
                                 Telephone: (405) 840-1066
                                 Facsimile: (405) 843-8446
                                 michael.brooks@brookslawok.com

                                 Emily S. Eleftherakis
                                 Emily S. Eleftherakis, PLLC
                                 7100 N. Classen Blvd., Ste. 303
                                 Oklahoma City, OK 73116
                                 Telephone: (405) 254-5097
                                 Facsimile: (405) 212-4459
                                 emily@eleflaw.com

                                 -and-

                                 Joseph M. Norwood
                                 Norwood Law Office
                                 1717 Cheyenne Ave.
                                 Tulsa, OK 74119
                                 Telephone: (918) 582-6464
                                 Facsimile: (918) 582-7830

                                 *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2019, I filed the attached document with the Clerk of Court for the Northern District of Oklahoma. A copy of this Motion was provided via electronic filing to Defendants' counsel on the same day it was filed.


/s/ Emily S. Eleftherakis
Emily S. Eleftherakis