## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

1. MALCOLM NIGEL SCOTT, and
2. DEMARCHOE CARPENTER,

        Plaintiffs,

v.

1. CITY OF TULSA, OKLAHOMA,
2. MIKE HUFF,
3. GARY MEEK,
4. RONALD PALMER,
5. RANDALL W. SOLOMON, and
6. JIM CLARK,

        Defendants.

Case No.: 17-CV-400-TCK-FHM

*The Honorable Terence C. Kern*

## PLAINTIFFS' RESPONSE TO DEFENDANT GARY MEEK'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiffs, Malcolm Nigel Scott ("Mr. Scott") and Demarchoe Carpenter ("Mr. Carpenter") (collectively, "Plaintiffs'), submit their Response to the Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") filed by Defendant Gary Meek ("Mr. Meek"), and respectfully request that the Court deny the same.

# TABLE OF CONTENTS

*INTRODUCTION* ............................................................................. *1*

*ARGUMENT AND AUTHORITY* .............................................. *3*

   **I.  Legal Standard** ..................................................................... 3

   **II.  The Motion to Dismiss includes impermissible factual support that is outside the four-corners of the TAC.** .......................................... 4

   **III.  The TAC clearly sets forth enough detail to determine which claims are being brought against Mr. Meek.** .......................................... 5

   **IV.  Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds.** ..................................................................... 9

   **V.  Mr. Meek knew or reasonably should have known that his conduct would lead to the deprivation of a Plaintiffs' constitutional rights.** ..................................................................... 19

   **VI.  Plaintiffs have adequately pleaded a negligence claim against Mr. Meek under general Oklahoma tort law.** ....................................... 20

   **VII.  Plaintiffs are entitled to an award of punitive damages.** .......... 23

*CONCLUSION* ............................................................................. *24*

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 3, 4

*Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008)....................................... 7

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) ............. 3

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ............................................ 5

*Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) ............... 6

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .................................. 3, 5

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013) ................................................................................................................ 8

*Soto ex rel. Estate of Jimenez v. Bd. of Cnty Comm'rs*, 748 Fed. Appx. 790 (10th Cir. 2018) .................................................................................................. 7

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ................................................... 4

**Rules**

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 3

## INTRODUCTION

Guilty until proven innocent—Malcolm Scott and Demarchoe Carpenter spent nearly twenty (20) years in prison for a crime they did not commit based on the grievously unconstitutional misconduct of the Defendants named herein. [Third Am. Compl., Doc. No. 87, ¶ 2]. On September 10, 1994, Karen Summers was murdered by Michael Wilson at a party in Tulsa, Oklahoma. [*Id.* ¶ 30]. Almost immediately, the Tulsa Police Department ("TPD") named Plaintiffs as the primary suspects based on falsified information from inside the TPD. [*Id.* ¶¶ 24-25]. Indeed, witness statements taken shortly after the murder did nothing to bolster the TPD's weak position that Plaintiffs had anything to do with the murder of Karen Summers. [*Id.* ¶¶ 32, 39, 57].

Only after the TPD, through Defendants Mr. Meek, Mike Huff ("Mr. Huff"), Randall W. Solomon ("Mr. Solomon"), and Jim Clark ("Mr. Clark") (collectively, the "Officer Defendants"), responded to the murder scene to recover evidence and conduct interviews, using coercive tactics to illicit false information, were Plaintiffs actually (and falsely) implicated in the shooting. [*Id.* ¶¶ 31-33, 35-36, 41-43, 58-59]. In fact, the evidence overwhelmingly pointed to Michael Wilson at all times during the investigation of the murder of Karen Summers. [*Id.* ¶¶ 45-49, 83]. Complicit in the scheme to convict Plaintiffs at all costs, the Officer Defendants ignored the evidence linking

Michael Wilson to the crime and continued in their malicious pursuit of Plaintiffs as the primary suspects.  [*Id.* ¶ 50, 62-64].

As a direct result of the unconstitutional tactics employed by the Officer Defendants, Plaintiffs were each convicted of one count of first-degree murder, two counts of shooting with intent to kill, and one count of using a vehicle to discharge a weapon.  [*Id.* ¶ 69].  Over two decades later, on May 13, 2016, the Tulsa County District Court granted Plaintiffs' Applications for Post-Conviction Relief on the basis of actual innocence.  [*Id.* ¶ 96].  The Oklahoma Court of Criminal Appeals affirmed that order, finding that Plaintiffs were "factually innocent of the crime for which they were convicted" and that such convictions were based on weak evidence and coerced witness testimony. [*Id.* ¶¶ 98-100].  Plaintiffs were subsequently released from prison after spending most of their adult lives behind bars.

On February 8, 2019, Plaintiffs filed their Third Amended Complaint ("TAC") alleging constitutional and state law violations by the Officer Defendants; the City of Tulsa, Oklahoma (the "City"); and Defendant Ronald Palmer ("Mr. Palmer").  Mr. Meek filed his Motion to Dismiss the TAC on February 22, 2019.  For the reasons set forth herein, Plaintiffs have stated plausible claims for relief against Mr. Meek, and the Motion to Dismiss should be denied.

# ARGUMENT AND AUTHORITY

## I.     Legal Standard

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A complaint need not set forth "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "The [factual] allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "It is not necessary for the complaint to contain factual allegations     so     detailed     that     all     possible     defenses     would     be

obviated." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).

When reviewing a complaint for failure to state a claim, a court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## II.    The Motion to Dismiss includes impermissible factual support that is outside the four-corners of the TAC.

As a preliminary matter, the Motion to Dismiss includes references to and arguments based on various extraneous facts and information outside the four-corners of the TAC. Rather than arguing that the facts as alleged in the TAC are insufficient as a matter of law, Mr. Meek urges the Court to consider such additional information in its review of the Motion to Dismiss, demonstrating the need to reach beyond the TAC's allegations to support his argument for dismissal. [*See, e.g.*, Mot. to Dismiss, Doc. No. 90 at p. 7 (referencing Kenneth Price trial testimony); p. 8 (discussing the arrest of Michael Wilson and subsequent plea agreement with the Tulsa District Attorney's Office); p. 9 (arguing why Mr. Meek's case closure was reasonable and what "closure" means)].

Courts have made clear that this type of argument is improper in a Rule 12(b)(6) motion: "[t]he court's function on a Rule 12(b)(6) motion is not to weigh

potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999); s*ee also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." (internal quotation marks omitted)); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) ("The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."). Void of the extraneous arguments beyond the scope of a proper Rule 12(b)(6) motion, Mr. Meek cannot show that the TAC fails to state plausible claims for relief.

## III. The TAC clearly sets forth enough detail to determine which claims are being brought against Mr. Meek.

To avoid duplicative briefing, Plaintiffs adopt and incorporate by reference the legal standards regarding improper lumping as briefed in their response to the City's Motion to Dismiss the Third Amended Complaint.

The TAC provides more than enough notice of the claims brought against Mr. Meek. The facts contained in the body of the TAC when read together with each individual claim for relief provide sufficient context to put Mr. Meek on notice of the claims brought against him. A simple review of the TAC reveals, among other bad acts, the following specifically pled misconduct:

- Mr. Clark and Mr. Solomon falsified information in police reports which was later incorporated into a Prosecution Report endorsed by Mr. Meek with deliberate indifference to the truth [*id.* at ¶¶ 24-25, 32-33, 57-59];

- Mr. Meek coerced false testimony from Kenneth Price and Rashun Williams [*id.* at ¶¶ 36-38, 41-44, 93];

- Mr. Meek and Mr. Huff failed to collect exculpatory evidence by declining to conduct forensic testing on the maroon Ford Taurus and the Lorcin .380, both found in Michael Wilson's possession [*id.* at ¶¶ 46, 63-64];[1] and

- The Officer Defendants, including Mr. Meek, failed to disclose exculpatory reports to Plaintiffs' criminal trial attorneys [*id.* at ¶ 92].

As stated in Plaintiffs' response to the City's Motion to Dismiss, it is permissible to use the collective term "defendants" so long as the complaint's allegations make a "distinction as to what acts are attributable to whom . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A

---

[1] The constitutionality of failing to collect exculpatory evidence is developed more fully in Plaintiffs' Response to Mr. Huff's Motion to Dismiss the TAC.

cursory review of Counts I through III show allegations of specific misconduct by individually-named Defendants. [Third Am. Compl., Doc. No. 87, ¶¶ 189-214]. It is unclear how Mr. Meek is unable to interpret such specific statements as including him within those causes of action.

Count IV is more general, but when read in conjunction with the allegations contained in the body of the TAC, is clearly based on actions by the individual Officer Defendants:

> [B]y their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

[*Id*. at ¶ 216].

Logically, only the individual Officer Defendants (not the City) can be described as acting "under color of law." Counts V (*Monell* Claim/Municipal Liability) and VIII (Respondeat Superior) expressly identify the City as the culpable party [*id*. at ¶¶ 219-22, 240-410], and Count VI as it is labeled names the "Individual Defendants." [*Id*. at Count VI]. Finally, the Supervisory Liability Claim is the only claim that is being brought against Mr. Palmer, and he is so named therein specifically.

While the TAC does use the collective term "defendants," it is not so devoid of fact or based on such generalities that it renders Mr. Meek completely

without any inclination of what claims are being brought against him. The allegations in the TAC are markedly more detailed than those in the complaint at issue in *Robbins*. There, the Tenth Circuit found that the complaint failed to isolate the unconstitutional conduct of the defendants. 519 F.3d at 1249. The Court reasoned that the entire complaint contained allegations referencing the "Defendants" without ever identifying which defendant engaged in what activity. *Id.* ("The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights.).

Such is not the case here. Mr. Meek need not speculate which claims apply to him. Indeed, with some diligence, Mr. Meek is clearly capable of reviewing the allegations in the TAC to determine each instance of wrongdoing he is accused of. *See VanZandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843, 848 (10th Cir. 2008) (finding allegations more than sufficient where the complaint named specific defendants, gave a detailed factual basis for the alleged misconduct, and linked the misconduct to the end result). Accordingly, Plaintiffs have not failed to comply with notice pleading requirements, and the Motion to Dismiss should be denied.

**IV.    Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds.**

"The qualified immunity test is a two-part inquiry involving the questions of whether the defendant violated the constitutional rights of the plaintiff and whether such rights were clearly established at the time of the defendant's conduct." *Pyle v. Woods*, 874 F.3d 1257, 1262 (10th Cir. 2017). When a qualified immunity challenge is made at the motion to dismiss state, a court must determine whether the plaintiffs have "allege[d] facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. "This does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (internal quotation marks omitted). Rather, the allegations must simply "give the defendants notice of the theory under which [t]he claim is made" and "make clear the grounds on which the plaintiff is entitled to relief." *Id.* (internal quotation marks omitted).

In determining whether the law was clearly established for qualified immunity purposes, the question is "whether, at the time of the incident, every reasonable official would have understood that what he is doing violates the constitutional right at issue." *Pyle*, 874 F.3d at 1263 (internal quotation marks

omitted). "A reasonable official possesses this understanding if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." *Id.* (internal quotation marks omitted); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (explaining that general constitutional principles can constitute clearly established law when the violation is "obviously egregious" because "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing.").

### 1. Brady Violations

The first constitutional claim in the TAC is for Fourteenth Amendment violations under *Brady v. Maryland*, 371 U.S. 812 (1962). Plaintiffs allege that Mr. Meek fabricated evidence by submitting false police reports, coercing false testimony from purported eyewitnesses, and suppressing/destroying exculpatory evidence through the failure to conduct basic forensic testing of the physical evidence, which deprived Plaintiffs' of their right to a fair trial. [Third Am. Compl., Doc. No. 87, ¶¶ 189-99].

Witness coercion and submission of fabricated evidence for use at trial have long been held to be violations of the Fourteenth Amendment under *Brady*:

It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.

373 U.S. at 86 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). The Court went on to hold that the suppression of evidence favorable to an accused violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith" of the withholding party. *Id.*

The TAC alleges that Mr. Meek coerced testimony from witnesses and used the same in Prosecution Reports submitted to the Tulsa District Attorney's Office. [Third Am. Compl., Doc. No. 87, ¶¶ 24-25, 32-33, 36-38, 41-44, 57-59, 92-93]. The TAC further alleges that evidence regarding eyewitness initial testimony—that they were unable to identify the occupants of the maroon car—was never turned over the Plaintiffs' trial attorneys. [*Id. at* ¶ 92.] In fact, the TAC contains allegations where the witnesses themselves confirm that their statements were the product of coercive and threatening tactics employed by Mr. Meek. [*Id.* at ¶¶ 36-38,

43].[2]  This conduct, taken as true pursuant to the Rule 12(b)(6) standard, is clearly the type contemplated in *Brady*, in 1962, to be unconstitutional.  Thus, both prongs of the test for qualified immunity have been clearly established, and a claim for *Brady* violations has been plausibly stated against Mr. Meek.

### 2. *Substantive Due Process Violations*

Plaintiffs' next claim for unconstitutional conduct is for violations of Plaintiffs' substantive due process rights.  Plaintiffs allege that Mr. Meek's misconduct in coercing false and rehearsed testimony, suppressing/destroying exculpatory evidence, and failing to disclose impeachment evidence robbed them of their fundamental right to substantive due process of law as guaranteed by the Fourteenth Amendment. [Third Am. Compl., Doc. No. 87, ¶¶ 200-07].

"The duties to disclose and preserve impeachment and exculpatory evidence are grounded in the due process right to a fair trial.*" Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (citing *Kyles v. Whitley,* 514 U.S. 419, 434 (1995); *United States v. Bagley,* 473 U.S. 667, 678 (1985); *United States v.*

---

[2] Mr. Meek's Motion to Dismiss refers to the criminal trial testimony in an attempt to bolster his argument that he could not have coerced witness testimony.  [Mot. to Dismiss, Doc. No. 90, pp. 7-8].  Mr. Meek argues that based on the trial testimony, Mr. Price "explained under oath why he gave inconsistent statements, so we *know* it had nothing to do with coercion by Meek."  [*Id.*].  This argument ignores the facts in the TAC wherein Mr. Price and Rashun Williams state, also under oath, that their testimony implicating Plaintiffs was coerced.  [Third Am. Compl., Doc. No. 87, ¶¶ 36-38, and 43].  Again, this type of argument ventures far outside the scope of review for a Rule 12(b)(6) motion to dismiss.

*Agurs,* 427 U.S. 97, 104 (1976); *Brady,* 373 U.S. at 87)). "Thus, the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial." *Id.* (citing *Bagley,* 473 U.S. at 678); *see also Moldowan v. City of Warren*, 578 F.3d 351, 391 (6th Cir. 2009) ("In [*California v. Trombetta*, 467 U.S. 479, 488 (1984)], for instance, the Supreme Court recognized that the Constitution may impose a duty on the state to preserve evidence where such evidence might be expected to play a significant role in the suspect's defense.") (internal quotation marks omitted). Courts have routinely allowed exonerated defendants to pursue § 1983 claims based on the denial of a fair trial where "the convictions were obtained and affirmed on direct appeal, but were subsequently overturned by way of collateral proceedings." *Morgan,* 166 F.3d at 1310.

Here, Plaintiffs were convicted based on the falsified evidence obtained by, among others, Mr. Meek, which was presented and used during their criminal trials. Those convictions were later overturned by the Tulsa County District Court, which was affirmed by the Oklahoma Court of Criminal Appeals. The allegations in the TAC, taken as true, reveal that Mr. Meek participated in a scheme to deprive Plaintiffs of their fundamental right to a fair trial by obtaining information he knew to be false (i.e., false police reports from Mr. Clark and Mr. Solomon, and coerced testimony from witnesses Price

and Williams[3]), and intentionally (and without cause) pursing Plaintiffs as the primary suspects in the murder of Karen Summers. Mr. Meek further suppressed exculpatory evidence by failing to test the murder weapon found on Michael Wilson for forensic evidence [Third Am. Compl., Doc. No 87, ¶¶ 61 and 64], and he actively destroyed exculpatory evidence by failing to preserve and forensically test the car used to commit the murder, which was rented from Enterprise by Michael Wilson and found in Michael Wilson's possession. [*Id.* at. ¶¶ 45 and 46]. These allegations are more than sufficient to demonstrate that Mr. Meek violated Plaintiffs' clearly established substantive due process rights. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004) ("We have no doubt that . . . an official in Ms. Gilchrist's position in 1986 had fair warning that the deliberate or reckless falsification or omission of evidence was a constitutional violation . . . .") (internal quotation marks omitted).

### 3. *Malicious Prosecution*

Malicious prosecution concerns detention only "[a]fter the institution of legal process." *Mondragon v. Thompson,* 519 F.3d 1078, 1083 (10th Cir. 2008). To state a claim for malicious prosecution, a plaintiff must show "(1) the defendant caused the plaintiff's continued confinement or prosecution;

---

[3] The TAC specifically alleges, among other things, that Mr. Meek interrogated Mr. Williams during an unrecorded interview and only after that interrogation did Mr. Williams miraculously change his story to be in line with the testimony that Mr. Meek wanted to elicit. [Third Am. Compl., Doc. No. 87, ¶ 41 n.2].

(2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Plaintiffs' claim for malicious prosecution is factually similar to the circumstances discussed in *Wilkins*. There, the plaintiffs alleged that the defendant police officers intentionally coerced false statements, which the officers then used to seek warrants for the plaintiffs' arrests. *Id.* at 805. The plaintiffs argued that but for the coerced statements, they would never have been arrested and charged. *Id.* at 804.

Similarly, the bulk of evidence against Plaintiffs during their criminal trial was the false testimony of eyewitnesses placing them in the maroon car. [Third Am. Compl., Doc. No. 87, ¶ 68]. There was never any physical evidence linking Plaintiffs to the crime. [*Id.* at ¶ 66]. Mr. Meek acted with the sinister motive of convicting Plaintiffs regardless of what the evidence showed. This malice was further demonstrated by the blatantly false police reports generated by Mr. Clark and Mr. Solomon, which were adopted in full by Mr. Meek in his prosecution report. Mr. Meek's unconstitutional misconduct directly lead to Plaintiffs' wrongful incarceration because without this false and coerced testimony, no probable cause existed to charge, let alone convict, Plaintiffs. [*Id.* at ¶¶ 209-214]. Thus, the facts in the TAC concerning

malicious prosecution, taken in a light most favorable to the Plaintiffs, set forth a constitutional violation.

At the time of Plaintiffs' arrest and trial, the right to be free from malicious prosecution was a clearly established constitutional right. It has "long been clearly established that knowingly arresting a defendant without cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment proscription against unreasonable searches and seizures." *Wilkins*, 528 F.3d at 805 (citing *Albright v. Oliver*, 510 U.S. 266 (1994); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Moreover, as established above, the right to a fair trial was also clearly established. Accordingly, Mr. Meek is not entitled to qualified immunity on Plaintiffs' malicious prosecution claim.

### 4. Failure to Intervene

The failure of a law enforcement officer to intervene to prevent another law enforcement official's constitutional misconduct was clearly established as early as June 1992. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). The TAC alleges that "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so." [Third Am. Compl., Doc. No. 87, ¶ 216].

For example, Mr. Meek failed to intervene and correct the false statement made by Mr. Clark linking Plaintiffs to the vehicle used to commit

the murder.  [*Id.* at ¶¶ 24-25].  Mr. Meek failed to intervene and correct the false report drafted by Mr. Solomon attributing statement to Price that he did not make.  [*Id.* at ¶¶ 32-34].  Finally, Mr. Meek failed to intervene and prevent Mr. Huff from suppressing and destroying exculpatory evidence when Mr. Huff failed to test the murder weapon for physical evidence and when he failed to seize the car used to commit the homicide.  [*Id.* at ¶¶ 46-50].

The only evidence necessary to state a claim for failure to intervene is the factual allegations suggesting Mr. Meek could have prevented or stopped the violation of Plaintiffs' constitutional rights. *See Estate of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014) (holding that to survive summary judgment on a failure to intervene claim, plaintiffs need only present "evidence suggesting that [the Defendants could have prevented or stopped" the unconstitutional misconduct).  Accordingly, Plaintiffs have stated a claim for failure to intervene against Mr. Meek sufficient to survive dismissal.

### 6. Civil Conspiracy to Violate Constitutional Rights

Allegations of conspiracy may form the basis of a § 1983 claim.  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  To survive a motion to dismiss, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  *Id.*  More specifically, a plaintiff must allege (1) a conspiracy; (2) to deprive plaintiff of constitutional rights; (3) an act in

furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

The TAC does more than allege conclusory allegations of conspiracy. Plaintiffs allege that the Officer Defendants "acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive the Plaintiffs of their constitutional rights, including their rights to due process and to a fair trial . . . ." [Third Am. Compl., Doc. No. 87, ¶ 224]. The allegation is supported by facts in the TAC such as Mr. Clark's lie about pulling Plaintiffs over in the maroon Ford (when they were actually pulled over in a brown Oldsmobile) and the repetition of that lie by Mr. Meek in a Prosecution Report [*id.* at ¶¶ 24-25]; Mr. Huff and Mr. Meek's joint decision to leave potentially exculpatory physical evidence untested despite having obtained more than enough information to implicate Michael Wilson and not Plaintiffs [*id.* at ¶¶ 46-51, 63-64]; Mr. Meek's closing of the case based on what he knew to be false testimony procured by himself and Mr. Solomon and prior to receiving ballistics testing on the gun found in Michael Wilson's possession [*id.* at ¶ 62].

Mr. Meek, in concert with the other Officer Defendants, chose to ignore the plain evidence pointing to Michael Wilson as the murderer of Karen Summers. Rather, they decided at the outset of the case that Plaintiffs were their target suspects and bent the evidence to achieve the desired result—

conviction of Plaintiffs for murder. Drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient to state a claim for civil conspiracy to violation Plaintiffs' constitutional rights. *Compare with Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (finding that the plaintiff's conclusory allegations that Law School faculty met with certain administrators during an investigation without more detail regarding whether the faculty members were even aware of the investigation did not support a claim of conspiracy).

## V. Mr. Meek knew or reasonably should have known that his conduct would lead to the deprivation of a Plaintiffs' constitutional rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Individual defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that

[the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.").

As established in Section IV above, the TAC alleges that Mr. Meek violated Plaintiffs' constitutional rights while acting under color of state law. The TAC goes further to allege that Mr. Meek knew or reasonably should have known that his actions would lead to the deprivation of Plaintiffs' constitutional rights. Mr. Meek certainly cannot argue that in 1994, as a veteran of the TPD, that he did not reasonably know that coercing witness statements to procure convictions could lead to the violation of Plaintiffs' constitutional rights. The facts in the TAC, taken as true, show that Mr. Meek was aware of and participated in the fabrication, suppression, and destruction of evidence, part of which was later used at trial to wrongfully convict Plaintiffs. But for Mr. Meek's unlawful conduct, Plaintiffs would never had been convicted and wrongfully incarcerated for nearly twenty (20) years. *See Martinez*, 697 F.3d at 1255 (citing *Trask v. Franco*, 446 F.3d 1036, 1046-47 (10th Cir. 2006)). Thus, the TAC alleges plausible claims for constitutional violations by Mr. Meek individually.

**VI.    Plaintiffs have adequately pleaded a negligence claim against Mr. Meek under general Oklahoma tort law.**

Mr. Meek erroneously characterizes the TAC as attempting to assert a negligence claim against him under the Oklahoma Governmental Tort Claims Act (the "GTCA"), 51 O.S. § 151, *et seq.* To be sure, the title of the state-law section of the TAC references the GTCA. But it also more broadly references "Oklahoma State Law Causes of Action." [Third Am. Compl., Doc. No. 87, p. 53.] And, in any event, the nature of the claim depends on the "substance of the[] allegations, rather than the plaintiff's labels." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996); *see also Briggs v. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1288, 1292 (W.D. Okla. 2007) (disregarding "misleading title" of plaintiff's claim for relief and looking to allegations to determine whether plaintiff asserted claim for breach of contract; explaining that "[t]he substance of a party's pleadings, not the title he employs, controls the issues to be adjudicated").

The TAC alleges that the Officer Defendants, which includes Mr. Meek, negligently caused Plaintiffs' wrongful incarceration. [Third Am. Compl., Doc. No. 87, ¶¶ 236-39]. Plaintiffs acknowledge that Mr. Meek cannot be sued individually under the GTCA and that if he acted within the scope of his employment, the only viable claim under Oklahoma law is a GTCA claim against the City. But the negligence claim is being asserted against Mr. Meek individually as an alternative theory of liability under general state tort law in the event that Mr. Meek is found to have acted outside the scope of his

employment. *See Harmon v. Cradduck*, 286 P.3d 643, 650 n.20 (Okla. 2012) (explaining that if a government employee acts outside the scope of employment by engaging in a malicious or bad faith act, then the GTCA does not apply, and the employee can be held personally liable under general tort law); *Benshoof v. Niles*, 380 P.3d 902, 907 (Okla. Civ. App. 2016) (reversing trial court's dismissal of claims against sheriff where plaintiff alleged conduct that could be found to have been committed outside the scope of employment).

To plead a negligence claim, Plaintiffs must allege (1) the existence of a duty on the part of defendant to protect plaintiff from injury; (2) violation of that duty; and (3) injury proximately resulting from the violation. *Dirickson v. Mings*, 910 P.2d 1015, 1018 (Okla. 1996). "Once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner." *Morales v. City of Okla. City ex rel. Okla. City Police Dept.*, 230 P.3d 839, 876 (Okla. 2010). Mr. Meek, as an officer of the TPD, had a duty to enforce the law without violating Plaintiffs' constitutional rights. As established herein, Mr. Meek violated that duty, which was the direct cause of Plaintiffs' wrongful incarceration. The TAC contains sufficient allegations to state a plausible claim for relief against Mr. Meek.

As for the statute of limitations, Oklahoma law is clear that a claim for negligence "does not accrue until a litigant could have maintained an action to a successful conclusion, which must by necessity be *after* the litigant suffers

damages." *Marshall v. Fenton, Fenton, Smith, Reneau, & Moon, P.C.*, 899 P.2d 621, 623 (Okla. 1995) (emphasis in original). Here, Plaintiffs could not have successfully filed this lawsuit against the Defendants until the finding of actual innocence. Thus, Plaintiffs filed their claim well within the two-year statute of limitations.

## VII.   Plaintiffs are entitled to an award of punitive damages.

"Punitive damages are available in § 1983 actions" and will be awarded when "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983). "The focus must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Id.* Plaintiffs allegations that the Defendants' "conduct, acts and/or omissions alleged [in the TAC] constitute reckless or callous indifference to Plaintiffs' federally protected rights" are adequately supported by the narrative allegations contained in the TAC as outlined herein as well as in Plaintiffs' responses to the motions to dismiss filed by the City, Mr. Huff, and Mr. Palmer.

# CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny the City's Motion.

March 29, 2019

Respectfully submitted,

/s/ Emily S. Eleftherakis
John W. Coyle, III
W. Brett Behenna
Coyle Law Firm
125 Park Avenue, First Floor
Oklahoma City, OK 73102
Telephone: (405) 232-1988
Facsimile: (405) 272-9859
jc@coylelaw.com
bb@coylelaw.com

Michael Leon Brooks
Brooks Law Firm
7100 N. Classen Blvd., Ste. 300
Oklahoma City, OK 73116
Telephone: (405) 840-1066
Facsimile: (405) 843-8446
michael.brooks@brookslawok.com

Emily S. Eleftherakis
Emily S. Eleftherakis, PLLC
7100 N. Classen Blvd., Ste. 303
Oklahoma City, OK 73116
Telephone: (405) 254-5097
Facsimile: (405) 212-4459
emily@eleflaw.com

-and-

Joseph M. Norwood
Norwood Law Office
1717 Cheyenne Ave.
Tulsa, OK 74119
Telephone: (918) 582-6464
Facsimile: (918) 582-7830

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, I filed the attached document with the Clerk of Court for the Northern District of Oklahoma. A copy of this Motion was provided via electronic filing to Defendants' counsel on the same day it was filed.

/s/ Emily S. Eleftherakis
Emily S. Eleftherakis