## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

1. MALCOLM NIGEL SCOTT, and
2. DEMARCHOE CARPENTER,

        Plaintiffs,

v.

Case No.: 17-CV-400-TCK-FHM

1. CITY OF TULSA, OKLAHOMA,
2. MIKE HUFF,
3. GARY MEEK,
4. RONALD PALMER,
5. RANDALL W. SOLOMON, and
6. JIM CLARK,

        Defendants.

*The Honorable Terence C. Kern*

## PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF TULSA'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiffs, Malcolm Nigel Scott ("Mr. Scott") and Demarchoe Carpenter ("Mr. Carpenter") (collectively, "Plaintiffs"), submit their Response to the Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") filed by Defendant City of Tulsa (the "City"), and respectfully request that the Court deny the same.

TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

ARGUMENT AND AUTHORITY .................................................................. 3

I.   Legal Standard ......................................................................................... 3

II.   The Motion to Dismiss includes impermissible factual support that is
outside the four-corners of the TAC. ................................................................. 4

III.   The TAC clearly sets forth enough detail to determine which claims are
being brought against the City. .......................................................................... 5

IV.   Plaintiffs have sufficiently stated a claim for municipal liability against
the City. ............................................................................................................... 7

  1.   Official Policy or Custom ..................................................................... 8

    i.   Formal Regulation or Policy Statement ............................................. 8

    ii.   Informal Custom, Policy, or Practice .................................................. 10

    iii.   Ratification ........................................................................................ 13

    iv.   Failure to Train or Supervise ............................................................. 14

  2.   Causal Link .......................................................................................... 16

  3.   Deliberate Indifference ........................................................................ 17

V.   The TAC sufficiently pleads allegations to support liability against the
City under the Oklahoma Governmental Tort Claims Act. ............................ 18

  1.   Statute of Limitations .......................................................................... 18

  2.   Respondeat Superior ............................................................................ 20

VI.   Punitive Damages .................................................................................. 21

CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 3, 4

*Avery v. Cnty. of Burke*, 660 F.2d 111 (4th Cir. 1981) ....................................... 9

*Bark v. Chacon*, Case No. 10-CV-01570-WYD-MJW, 2011 WL 1884691 (D. Colo. May 18, 2011)............................................................................................ 7

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).................................. 16, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................... 5

*Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175 (10th Cir. 2010) ...................................................................................................... 10

*Briggs v. Johnson*, 274 F. App'x 730 (10th Cir. 2008)....................................... 7

*Briggs v. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1288 (W.D. Okla. 2007) ..................................................................................................................... 19

*Brown v. City of Bartlesville*, Case No. 17-CV-00592-GKF-JFJ, 2018 WL 3626118 (N.D. Okla. Jul. 30, 2018) (unpublished)........................................ 15

*Bryson v. City of Okla. City*, 627 F.3d 784 (10th Cir. 2010) ......................... 8, 13

*Cacioppo v. Town of Vail, Colo.*, 528 Fed. Appx. 929 (10th Cir. 2013) ........... 13

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) ......... 3, 8

*City of Canton v. Harris*, 489 U.S. 378 (1989) ........................................... 14, 17

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ....................................... 10

*Cornfield ex rel. Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316 (7th Cir. 1993) ........................................................................................... 9

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) ..................................... 16

*Fernandes v. City of Broken Arrow*, Case No. 16-CV-0630-CVE-FHM, 2017 WL 471561 (N.D. Okla. Feb. 3, 2017) (unpublished) .............................. 15, 16

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ............................................ 5

*Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192 (D.N.M. 2015) ............. 12

*Lavender v. Craig Gen. Hosp.*, 308 P.3d 1071 (Okla. Civ. App. 2013) ............ 20

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) .............................................................................................. 12

*Manzanares v. Roosevelt Cnty. Adult Detention Ctr.*, 331 F. Supp. 3d 1260 (D.N.M. 2018) .................................................................................................. 18

*Marshall v. Fenton, Fenton, Smith, Reneau, & Moon, P.C.*, 899 P.2d 621 (Okla. 1995) .................................................................................................... 20

*Melton v. City of Okla. City*, 879 F.2d 706 (10th Cir. 1989) ........................... 12

*Mocek v. City of Albuquerque*, 813 F.3d 912 (10th Cir. 2015) ........................ 15

*Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) ........... 6, 8

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) ........................................... 10, 13

*Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980) .................................. 9

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ....................................... 12

*Rigg v. City of Lakewood*, 896 F. Supp. 2d 978 (D. Colo. 2012) ...................... 16

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .............................. 3, 5, 7

*Sandberg v. Englewood*, 727 Fed. Appx. 950 (10th Cir. 2018) ................. 17, 18

iii

*Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013) .................................................................................... 8, 14, 17

*Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158 (Okla. 2008) ............... 21

*Soto ex rel. Estate of Jimenez v. Bd. of Cnty Comm'rs*, 748 Fed. Appx. 790 (10th Cir. 2018) ................................................................................... 7

*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999) ..................................................................................................... 5

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) .................................................. 4

*Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158 (Okla. 2009) ....................... 21

*Weaver v. United States*, 98 F.3d 518 (10th Cir. 1996) ................................... 19

STATUTES

42 U.S.C. § 1983 ...................................................................................... passim

51 O.S. § 154(B)(2) ......................................................................................... 19

51 Okla. Stat. § 156(A) ................................................................................... 18

51 Okla. Stat. § 156(B) ............................................................................... 18, 20

Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et seq.* ........... passim

**INTRODUCTION**

Guilty until proven innocent—Malcolm Scott and Demarchoe Carpenter spent nearly twenty (20) years in prison for a crime they did not commit based on the grievously unconstitutional misconduct of the Defendants named herein. [Third Am. Compl., Doc. No. 87, ¶ 2]. On September 10, 1994, Karen Summers was murdered by Michael Wilson at a party in Tulsa, Oklahoma. [*Id.* ¶ 30]. Almost immediately, the Tulsa Police Department ("TPD") named Plaintiffs as the primary suspects based on falsified information from inside the TPD. [*Id.* ¶¶ 24-25]. Indeed, witness statements taken shortly after the murder did nothing to bolster the TPD's weak position that Plaintiffs had anything to do with the murder of Karen Summers. [*Id.* ¶¶ 32, 39, 57].

Only after the TPD, through Defendants Gary Meek ("Mr. Meek"), Mike Huff ("Mr. Huff"), Randall W. Solomon ("Mr. Solomon"), and Jim Clark ("Mr. Clark") (collectively, the "Officer Defendants"), responded to the murder scene to recover evidence and conduct interviews, using coercive tactics to illicit false information, were Plaintiffs actually (and falsely) implicated in the shooting. [*Id.* ¶¶ 31-33, 35-36, 41-43, 58-59]. In fact, the evidence overwhelmingly pointed to Michael Wilson at all times during the investigation of the murder of Karen Summers. [*Id.* ¶¶ 45-49, 83]. Complicit in the scheme to convict Plaintiffs at all costs, the Officer Defendants ignored the evidence linking

1

Michael Wilson to the crime and continued in their malicious pursuit of Plaintiffs as the primary suspects. [*Id.* ¶ 50, 62-64].

As a direct result of the unconstitutional tactics employed by the Officer Defendants, Plaintiffs were each convicted of one count of first-degree murder, two counts of shooting with intent to kill, and one count of using a vehicle to discharge a weapon. [*Id.* ¶ 69]. Over two decades later, on May 13, 2016, the Tulsa County District Court granted Plaintiffs' Applications for Post Conviction Relief on the basis of actual innocence. [*Id.* ¶ 96]. The Oklahoma Court of Criminal Appeals affirmed that order, finding that Plaintiffs were "factually innocent of the crime for which they were convicted" and that such convictions were based on weak evidence and coerced witness testimony. [*Id.* ¶¶ 98-100]. Plaintiffs were subsequently released from prison after spending most of their adult lives behind bars.

On February 8, 2019, Plaintiffs filed their Third Amended Complaint ("TAC") alleging constitutional and state law violations by the Officer Defendants, the City, and Ronald Palmer ("Mr. Palmer"). The City filed its Motion to Dismiss the TAC on February 22, 2019. For the reasons set forth herein, Plaintiffs have stated plausible claims for relief against the City, and the Motion to Dismiss should be denied.

# ARGUMENT AND AUTHORITY

## I.    Legal Standard

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not set forth "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The [factual] allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "It is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009). When reviewing a complaint for failure to state a claim, a court must accept as

true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## II. The Motion to Dismiss includes impermissible factual support that is outside the four-corners of the TAC.

As a preliminary matter, the Motion to Dismiss includes references to and arguments based on various extraneous facts and information outside the four-corners of the TAC. Rather than arguing that the facts as alleged in the TAC are insufficient as a matter of law, the City urges the Court to consider such additional information in its review of the Motion to Dismiss, demonstrating the need to reach beyond the TAC's allegations to support its argument for dismissal. [*See, e.g.*, Mot. to Dismiss, Doc. No. 90 at p. 7 (referencing Kenneth Price trial testimony); p. 8 (discussing the arrest of Michael Wilson and subsequent plea agreement with the Tulsa District Attorney's Office); p. 9 (arguing why Mr. Meek's case closure was reasonable and what "closure" means)].

Courts have made clear that this type of argument is improper in a Rule 12(b)(6) motion: "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236

(10th Cir. 1999); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." (internal quotation marks omitted)); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) ("The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."). Void of the extraneous arguments beyond the scope of a proper Rule 12(b)(6) motion, the City cannot show that the TAC fails to state plausible claims for relief.

### III. The TAC clearly sets forth enough detail to determine which claims are being brought against the City.

In support of its Motion to Dismiss, the City first argues that the allegations as stated in the TAC are nothing more than group accusations against all named Defendants, leaving the City to guess as to which allegations are being asserted against it. To provide an individual defendant with "fair notice as to the basis of the claims against him or her", a complaint "must make clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Here, the TAC is ripe with factual detail which provides sufficient notice of the claims brought against each Defendant. Specifically, the facts contained in the body of the TAC when read together with each individual claim for relief provide more than enough detail and context to put the City on notice that Plaintiffs seek to hold it accountable only on the claim for municipal liability pursuant to *Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) (Count V) and on the theory of Respondeat Superior under the Oklahoma Governmental Tort Claims Act (Count VIII).[1] Indeed, Count V specifically references that the actions taken by the individual Defendants "were undertaken pursuant to policies, practices and/or customs of the [TPD], described more fully in paragraphs 103-183" of the TAC, and that such "policies, practices and/or customs described in [the TAC] were maintained and implemented by the City of Tulsa. [Third Am. Compl., Doc. No. 87, ¶¶ 220 21]. Moreover, Count VIII specifically notes the City's vicarious liability for the conduct of the individual Defendants. [*Id.* at ¶¶ 241]. And both Counts re-allege and incorporate the preceding paragraphs of the TAC. [*Id.* at ¶¶ 219 and 240]. It is unclear how the City is confused about which claims are being asserted against it.

---

[1] Plaintiffs outline in more detail the specific allegations against each of the individual Defendants in the responses to their respective motions to dismiss.

Contrary to the City's assertion, it is permissible to use the collective term "defendants" so long as the complaint's allegations make a "distinction as to what acts are attributable to whom . . . ." *Robbins*, 519 F.3d at 1250. Though the TAC "contains multiple claims against multiple Defendants, there is no confusion as to whom the allegation[s] [are] asserted against." *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008). Moreover, the allegations contained in the TAC sufficiently "differentiate between the actions taken by individual Defendants and actions allegedly taken by the City . . . ." *Bark v. Chacon*, Case No. 10-CV-01570-WYD-MJW, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011). Accordingly, Plaintiffs have not failed to comply with notice pleading requirements, and the City's Motion to Dismiss should be denied.

## IV. Plaintiffs have sufficiently stated a claim for municipal liability against the City.

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Soto ex rel. Estate of Jimenez v. Bd. of Cnty Comm'rs*, 748 Fed. Appx. 790, 793 (10th Cir. 2018). The Tenth Circuit has set forth three requirements for municipal liability under § 1983: "(1) the existence of an official policy or custom; (2) direct causal link between the policy of custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifferent to an almost

inevitable constitutional injury." *Id.* at 793-94 (citing *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769-70 (10th Cir. 2013).

### 1. *Official Policy or Custom*

A municipal policy or custom may take any of the following forms:

1. a formal regulation or policy statement;

2. an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;

3. the decisions of employees with final policymaking authority;

4. the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; and

5. the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations omitted).

### i. *Formal Regulation or Policy Statement*

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Christensen*, 554 F.3d at 1279 (quoting *Monell*, 436 U.S. at 690). Moreover, the failure to make or adopt a formal policy

itself may be actionable. *See Cornfield ex rel. Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993); *Avery v. Cnty. of Burke*, 660 F.2d 111, 114 (4th Cir. 1981); *Murray v. City of Chicago*, 634 F.2d 365, 366-67 (7th Cir. 1980).

Plaintiffs admit that they have not pled the exact number, section, or paragraph of a specific TPD policy in the TAC. However, the TAC does allege that the TPD had a policy of "fabricating inculpatory evidence, failing to adequately investigate other leads or evidence, withholding material exculpatory or impeachment evidence, and failing to properly train, supervise, or discipline officer." [Third Am. Compl., Doc. No. 87, ¶ 103]. Further, the TAC alleges that, "[t]here was also an established unconstitutional policy . . . of using interrogation tactics to coerce or threaten witnesses, victims and suspects into giving statements that are not true and then recording only the rehearsed coerced portions of the statements." [*Id.* at ¶ 107].

The TAC alleges that the Officer Defendants, charged with the duty and responsibility of enforcing TPD rules and regulations, did enforce such unconstitutional policies. [*E.g., id.* at ¶¶ 25, 32-34, 41, 43, 59, 92, 93, 99]. These allegations, taken as true pursuant to the Rule 12(b)(6) standard, more than demonstrate the existence of an unconstitutional policy or decision.

## ii. Informal Custom, Policy, or Practice

Municipal liability may "be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "[P]roof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability. . . ." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

Count V alleges that the misconduct engaged in by the Officer Defendants was "undertaken pursuant to policies, practices and/or customs of the [TPD]" as described in the TAC. [Third Am. Compl., Doc. No. 87, ¶ 220]. As described above, the TAC alleges that the TPD had a widespread custom of fabricating and/or withholding exculpatory evidence, failing to adequately investigate other leads, coercing and threatening witnesses, victims, and suspects, and using confidential informants to provide false testimony. [*Id.* At ¶¶ 103, 107-09]. Specifically, the TAC lays out the following facts demonstrating copious constitutional violations by the Officer Defendants:

- Mr. Clark and Mr. Solomon falsified information in police reports which was later incorporated into a Prosecution Report endorsed by Mr. Meek with deliberate indifference to the truth [*id.* at ¶¶ 24-25, 32-33, 57-59];

- Mr. Solomon provided false and misleading testimony during Plaintiffs' criminal trial and failed to disclose exculpatory evidence to Plaintiffs' attorneys [*id.* at ¶ 34];

- Mr. Meek coerced false testimony from Kenneth Price and Rashun Williams [*id.* at ¶¶ 36-38, 41-44, 93];

- Mr. Meek and Mr. Huff failed to collect exculpatory evidence by declining to conduct forensic testing on the maroon Ford Taurus and the Lorcin .380, both found in Michael Wilson's possession [*id.* at ¶¶ 46, 63-64]; and

- The Officer Defendants failed to disclose exculpatory reports to Plaintiffs' criminal trial attorneys [*id.* at ¶ 92].

To support their theory of widespread, unconstitutional practices and customs, Plaintiffs point to several other criminal cases where investigations conducted by the TPD resulted in wrongful convictions based on usage of the same unconstitutional customs and practices. [*See id.* at ¶¶116-183]. The City argues that because these cases are not factually identical to Plaintiffs' wrongful convictions (i.e., they involved different officers and issues), they cannot be used to demonstrate a pattern of unconstitutional conduct within the TPD. [*See* Mot. to Dismiss, Doc. No. 88, pp. 9-10]. The City additionally argues that because the method of exoneration is not the same, Plaintiffs cannot show a pattern of constitutional violations. [*Id.* at p. 10].

The City's argument falls flat. Courts have held that other instances of police misconduct need not be factually identical to the current case to plead the existence of a § 1983 municipal custom. *See, e.g., Leatherman v. Tarrant*

*Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167 (1993) (finding that such heightened pleading requirements do not comport with Rule 8(a) notice pleading requirements). And in fact, the "touchstone for determining 'official policy' is 'distinguish[ing] acts of the *municipality* from acts of *employees* of the municipality, and thereby mak[ing] clear that municipal liability is limited to action for which the municipality is actually responsible." *Melton v. City of Okla. City*, 879 F.2d 706, 723 (10th Cir. 1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original)). Thus, the fact that the TAC implicates misconduct by different TPD officers in other cases only supports Plaintiffs' contention that the TPD as a whole (and thus the City) employs a widespread pattern and custom of unconstitutional practices.

To survive dismissal, Plaintiffs must only "plead facts that, if true, would give rise to a plausible inference that such a policy exists. . . ." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015) (emphasis added). "With informal, unwritten policies, customs, or practices, the plaintiff can plead . . . a pattern of multiple similar instances of misconduct—no set number is required . . . ." *Id.* Each of the cases summarized in the TAC are based on the same type of unconstitutional misconduct: falsifying inculpatory information [Third Am. Compl., Doc. No. 87, ¶ 148]; witness or suspect coercion [*id.* at ¶¶ 117-18, 120, 139, 158, 174, 182]; failure to investigate other leads [*id.*

at ¶ 142]; and failure to turn over exculpatory evidence [*id.* at ¶ 166, 169]. The allegations contained in the TAC, taken as true for purposes of the City's Motion to Dismiss, coupled with the factual allegations at issue in Plaintiffs' criminal case more than satisfy Rule 8(a)'s plausibility standard for showing a widespread pattern or practice of unconstitutional violations.[2]

### iii. Ratification

"[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *see also Cacioppo v. Town of Vail, Colo.*, 528 Fed. Appx. 929, 933 (10th Cir. 2013) ("[A] municipality will not be found liable . . . unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions.") (quoting *Bryson*, 627 F.3d at 790).

Here, the TAC asserts that Mr. Palmer, as an authorized policymaker, ratified the unconstitutional actions of his employees at the TPD. [Third Am.

---

[2] The City largely relies on the Tenth Circuit's reasoning in *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (2010), to support its argument that Plaintiffs have failed to adequately plead an informal custom or practice. [*See* Mot. to Dismiss, Doc. No. 88, pp. 12-13]. However, in *Bryson*, the Court was reviewing the facts and evidence using a summary judgement standard, not for Rule 12(b)(6) pleading sufficiency. Thus, the City's suggestion that *Bryson* is dispositive wholly ignores the procedural posture of this case – that is, summary judgment is not the appropriate standard for dismissing the TAC.

Compl., Doc. No. 87, ¶ 15]. Plaintiffs allege that Mr. Palmer was, at all relevant times, responsible for approving his subordinates' decisions and was aware of the unconstitutional policies, practices, and customs employed by the Officer Defendants as detailed in the TAC. [*Id.*]. These allegations, taken as true, support *Monell* liability against the City based on Mr. Palmer's ratification of the Officer Defendants' unconstitutional misconduct.

### iv. *Failure to Train or Supervise*

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality can be liable where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390; *see also Schneider*, 717 F.3d at 773.

The TAC alleges that the TPD failed to "properly train, supervise, or discipline officers," including Mr. Meek and Mr. Huff, concerning the "execution of lawful investigations, how to conduct proper and Constitutional identification procedure and interviews, and the legal obligations to investigate and disclose exculpatory and impeachment material" and that the failure to train was undertaken with deliberate indifference to Plaintiffs'

constitutional rights. [Third Am. Compl., Doc. No. 87, ¶¶ 103, 221]. The TAC goes on to point to a pattern of similar constitutional violations. [*Id.* at ¶¶ 116-183].

Together with the examples of specific acts of misconduct stated in this case, the allegations in the TAC are sufficient to put the City on notice of the claim against it and show that the allegations could plausibly have caused the violations of Plaintiffs' constitutional rights. *Compare Fernandes v. City of Broken Arrow*, Case No. 16-CV-0630-CVE-FHM, 2017 WL 471561, at *10 (N.D. Okla. Feb. 3, 2017) (unpublished) (finding enough facts to support a claim for failure to train), *and Brown v. City of Bartlesville*, Case No. 17-CV-00592-GKF-JFJ, 2018 WL 3626118, at *7 (N.D. Okla. Jul. 30, 2018) (unpublished) (agreeing that, though "not robustly pled," plaintiff identifies deficiencies in training to support a claim for municipal liability), *with Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (finding that "threadbare recitals of the elements of a cause of action" for failure to train or supervise are not sufficient to withstand a Rule 12(b)(6) dismissal). Plaintiffs do more than make conclusory statements or "threadbare recitals of the elements of a cause of action." The TAC more than sufficiently states a claim for municipal liability against the City for failure to train or supervise.

### 2. *Causal Link*

In seeking to hold a municipality liable under § 1983, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (quoting *Brown*, 520 U.S. at 404) (emphasis in original). "*Monell* and its progeny clearly stand for the proposition that the very language of § 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights . . . ." *Id.*

Here, Plaintiffs expressly allege the existence of a "causal nexus between the policies, practices and customs and Plaintiffs' damages and injuries described" in the TAC. [Third Am. Compl., Doc. No. 87, ¶ 222]. This is sufficient to satisfy the "direct causal link" prong for pleading municipal liability. *Compare Fernandes*, 2017 WL 471561, at *10 (finding the assertion that a failure to train caused alleged constitutional violations sufficient to state a claim); with *Rigg v. City of Lakewood*, 896 F. Supp. 2d 978, 981 (D. Colo. 2012) (holding a complaint cannot survive a Rule 12(b)(6) motion where there is "no allegation either of the existence of a municipal custom or policy or, obviously,

that the custom or policy was causally linked to the violation of constitutional rights alleged").

### 3. *Deliberate Indifference*

To survive a motion to dismiss, a plaintiff must show that the policy or custom complained of was "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 770 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)); *City of Canton*, 489 U.S. at 389. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* at 771. "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.*; *see also Sandberg v. Englewood*, 727 Fed. Appx. 950, 963-64 (10th Cir. 2018).

The TAC contains ample factual allegations that, when taken as true, establish the existence of a policy or custom in place that resulted in constitutional violations. [*E.g.*, Third Am. Compl., Doc. No. 87, ¶¶ 24-25, 32-38, 41-44, 46, 57-59, 63-64, 92-93]. Moreover, the TAC also provides several examples demonstrating a pattern of tortious conduct. [*Id.* at ¶¶ 116-183]. Plaintiffs do far more than allege a single incident of unconstitutional behavior. The TAC describes multiple instances of constitutional violations by

the Officer Defendants and links that misconduct with a pattern of constitutional violations found in other cases investigated by the TPD. The TAC clearly alleges a pattern of deliberate indifference to situations similar to the violations alleged by Plaintiffs. *Sandberg*, 727 Fed. Appx. at 963; *see also Manzanares v. Roosevelt Cnty. Adult Detention Ctr.*, 331 F. Supp. 3d 1260, 1300-01 (D.N.M. 2018). Thus, at this stage of the litigation, Plaintiffs have done enough to state a claim for municipal liability under § 1983 against the City.

## V. The TAC sufficiently pleads allegations to support liability against the City under the Oklahoma Governmental Tort Claims Act.

The Oklahoma Governmental Tort Claims Act (the "GTCA"), 51 O.S. § 151, *et seq.*, provides the statutory procedure for bringing tort claims against the State or other political subdivision.

### 1. *Statute of Limitations*

Section 156(A) of the GTCA provides that "any person having a claim against the state or a political subdivision within the scope of [the GTCA] shall present a claim to the state or political subdivision for any appropriate relief . . . ." Notice of a claim shall be filed in writing with the clerk of the governing body within one (1) year from the date that loss complained of occurs. 51 Okla. Stat. § 156(B). For claims based on wrongful conviction, loss is deemed to occur as of the date of a finding of actual innocence. *Id.* at § 156(H).

The City argues that Plaintiffs' claims are outside the GTCA statute of limitations because the TAC uses the label "negligence" instead of "wrongful conviction." [Mot. to Dismiss, Doc. No. 88, pp. 20-21]. However, the City ignores the plain language of the statute. Section 156(H) provides that "[f]or purposes of claims *based on* wrongful felony conviction resulting in imprisonment[,]" loss is deemed to occur on the "date that the claimant . . . receives judicial relief absolving the claimant of guilt based on actual innocence. . . ." (emphasis added). Further, courts "examine the substance of [a complaint's] allegations, rather than the plaintiff's labels, to determine their true nature." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996); *see also Briggs v. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1288, 1292 (W.D. Okla. 2007) (disregarding "misleading title" of plaintiff's claim for relief and looking to allegations to determine whether plaintiff asserted claim for breach of contract; explaining that "[t]he substance of a party's pleadings, not the title he employs, controls the issues to be adjudicated").

In order to plead a claim *based on* wrongful conviction, Plaintiffs must allege that they were (1) charged with first-degree murder, shooting with intent to kill, and using a vehicle to discharge a weapon, (2) convicted of the offenses, (3) sentenced to incarceration as a result of the conviction, and (4) imprisoned solely on the basis of the conviction. 51 O.S. § 154(B)(2). Regardless of the labels, the TAC clearly sets forth the basis to establish wrongful

conviction, [Third Am. Compl., Doc. No. 87, ¶ 99], and the substance of the allegations plainly reveals that the claim is *based on* wrongful felony conviction. [*Id.* at ¶ 238 ("Defendants violated that duty by subjecting Plaintiffs to unreasonable and *wrongful arrest, imprisonment, prosecution and conviction* as described herein.") (emphasis added)].

And even if Plaintiffs' claim were one for simple negligence and thus § 156(B) provided the applicable time limitation, the discovery rule must be applied to determine date of loss for purposes of negligence claims brought pursuant to the GTCA. *See Lavender v. Craig Gen. Hosp.*, 308 P.3d 1071, 1077 (Okla. Civ. App. 2013). Oklahoma law is clear that a claim for negligence "does not accrue until a litigant could have maintained an action to a successful conclusion, which must by necessity be *after* the litigant suffers damages." *Marshall v. Fenton, Fenton, Smith, Reneau, & Moon, P.C.*, 899 P.2d 621, 623 (Okla. 1995) (emphasis in original). Here, Plaintiffs could not have successfully filed this lawsuit against the Defendants until the finding of actual innocence. Thus, regardless of how the claim is pled, Plaintiffs are well within the GTCA's statute of limitations.

## 2. *Respondeat Superior*

"Respondeat superior is a legal theory that holds an employer liable for the willful torts of an employee acting within the scope of employment in furtherance of assigned duties." *Schovanec v. Archdiocese of Okla. City*, 188

P.3d 158, 161 (Okla. 2008). "The doctrine of *respondeat superior* is applicable under the GTCA." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009).

Here, Plaintiffs seek to hold the City responsible for the negligent actions which resulted in Plaintiffs' wrongful conviction. Plaintiffs have sufficiently alleged that the City's employees wronged Plaintiffs, [Third Am. Compl., Doc. No. 87, Count VII], and that the City is vicariously liable for the conduct of its employees acting within the scope of their employment. [*Id.* at Count VIII]. A municipality is not immunized from a negligence claim for its officers' actions in the midst of law enforcement if the tortious acts were committed within the scope of employment. *See Tuffy's*, 212 P.3d at 1167 ("An officer's illegal misconduct may be accomplished through an abuse of power lawfully vested in the officer, instead of by an unlawful usurpation of power the officer did not rightfully possess."). The TAC's allegations taken as true provide a sufficient basis for a GTCA claim against the City under the theory of respondeat superior.

## VI.   Punitive Damages

Plaintiffs are not seeking punitive damages against the City.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny the City's Motion.

Respectfully submitted,

/s/ Emily S. Eleftherakis
John W. Coyle, III
W. Brett Behenna
Coyle Law Firm
125 Park Avenue, First Floor
Oklahoma City, OK 73102
Telephone: (405) 232-1988
Facsimile: (405) 272-9859
jc@coylelaw.com
bb@coylelaw.com

Michael Leon Brooks
Brooks Law Firm
7100 N. Classen Blvd., Ste. 300
Oklahoma City, OK 73116
Telephone: (405) 840-1066
Facsimile: (405) 843-8446
michael.brooks@brookslawok.com

Emily S. Eleftherakis
Emily S. Eleftherakis, PLLC
7100 N. Classen Blvd., Ste. 303
Oklahoma City, OK 73116
Telephone: (405) 254-5097
Facsimile: (405) 212-4459
emily@eleflaw.com

-and-

Joseph M. Norwood
Norwood Law Office
1717 Cheyenne Ave.
Tulsa, OK 74119
Telephone: (918) 582-6464
Facsimile: (918) 582-7830

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 1, 2019, I filed the attached document with the Clerk of Court for the Northern District of Oklahoma. A copy of this Motion was provided via electronic filing to Defendants' counsel on the same day it was filed.

/s/ Emily S. Eleftherakis
Emily S. Eleftherakis