## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MALCOLM NIGEL SCOTT, and<br>2. DEMARCHOE CARPENTER,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>1. CITY OF TULSA, OKLAHOMA,<br>2. MIKE HUFF,<br>3. GARY MEEK,<br>4. RONALD PALMER,<br>5. RANDALL W. SOLOMON, and<br>6. JIM CLARK,<br><br>　　　　　Defendants. | Case No.: 17-CV-400-TCK-FHM<br><br><br><br><br><br><br><br><br><br><br>*The Honorable Terence C. Kern* |

## PLAINTIFFS' RESPONSE TO DEFENDANT JIM CLARK'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiffs, Malcolm Nigel Scott ("Mr. Scott") and Demarchoe Carpenter ("Mr. Carpenter") (collectively, "Plaintiffs"), submit their Response to the Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") filed by Defendant Jim Clark ("Mr. Clark"), and respectfully request that the Court deny the same.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT AND AUTHORITY ................................................................... 4

I. Legal Standard ............................................................................................ 4

II. The TAC clearly sets forth enough detail to determine which claims are
being brought against Mr. Clark. ...................................................................... 5

III. Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified
immunity grounds............................................................................................. 7

   1. Brady Violations ................................................................................ 9

   2. Substantive Due Process Violations ........................................... 12

   3. Malicious Prosecution..................................................................... 13

   4. Failure to Intervene......................................................................... 15

   5. Civil Conspiracy to Violate Constitutional Rights................... 16

IV. Mr. Clark knew or reasonably should have known that his conduct would
lead to the deprivation of Plaintiffs' constitutional rights. ........................... 18

V. Plaintiffs have adequately pleaded a negligence claim against Mr. Clark
under general Oklahoma tort law.................................................................... 19

VI. Plaintiffs are entitled to an award of punitive damages. ......................... 21

CONCLUSION................................................................................................. 22

TABLE OF AUTHORITIES

CASES

*Albright v. Oliver*, 510 U.S. 266 (1994) ............................................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 4, 5

*Benshoof v. Niles*, 380 P.3d 902 (Okla. Civ. App. 2016) ................................. 20

*Boone v. Paderick*, 541 F.2d 447 (4th Cir. 1976) ........................................... 10

*Brady v. Maryland*, 371 U.S. 812 (1962) ............................................... 9, 11, 12

*Briggs v. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1288 (W.D. Okla. 2007) ............................................................................................................. 19

*Browder v. City of Albuquerqu*e, 787 F.3d 1076 (10th Cir. 2015) .................... 8

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) ............. 4

*Dirickson v. Mings*, 910 P.2d 1015 (Okla. 1996) ............................................. 20

*Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) .............................. 16

*Gerstein v. Pugh*, 420 U.S. 103 (1975) .......................................................... 15

*Harmon v. Cradduck*, 286 P.3d 643 (Okla. 2012) ........................................... 20

*Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1994) .............................................. 16

*Jolivet v. Deland*, 966 F.2d 573 (10th Cir. 1992)............................................ 21

*Kyles v. Whitley*, 514 U.S. 419 (1995)............................................................ 12

*Marshall v. Fenton, Fenton, Smith, Reneau, & Moon, P.C.*, 899 P.2d 621 (Okla. 1995) ................................................................................................ 21

*Martinez v. Carson*, 697 F.3d 1252 (10th Cir. 2012) ................................. 18, 19

*Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996)................................................ 15

*Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008) .............................. 13

*Mooney v. Holohan*, 294 U.S. 103 (1935) ........................................................ 9

*Morales v. City of Okla. City ex rel. Okla. City Police Dept.*, 230 P.3d 839 (Okla. 2010) .................................................................................. 21

*Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999) ............................................. 12

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) .................................... 12, 13

*Pyle v. Woods*, 874 F.3d 1257 (10th Cir. 2017) ............................................ 7, 8

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .......................... 4, 5, 6, 8

*Smith v. Wade*, 461 U.S. 30 (1983) ................................................................ 21

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999) ..................................... 10

*Tilton v. Richardson*, 6 F.3d 683 (10th Cir. 1993) .......................................... 16

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) .................. 17

*Trask v. Franco*, 446 F.3d 1036 (10th Cir. 2006) ............................................ 19

*United States v. Agurs*, 427 U.S. 97 (1976) .................................................... 12

*United States v. Bagley*, 473 U.S. 667 (1985) ................................................. 12

*VanZandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843 (10th Cir. 2008) .............................................................................................. 7

*Weaver v. United States*, 98 F.3d 518 (10th Cir. 1996) ................................... 19

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................. 18

*Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008) .................................. 14, 15

STATUTES

42 U.S.C. § 1983 ..................................................................... 12, 16, 21

Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, *et seq.* ................... 19

**INTRODUCTION**

Guilty until proven innocent—Malcolm Scott and Demarchoe Carpenter spent nearly twenty (20) years in prison for a crime they did not commit based on the grievously unconstitutional misconduct of the Defendants named herein. [Third Am. Compl., Doc. No. 87, ¶ 2]. On September 10, 1994, Karen Summers was murdered by Michael Wilson at a party in Tulsa, Oklahoma. [*Id.* ¶ 30]. Almost immediately, the Tulsa Police Department ("TPD") named Plaintiffs as the primary suspects based on falsified information from inside the TPD. [*Id.* ¶¶ 24-25]. Indeed, witness statements taken shortly after the murder did nothing to bolster the TPD's weak position that Plaintiffs had anything to do with the murder of Karen Summers. [*Id.* ¶¶ 32, 39, 57].

Only after the TPD, through Defendants Gary Meek ("Mr. Meek"), Mike Huff ("Mr. Huff"), Randall W. Solomon ("Mr. Solomon"), and Mr. Clark (collectively, the "Officer Defendants"), responded to the murder scene to recover evidence and conduct interviews, using coercive tactics to illicit false information, were Plaintiffs actually (and falsely) implicated in the shooting. [*Id.* ¶¶ 31-33, 35-36, 41-43, 58-59]. In fact, the evidence overwhelmingly pointed to Michael Wilson at all times during the investigation of the murder of Karen Summers. [*Id.* ¶¶ 45-49, 83]. Complicit in the scheme to convict Plaintiffs at all costs, the Officer Defendants ignored the evidence linking

1

Michael Wilson to the crime and continued in their malicious pursuit of Plaintiffs as the primary suspects. [*Id.* ¶¶ 50, 62-64].

Part of the evidence used to charge and later convict Mr. Scott and Mr. Carpenter was a traffic report generated by Mr. Clark wherein he falsely stated that he had encountered Mr. Scott and Mr. Carpenter together in a red or maroon Ford Escort shortly before the murder took place. [*Id.* ¶ 24]. However, the traffic report initially showed that Mr. Clark found Mr. Carpenter and Mr. Scott together in a *caramel brown 1982 Oldsmobile[1] Grand Prix*. [*Id.* ¶ 22]. It was only *after* reports that witnesses saw shots fired from a red or maroon Ford Escort that Mr. Clark conveniently manufactured the narrative that he had pulled over Plaintiffs in a red or maroon Ford Escort on the evening of September 9, 1994. [*Id.* ¶ 24]. This clear and malicious lie was later used in a Prosecution Report, which was relied upon as a basis for probable cause to hold Plaintiffs in custody for the murder of Karen Summers. [*Id.* ¶ 25]. Moreover, Mr. Clark's lie and the reality that Plaintiffs were seen driving a brown vehicle just before the murder was never turned over to Plaintiffs' trial counsel. [*Id.* ¶ 92].

---

[1] Mr. Clark notes in his Motion to Dismiss that a Grand Prix is manufactured by Pontiac and not Oldsmobile. He misses the point. The exact make and model of the car driven by Mr. Scott and Mr. Carpenter on September 9, 1994 is irrelevant. What is relevant is the simple fact he witnessed Mr. Scott and Mr. Carpenter together in a vehicle that was clearly not a red or maroon Ford Escort and later concocted a lie that it was a red or maroon Ford Escort to support the TPD's unconstitutional investigation and conviction of Plaintiffs.

As a direct result of the unconstitutional tactics employed by the Officer Defendants, Plaintiffs were each convicted of one count of first-degree murder, two counts of shooting with intent to kill, and one count of using a vehicle to discharge a weapon. [*Id.* ¶ 69]. Over two decades later, on May 13, 2016, the Tulsa County District Court granted Plaintiffs' Applications for Post-Conviction Relief on the basis of actual innocence. [*Id.* ¶ 96]. The Oklahoma Court of Criminal Appeals affirmed that order, finding that Plaintiffs were "factually innocent of the crime for which they were convicted" and that such convictions were based on weak evidence and coerced witness testimony. [*Id.* ¶¶ 98-100]. Plaintiffs were subsequently released from prison after spending most of their adult lives behind bars.

On February 8, 2019, Plaintiffs filed their Third Amended Complaint ("TAC") alleging constitutional and state law violations by the Officer Defendants; the City of Tulsa, Oklahoma (the "City"); and Defendant Ronald Palmer ("Mr. Palmer"). Mr. Clark filed his Motion to Dismiss the TAC on March 25, 2019. For the reasons set forth herein, Plaintiffs have stated plausible claims for relief against Mr. Clark, and the Motion to Dismiss should be denied.

# ARGUMENT AND AUTHORITY

## I.     Legal Standard

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not set forth "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The [factual] allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "It is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).

When reviewing a complaint for failure to state a claim, a court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## II.    The TAC clearly sets forth enough detail to determine which claims are being brought against Mr. Clark.

To avoid duplicative briefing, Plaintiffs adopt and incorporate by reference the legal standards regarding improper lumping as briefed in their response to the City's Motion to Dismiss the Third Amended Complaint.

The TAC provides more than enough notice of the claims brought against Mr. Clark. The facts contained in the body of the TAC, when read together with each individual claim for relief, provide sufficient context to put Mr. Clark on notice of the claims brought against him. A simple review of the TAC reveals, among other bad acts, the following specifically pled misconduct:

- Mr. Clark falsified information in a police report [*id.* at ¶¶ 24-25];

- The Officer Defendants, including Mr. Clark, failed to disclose exculpatory information to Plaintiffs' criminal trial attorneys [*id.* at ¶ 92].

As stated in Plaintiffs' response to the City's Motion to Dismiss, it is permissible to use the collective term "defendants" so long as the complaint's allegations make a "distinction as to what acts are attributable to whom . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). A cursory review of Counts I through III show allegations of specific misconduct by individually

named Defendants and "Defendant Officers," which includes Mr. Clark. [Third Am. Compl., Doc. No. 87, ¶¶ 193-96, 202-06, 209-10].

Count IV is more general, but when read in conjunction with the allegations contained in the body of the TAC, is clearly based on actions by the individual Officer Defendants:

> [B]y their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

[*Id.* at ¶ 216].

Logically, only the individual Officer Defendants (not the City) can be described as acting "under color of law." Counts V (*Monell* Claim/Municipal Liability) and VIII (Respondeat Superior) expressly identify the City as the culpable party [*id.* at ¶¶ 219-22, 240-410], and Count VI as it is labeled names the "Individual Defendants." [*Id.* at Count VI]. Finally, the Supervisory Liability Claim is the only claim that is being brought against Mr. Palmer, and he is so named therein specifically.

While the TAC does use the collective term "defendants," it is not so devoid of fact or based on such generalities that it renders Mr. Clark completely without any inclination of what claims are being brought against him. The allegations in the TAC are markedly more detailed than those in the complaint at issue in *Robbins*. There, the Tenth Circuit found that the complaint failed

to isolate the unconstitutional conduct of the defendants. 519 F.3d at 1249. The Court reasoned that the entire complaint contained allegations referencing the "Defendants" without ever identifying which defendant engaged in what activity. *Id.* ("The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights.").

Mr. Clark need not speculate which claims apply to him and, upon review of the TAC, can easily determine each instance of wrongdoing he is accused of. *See VanZandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843, 848 (10th Cir. 2008) (finding allegations more than sufficient where the complaint named specific defendants, gave a detailed factual basis for the alleged misconduct, and linked the misconduct to the end result). Accordingly, Plaintiffs have not failed to comply with notice pleading requirements, and the Motion to Dismiss should be denied.

## III.  Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds.

"The qualified immunity test is a two-part inquiry involving the questions of whether the defendant violated the constitutional rights of the plaintiff and whether such rights were clearly established at the time of the defendant's conduct." *Pyle v. Woods*, 874 F.3d 1257, 1262 (10th Cir. 2017).

When a qualified immunity challenge is made at the motion to dismiss stage, a court must determine whether the plaintiffs have "allege[d] facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. "This does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (internal quotation marks omitted). Rather, the allegations must simply "give the defendants notice of the theory under which the[] claim is made" and "make clear the grounds on which the plaintiff is entitled to relief." *Id.* (internal quotation marks omitted).

In determining whether the law was clearly established for qualified immunity purposes, the question is "whether, at the time of the incident, every reasonable official would have understood that what he is doing violates the constitutional right at issue." *Pyle*, 874 F.3d at 1263 (internal quotation marks omitted). "A reasonable official possesses this understanding if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." *Id.* (internal quotation marks omitted); *see also Browder v. City of Albuquerqu*e, 787 F.3d 1076, 1082 (10th Cir. 2015) (explaining that general constitutional principles can constitute

clearly established law when the violation is "obviously egregious" because "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing.").

### 1. Brady Violations

The first constitutional claim in the TAC is for Fourteenth Amendment violations under *Brady v. Maryland*, 371 U.S. 812 (1962). Plaintiffs allege that Mr. Clark fabricated evidence by falsifying evidence in a police report and withholding potentially exculpatory evidence at Plaintiffs' criminal trial. [Third Am. Compl., Doc. No. 87, ¶¶ 22-25, 196].

Submission of fabricated evidence for use at trial has long been held to violate the Fourteenth Amendment under *Brady*:

> It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.

373 U.S. at 86 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). The Court went on to hold that the suppression of evidence favorable to an accused violates due process "where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith" of the withholding party. *Id.*; *see also United States v. Bagley*, 473 U.S. 667, 676 (1985) (explaining that "impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule").

Law enforcement's *Brady* obligations apply to both prosecutors and police officers. *Spurlock v. Satterfield*, 167 F.3d 995, 1005-06 (6th Cir. 1999) (rejecting qualified immunity where officers allegedly fabricated evidence and manufactured probable cause and holding that one of the bases of *Brady* and *Pyle* is that "[the defendant] cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional and/or statutory rights."); *Boone v. Paderick*, 541 F.2d 447, 450-51 (4th Cir. 1976) (overturning defendant's criminal conviction on the ground that police had suppressed exculpatory information bearing on the veracity of a witness's testimony and holding that where "material evidence which tends to exculpate the defendant is not disclosed," the failure to disclose it "is not neutralized because it was in the hands of the police rather than the prosecutor.").

The TAC alleges that Mr. Clark lied in a police report that he witnessed Plaintiffs driving together in a maroon Ford Escort on the night of Karen Summers' murder. [Third Am. Compl., Doc. No. 87, ¶¶ 22-25]. In truth, Mr. Clark pulled Plaintiffs over in a brown Grand Prix, an important fact that was

intentionally withheld from Plaintiffs' criminal trial attorneys[2]. [*Id.* at ¶¶ 22, 92]. Not only would the fact that Plaintiffs were in a different car than the red or maroon Ford have provided Plaintiffs with exculpatory trial evidence showing that they were not in and did not have access to the vehicle used to commit the crime, but it would have served as significant impeachment evidence challenging the veracity of Mr. Clark and the TPD at trial. Mr. Clark's lie was useful (and indeed necessary) to the TPD because it was the *only evidence* that linked Plaintiffs to the vehicle used in Karen Summers' murder. [*Id.* at ¶ 57]. Mr. Clark's conduct, taken as true pursuant to the Rule 12(b)(6) standard, is clearly the type contemplated in *Brady*, in 1962, to be unconstitutional. Thus, both prongs of the test for qualified immunity have been clearly established, and a claim for *Brady* violations has been plausibly stated against Mr. Clark.

---

[2] Mr. Clark argues that because he did not specifically testify that he saw Plaintiffs in a red or maroon Ford Escort at their criminal trial, he is absolved from liability. [*See* Mot. to Dismiss, Doc. No. 97, pp. 4-5 ("No testimony was elicited by either side about the color, make, or model of the car at the time of the stop."). This argument is misguided. Obviously, defense counsel could not elicit testimony about a lie or impeach Mr. Clark using evidence they were not provided and knew nothing about. The important point is that the exculpatory information was withheld from Plaintiffs, which prevented them from using the information at trial to demonstrate they did not have access to the car used to commit the crime, and it nullified their counsels' attempt to impeach the credibility of Mr. Clark and the TPD.

## 2. *Substantive Due Process Violations*

Plaintiffs' next claim for unconstitutional conduct is for violations of Plaintiffs' substantive due process rights. Plaintiffs allege that Mr. Clark's misconduct in falsifying exculpatory evidence and failing to disclose impeachment evidence robbed them of their fundamental right to substantive due process of law as guaranteed by the Fourteenth Amendment. [Third Am. Compl., Doc. No. 87, ¶¶ 200-07].

"The duties to disclose and preserve impeachment and exculpatory evidence are grounded in the due process right to a fair trial." *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Bagley*, 473 U.S. at 678; *United States v. Agurs*, 427 U.S. 97, 104 (1976); *Brady*, 373 U.S. at 87)). "Thus, the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial." *Id.* (citing *Bagley*, 473 U.S. at 678). Courts have routinely allowed exonerated defendants to pursue § 1983 claims based on the denial of a fair trial where "the convictions were obtained and affirmed on direct appeal, but were subsequently overturned by way of collateral proceedings." *Morgan*, 166 F.3d at 1310.

In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the Tenth Circuit noted the Supreme Court has long "held that a defendant's due process rights

are implicated when the state knowingly uses false testimony to obtain a conviction . . . *or withholds exculpatory evidence* from the defense." 359 F.3d at 55-56 (internal citations omitted) (emphasis added). Applying this analysis to the parties in *Pierce*, the court announced that "an official in [defendant's] position in 1986 had fair warning that the deliberate or reckless falsification *or omission of evidence* was a constitutional violation – even though the arrest had already occurred." *Id.* at 56-57 (emphasis added).

Here, Plaintiffs were convicted based on the falsified evidence obtained by, among others, Mr. Clark. Those convictions were later overturned by the Tulsa County District Court, which was affirmed by the Oklahoma Court of Criminal Appeals. The allegations in the TAC, taken as true, reveal that Mr. Clark participated in a scheme to deprive Plaintiffs of their fundamental right to a fair trial by drafting a false police report and submitting it to Mr. Meek in an effort to bolster a weak case against Plaintiffs. These allegations are more than sufficient to demonstrate that Mr. Clark violated Plaintiffs' clearly established substantive due process rights.

### 3. *Malicious Prosecution*

Malicious prosecution concerns detention only "[a]fter the institution of legal process." *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008). To state a claim for malicious prosecution, a plaintiff must show "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the

original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Mr. Clark caused Plaintiffs' continued confinement and prosecution by lying in a police report about evidence that tended to inculpate Plaintiffs and by failing to disclose this lie to Plaintiffs' trial counsel. This action, coupled with coerced eyewitness testimony [Third Am. Compl., Doc. No. 87, ¶¶ 36-38, 43] and the failure to preserve and test key physical evidence [*Id.* at ¶ 45-49] resulted in Plaintiffs' wrongful conviction. Without the false and tainted evidence manufactured by the TPD and the Officer Defendants in this case, there was no probable cause to support Plaintiffs' arrest and prosecution. There was never any physical evidence linking Plaintiffs to the crime. [*Id.* at ¶ 66]. The fact that Mr. Clark blatantly lied in a police report demonstrates he acted with the sinister motive of convicting Plaintiffs regardless of what the evidence showed. Mr. Clark's unconstitutional misconduct directly lead to Plaintiffs' wrongful incarceration and caused Plaintiffs to suffer damages. [Third Am. Compl., Doc. No. 87, ¶¶ 209-214]. Thus, the facts in the TAC concerning malicious prosecution, taken in a light most favorable to the Plaintiffs, set forth a constitutional violation.

At the time of Plaintiffs' arrest and trial, the right to be free from malicious prosecution was a clearly established constitutional right. It has "long been clearly established that knowingly arresting a defendant without cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment proscription against unreasonable searches and seizures." *Wilkins*, 528 F.3d at 805 (citing *Albright v. Oliver*, 510 U.S. 266 (1994); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Moreover, as established above, the right to a fair trial was also clearly established. Accordingly, Mr. Meek is not entitled to qualified immunity on Plaintiffs' malicious prosecution claim.

### 4. *Failure to Intervene*

The failure of a law enforcement officer to intervene to prevent another law enforcement official's constitutional misconduct was clearly established as early as June 1992. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). The TAC alleges that "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so." [Third Am. Compl., Doc. No. 87, ¶ 216].

For example, Mr. Clark failed to intervene and correct his own false statements linking Plaintiffs to the vehicle used to commit the murder. [*Id.* at ¶¶ 24-25]. Factual allegations suggesting Mr. Clark could have prevented or stopped the violation of Plaintiffs' constitutional rights are sufficient to state a

claim for failure to intervene. *See Estate of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014) (holding that to survive summary judgment on a failure to intervene claim, plaintiffs need only present "evidence suggesting that [the Defendants could have prevented or stopped" the unconstitutional misconduct). Accordingly, Plaintiffs have stated a claim for failure to intervene against Mr. Clark sufficient to survive dismissal.

### 5. *Civil Conspiracy to Violate Constitutional Rights*

Allegations of conspiracy may form the basis of a § 1983 claim. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). To survive a motion to dismiss, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Id.* More specifically, a plaintiff must allege (1) a conspiracy; (2) to deprive plaintiff of constitutional rights; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

The TAC does more than allege conclusory allegations of conspiracy. Plaintiffs allege that the Officer Defendants "acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive the Plaintiffs of their constitutional rights, including their rights to due process and to a fair trial . . . ." [Third Am. Compl., Doc. No. 87, ¶ 224]. The allegation is supported by facts in the TAC such as Mr. Clark's lie about pulling Plaintiffs over in the

red or maroon Ford (when they were actually pulled over in a brown Oldsmobile) and the repetition of that lie by Mr. Meek in a Prosecution Report [*id.* at ¶¶ 24-25]; Mr. Huff's and Mr. Meek's joint decision to leave potentially exculpatory physical evidence untested despite having obtained more than enough information to implicate Michael Wilson and not Plaintiffs [*id.* at ¶¶ 46-51, 63-64]; Mr. Meek's closing of the case based on what he knew to be false testimony procured by himself and Mr. Solomon and prior to receiving ballistics testing on the gun found in Michael Wilson's possession [*id.* at ¶ 62].

Mr. Clark, in concert with the other Officer Defendants, chose to ignore the plain evidence pointing to Michael Wilson as the murderer of Karen Summers. Rather, they decided at the outset of the case that Plaintiffs were their target suspects and bent the evidence to achieve the desired result— conviction of Plaintiffs for murder. Drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient to state a claim for civil conspiracy to violate Plaintiffs' constitutional rights. *Compare with Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (finding that the plaintiff's conclusory allegations that Law School faculty met with certain administrators during an investigation without more detail regarding whether the faculty members were even aware of the investigation did not support a claim of conspiracy).

## IV. Mr. Clark knew or reasonably should have known that his conduct would lead to the deprivation of Plaintiffs' constitutional rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Individual defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.").

As established in Section III above, the TAC alleges that Mr. Clark violated Plaintiffs' constitutional rights while acting under color of state law. The TAC goes further to allege that Mr. Clark knew or reasonably should have known that his actions would lead to the deprivation of Plaintiffs' constitutional rights. Mr. Clark certainly cannot argue that in 1994, as a veteran of the TPD, he did not reasonably know that lying in a police report could lead to the violation of Plaintiffs' constitutional rights. The facts in the TAC, taken as true, show that Mr. Clark was aware of and participated in the

fabrication and suppression of evidence, part of which was later used at trial to wrongfully convict Plaintiffs. But for Mr. Clark's unlawful conduct, Plaintiffs would never had been convicted and wrongfully incarcerated for nearly twenty (20) years. *See Martinez*, 697 F.3d at 1255 (citing *Trask v. Franco*, 446 F.3d 1036, 1046-47 (10th Cir. 2006)). Thus, the TAC alleges plausible claims for constitutional violations by Mr. Clark individually.

## V. Plaintiffs have adequately pleaded a negligence claim against Mr. Clark under general Oklahoma tort law.

Mr. Clark erroneously characterizes the TAC as attempting to assert a negligence claim against him under the Oklahoma Governmental Tort Claims Act (the "GTCA"), 51 O.S. § 151, *et seq.* To be sure, the title of the state-law section of the TAC references the GTCA. But it also more broadly references "Oklahoma State Law Causes of Action." [Third Am. Compl., Doc. No. 87, p. 53.] And, in any event, the nature of the claim depends on the "substance of the[] allegations, rather than the plaintiff's labels." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996); *see also Briggs v. Okla. Dep't of Human Servs.*, 472 F. Supp. 2d 1288, 1292 (W.D. Okla. 2007) (disregarding "misleading title" of plaintiff's claim for relief and looking to allegations to determine whether plaintiff asserted claim for breach of contract; explaining that "[t]he substance of a party's pleadings, not the title he employs, controls the issues to be adjudicated").

The TAC alleges that the Officer Defendants, which includes Mr. Clark, negligently caused Plaintiffs' wrongful incarceration. [Third Am. Compl., Doc. No. 87, ¶¶ 236-39]. Plaintiffs acknowledge that Mr. Clark cannot be sued individually under the GTCA and that if he acted within the scope of his employment, the only viable claim under Oklahoma law is a GTCA claim against the City. But the negligence claim is being asserted against Mr. Clark individually as an alternative theory of liability under general state tort law in the event that Mr. Clark is found to have acted outside the scope of his employment. *See Harmon v. Cradduck*, 286 P.3d 643, 650 n.20 (Okla. 2012) (explaining that if a government employee acts outside the scope of employment by engaging in a malicious or bad faith act, then the GTCA does not apply, and the employee can be held personally liable under general tort law); *Benshoof v. Niles*, 380 P.3d 902, 907 (Okla. Civ. App. 2016) (reversing trial court's dismissal of claims against sheriff where plaintiff alleged conduct that could be found to have been committed outside the scope of employment).

To plead a negligence claim, Plaintiffs must allege (1) the existence of a duty on the part of defendant to protect plaintiff from injury; (2) violation of that duty; and (3) injury proximately resulting from the violation. *Dirickson v. Mings*, 910 P.2d 1015, 1018 (Okla. 1996). "Once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner." *Morales v. City of Okla. City ex rel. Okla. City Police Dept.*, 230 P.3d 839, 876

(Okla. 2010). Mr. Clark, as an officer of the TPD, had a duty to enforce the law without violating Plaintiffs' constitutional rights. As established herein, Mr. Clark violated that duty, which was the direct cause of Plaintiffs' wrongful incarceration. The TAC contains sufficient allegations to state a plausible claim for relief against Mr. Clark.

As for the statute of limitations, Oklahoma law is clear that a claim for negligence "does not accrue until a litigant could have maintained an action to a successful conclusion, which must by necessity be *after* the litigant suffers damages." *Marshall v. Fenton, Fenton, Smith, Reneau, & Moon, P.C.*, 899 P.2d 621, 623 (Okla. 1995) (emphasis in original). Here, Plaintiffs could not have successfully filed this lawsuit against the Defendants until the finding of actual innocence. Thus, Plaintiffs filed their claim well within the two-year statute of limitations.

## VI.     Plaintiffs are entitled to an award of punitive damages.

"Punitive damages are available in § 1983 actions" and will be awarded when "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983). "The focus must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Id.* Plaintiffs allegations that

the Defendants' "conduct, acts and/or omissions alleged [in the TAC] constitute reckless or callous indifference to Plaintiffs' federally protected rights" are adequately supported by the narrative allegations contained in the TAC as outlined herein, as well as in Plaintiffs' responses to the motions to dismiss filed by the other named Defendants.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Mr. Clark's Motion to Dismiss.

Respectfully submitted,

 /s/ Emily S. Eleftherakis
John W. Coyle, III
W. Brett Behenna
Coyle Law Firm
125 Park Avenue, First Floor
Oklahoma City, OK 73102
Telephone: (405) 232-1988
Facsimile: (405) 272-9859
jc@coylelaw.com
bb@coylelaw.com

Michael Leon Brooks
Brooks Law Firm
7100 N. Classen Blvd., Ste. 300
Oklahoma City, OK 73116
Telephone: (405) 840-1066
Facsimile: (405) 843-8446
michael.brooks@brookslawok.com

Emily S. Eleftherakis
Emily S. Eleftherakis, PLLC
7100 N. Classen Blvd., Ste. 303
Oklahoma City, OK 73116
Telephone: (405) 254-5097
Facsimile: (405) 212-4459
emily@eleflaw.com

-and-

Joseph M. Norwood
Norwood Law Office
1717 Cheyenne Ave.
Tulsa, OK 74119
Telephone: (918) 582-6464
Facsimile: (918) 582-7830

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019, I filed the attached document with the Clerk of Court for the Northern District of Oklahoma. A copy of this Motion was provided via electronic filing to Defendants' counsel on the same day it was filed.

/s/ Emily S. Eleftherakis
Emily S. Eleftherakis