# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MALCOLM NIGEL SCOTT, and<br>2. DEMARCHOE CARPENTER,<br><br>              Plaintiffs,<br><br>v.<br><br>1. CITY OF TULSA, OKLAHOMA,<br>2. MIKE HUFF,<br>3. GARY MEEK,<br>4. RONALD PALMER,<br>5. RANDALL W. SOLOMON, and<br>6. JIM CLARK,<br><br>              Defendants. | Case No.: 17-CV-400-TCK-FHM<br><br><br><br><br><br><br><br><br>*The Honorable Terence C. Kern* |

## PLAINTIFFS' RESPONSE TO DEFENDANT RANDALL W. SOLOMON'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

Plaintiffs, Malcolm Nigel Scott ("Mr. Scott") and Demarchoe Carpenter ("Mr. Carpenter") (collectively, "Plaintiffs"), submit their Response to the Motion to Dismiss the Third Amended Complaint (the "Motion to Dismiss") filed by Defendant Randall W. Solomon ("Mr. Solomon"), and respectfully request that the Court deny the same.

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT AND AUTHORITY ........................................................................ 3

I. Legal Standard ................................................................................................ 3

II. Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds ................................................................................................ 4

    1. Brady Violations ......................................................................................... 4

    2. Substantive Due Process Violations ......................................................... 6

    3. Malicious Prosecution ................................................................................ 8

    4. Failure to Intervene .................................................................................. 10

    5. Civil Conspiracy to Violate Constitutional Rights ................................. 11

III. Mr. Solomon knew or reasonably should have known that his conduct would lead to the deprivation of Plaintiffs' constitutional rights ................... 12

IV. Plaintiffs have adequately pleaded a negligence claim against Mr. Solomon under general Oklahoma tort law ...................................................... 14

V. Plaintiffs are entitled to an award of punitive damages ........................... 14

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

CASES

*Albright v. Oliver*, 510 U.S. 266 (1994) .................................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 3, 4

*Brady v. Maryland*, 371 U.S. 812 (1962) .................................................... 4, 6, 7

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009) ............. 3

*Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) .............................. 10

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ................................................................. 9

*Hunt v. Bennett*, 17 F.3d 1263 (10th Cir. 1994) ................................................ 11

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................................. 7

*Martinez v. Carson*, 697 F.3d 1252 (10th Cir. 2012) ................................. 13, 14

*Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996) .................................................. 10

*Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008) ................................ 8

*Mooney v. Holohan*, 294 U.S. 103 (1935) ............................................................ 5

*Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999) ............................................... 7

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ............................................ 7

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ...................................... 3

*Tilton v. Richardson*, 6 F.3d 683 (10th Cir. 1993) ........................................... 11

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) ................... 12

*Trask v. Franco*, 446 F.3d 1036 (10th Cir. 2006) ............................................. 14

*United States v. Agurs*, 427 U.S. 97 (1976) ........................................................ 7

*United States v. Bagley*, 473 U.S. 667 (1985) ..................................................... 7

*West v. Atkins*, 487 U.S. 42 (1988) ..................................................................... 13

*Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008) ......................................... 8, 9

STATUTES

42 U.S.C. § 1983 ................................................................................................ 7, 11

**INTRODUCTION**

Guilty until proven innocent—Malcolm Scott and Demarchoe Carpenter spent nearly twenty (20) years in prison for a crime they did not commit based on the grievously unconstitutional misconduct of the Defendants named herein. [Third Am. Compl., Doc. No. 87, ¶ 2]. On September 10, 1994, Karen Summers was murdered by Michael Wilson at a party in Tulsa, Oklahoma. [*Id.* ¶ 30]. Almost immediately, the Tulsa Police Department ("TPD") named Plaintiffs as the primary suspects based on falsified information from inside the TPD. [*Id.* ¶¶ 24-25]. Indeed, witness statements taken shortly after the murder did nothing to bolster the TPD's weak position that Plaintiffs had anything to do with the murder of Karen Summers. [*Id.* ¶¶ 32, 39, 57].

Only after the TPD, through Defendants Gary Meek ("Mr. Meek"), Mike Huff ("Mr. Huff"), Mr. Solomon, and Jim Clark ("Mr. Clark") (collectively, the "Officer Defendants"), responded to the murder scene to recover evidence and conduct interviews, using coercive tactics to illicit false information, were Plaintiffs actually (and falsely) implicated in the shooting. [*Id.* ¶¶ 31-33, 35-36, 41-43, 58-59]. In fact, the evidence overwhelmingly pointed to Michael Wilson at all times during the investigation of the murder of Karen Summers. [*Id.* ¶¶ 45-49, 83]. Complicit in the scheme to convict Plaintiffs at all costs, the Officer Defendants ignored the evidence linking Michael Wilson to the crime

and continued in their malicious pursuit of Plaintiffs as the primary suspects. [*Id.* ¶¶ 50, 62-64].

As a direct result of the unconstitutional tactics employed by the Officer Defendants, Plaintiffs were each convicted of one count of first-degree murder, two counts of shooting with intent to kill, and one count of using a vehicle to discharge a weapon. [*Id.* ¶ 69]. Over two decades later, on May 13, 2016, the Tulsa County District Court granted Plaintiffs' Applications for Post-Conviction Relief on the basis of actual innocence. [*Id.* ¶ 96]. The Oklahoma Court of Criminal Appeals affirmed that order, finding that Plaintiffs were "factually innocent of the crime for which they were convicted" and that such convictions were based on weak evidence and coerced witness testimony. [*Id.* ¶¶ 98-100]. Plaintiffs were subsequently released from prison after spending most of their adult lives behind bars.

On February 8, 2019, Plaintiffs filed their Third Amended Complaint ("TAC") alleging constitutional and state law violations by the Officer Defendants; the City of Tulsa, Oklahoma (the "City"); and Defendant Ronald Palmer ("Mr. Palmer"). Mr. Solomon filed his Motion to Dismiss the TAC on May 13, 2019. For the reasons set forth herein, Plaintiffs have stated plausible claims for relief against Mr. Solomon, and the Motion to Dismiss should be denied.

# ARGUMENT AND AUTHORITY

## I. Legal Standard

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not set forth "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The [factual] allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "It is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).

When reviewing a complaint for failure to state a claim, a court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## II. Plaintiffs have sufficiently stated a claim to avoid dismissal on qualified immunity grounds

Plaintiffs incorporate by reference the legal standard articulated in Plaintiffs' Response to Defendant Gary Meek's Motion to Dismiss Plaintiffs' Third Amended Complaint ("Mr. Meek's Motion to Dismiss") concerning qualified immunity. [*See* Pls.' Resp. to Def. Gary Meek's Mot. to Dismiss ("Resp. to Meek Mot."), Doc. No. 107 at pp. 8-9].

### 1. *Brady Violations*

The first constitutional claim in the TAC is for Fourteenth Amendment violations under *Brady v. Maryland*, 371 U.S. 812 (1962). Plaintiffs allege that Mr. Solomon fabricated evidence by falsifying evidence in a police report providing false testimony at Plaintiffs' criminal trial, and withholding exculpatory evidence, in the form of impeachment evidence, at Plaintiffs' trial. [Third Am. Compl., Doc. No. 87, ¶¶ 32-38, 58-59, 73].

Witness suppression of exculpatory evidence and submission of fabricated evidence for use at trial have long been held to be violations of the Fourteenth Amendment under *Brady*:

> It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has

4

> contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.

373 U.S. at 86 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). The Court went on to hold that the suppression of evidence favorable to an accused violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith" of the withholding party. *Id.*

Contrary to Mr. Solomon's assertion, the TAC contains more than one instance of misconduct by Mr. Solomon. [*See* Def. Randall Solomon's Mot. to Dismiss Pls.' Third Am. Compl. ("Solomon Mot."), Doc. No. 118, pp. 3-4]. Specifically, the TAC alleges that Mr. Solomon falsified statements from key trial witnesses, Kenneth Price and Alonzo Johnson, and caused the false statements to be submitted to the Tulsa District Attorney's Office for use in charging and convicting Plaintiffs. [Third Am. Compl., Doc. No. 87, ¶¶ 32-38, 58-59, 73]. Further, Mr. Price's initial testimony that he did not see and was not able to identify the occupants of the maroon car was never turned over to

5

Plaintiffs' trial counsel. [*Id.* at ¶ 34].[1] This conduct, taken as true pursuant to the Rule 12(b)(6) standard, is clearly the type contemplated in *Brady*, in 1962, to be unconstitutional. Thus, both prongs of the test for qualified immunity have been clearly established, and a claim for *Brady* violations has been plausibly stated against Mr. Solomon.

### 2. *Substantive Due Process Violations*

Plaintiffs' next claim for unconstitutional conduct is for violations of Plaintiffs' substantive due process rights. Plaintiffs allege that Mr. Solomon's misconduct in falsifying witness statements and failing to disclose impeachment evidence robbed them of their fundamental right to substantive due process of law as guaranteed by the Fourteenth Amendment. [Third Am. Compl., Doc. No. 87, ¶¶ 32-38, 58-59, 73].

"The duties to disclose and preserve impeachment and exculpatory evidence are grounded in the due process right to a fair trial." *Morgan v. Gertz,*

---

[1] Mr. Solomon argues that based on the trial testimony, Mr. Price "explained under oath why he gave inconsistent statements, so we *know* it had nothing to do with coercion by Meek." [*See* Solomon Mot., Doc. No. 118, at p. 4]. This argument ignores the facts in the TAC wherein Mr. Price states, also under oath, that his testimony implicating Plaintiffs was coerced. [Third Am. Compl., Doc. No. 87, ¶¶ 36-38]. This type of argument ventures far outside the scope of review for a Rule 12(b)(6) motion to dismiss. Similarly, Mr. Solomon baldly asserts that "Plaintiffs' own pleading" shows that Mr. Solomon could not have committed the misconduct alleged in the TAC because none of the excerpted text from Mr. Price's sworn affidavit references Mr. Solomon. [*See* Solomon Mot., Doc. No. 118, p. 4]. First, this argument ignores the fact that Mr. Price's sworn affidavit is referenced only in part as an example. [*See* Third Am. Compl., Doc. No. 87, ¶ 37 ("For instance . . .")]. Second, Mr. Solomon is grasping at straws and arguing matters that exceed the scope of a 12(b)(6) motion.

166 F.3d 1307, 1310 (10th Cir. 1999) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Agurs*, 427 U.S. 97, 104 (1976); *Brady*, 373 U.S. at 87). "Thus, the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial." *Id.* (citing *Bagley*, 473 U.S. at 678).

Courts have routinely allowed exonerated defendants to pursue § 1983 claims based on the denial of a fair trial where "the convictions were obtained and affirmed on direct appeal, but were subsequently overturned by way of collateral proceedings." *Morgan*, 166 F.3d at 1310.

In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the Tenth Circuit noted the Supreme Court has long "held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction . . . . or withholds exculpatory evidence from the defense." 359 F.3d at 55-56 (internal citations omitted). Applying this analysis to the parties in *Pierce*, the court announced that "an official in [defendant's] position in 1986 had fair warning that the deliberate or reckless falsification or omission of evidence was a constitutional violation . . . ." *Id.* at 56-57.

Here, Plaintiffs were convicted based on the falsified information submitted by, among others, Mr. Solomon, which was presented and used during their criminal trials. Those convictions were later overturned by the

Tulsa County District Court, which was affirmed by the Oklahoma Court of Criminal Appeals. The allegations in the TAC, taken as true, reveal that Mr. Solomon participated in a scheme to deprive Plaintiffs of their fundamental right to a fair trial by pressuring witnesses to give false testimony, falsifying witnesses statements, testifying falsely at Plaintiffs' criminal trial regarding prior witness statements, and intentionally (and without cause) pursing Plaintiffs as the primary suspects in the murder of Karen Summers. These allegations are more than sufficient to demonstrate that Mr. Solomon violated Plaintiffs' clearly established substantive due process rights.

### *3. Malicious Prosecution*

Malicious prosecution concerns detention only "[a]fter the institution of legal process." *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008). To state a claim for malicious prosecution, a plaintiff must show "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Mr. Solomon caused Plaintiffs' continued confinement and prosecution by lying in a police report about evidence that tended to inculpate Plaintiffs and by failing to disclose this lie to Plaintiffs' trial counsel. [Third Am. Compl.,

8

Doc. No. 87, ¶¶ 32-34]. These actions coupled with Mr. Solomon's attempt to falsify witness testimony and his false testimony during Plaintiffs' criminal trial resulted in Plaintiffs' wrongful conviction. Without the false and tainted evidence manufactured by the TPD and the Officer Defendants in this case, there was no probable cause to support Plaintiffs' arrest and prosecution. There was never any physical evidence linking Plaintiffs to the crime. [*Id.* at ¶ 66]. The fact that Mr. Solomon blatantly lied in a police report demonstrates he acted with the sinister motive of convicting Plaintiffs regardless of what the evidence showed. Mr. Solomon's unconstitutional misconduct directly led to Plaintiffs' wrongful incarceration and caused Plaintiffs to suffer damages. [*Id.* at ¶¶ 209-214]. Thus, taken in a light most favorable to Plaintiffs, the facts in the TAC set forth a constitutional violation.

At the time of Plaintiffs' arrest and trial, the right to be free from malicious prosecution was a clearly established constitutional right. It has "long been clearly established that knowingly arresting a defendant without cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment proscription against unreasonable searches and seizures." *Wilkins*, 528 F.3d at 805 (citing *Albright v. Oliver*, 510 U.S. 266 (1994); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Moreover, as established above, the right to a fair trial was also clearly established. Accordingly, Mr.

9

Solomon is not entitled to qualified immunity on Plaintiffs' malicious prosecution claim.

### 4. Failure to Intervene

Liability for failure of a law enforcement officer to intervene to prevent another law enforcement official's constitutional misconduct was clearly established as early as June 1992. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). The TAC alleges that "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so." [Third Am. Compl., Doc. No. 87, ¶ 216].

For example, Mr. Solomon failed to intervene and correct the false reports he drafted containing statements that Mr. Price and Mr. Johnson did not make. [*Id.* at ¶¶ 32-38, 58-59, 73]. The only evidence necessary to state a claim for failure to intervene is the factual allegations suggesting Mr. Solomon could have prevented or stopped the violation of Plaintiffs' constitutional rights. *See Estate of Booker v. Gomez*, 745 F.3d 405, 423 (10th Cir. 2014) (holding that to survive summary judgment on a failure to intervene claim, plaintiffs need only present "evidence suggesting that [the defendants] could have prevented or stopped" the unconstitutional misconduct). Accordingly, Plaintiffs have stated a claim for failure to intervene against Mr. Solomon sufficient to survive dismissal.

### 5. *Civil Conspiracy to Violate Constitutional Rights*

Allegations of conspiracy may form the basis of a § 1983 claim. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). To survive a motion to dismiss, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. *Id.* More specifically, a plaintiff must allege (1) a conspiracy; (2) to deprive plaintiff of constitutional rights; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

The TAC does more than allege conclusory allegations of conspiracy. Plaintiffs allege that the Officer Defendants "acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive the Plaintiffs of their constitutional rights, including their rights to due process and to a fair trial . . . ." [Third Am. Compl., Doc. No. 87, ¶ 224]. The allegation is supported by facts in the TAC such as Mr. Solomon's inclusion of knowingly false statements in his police report [*id.* at ¶¶ 32-34]; Mr. Solomon's false testimony at Plaintiffs' criminal trial [*id.*]; Mr. Clark's lie about pulling Plaintiffs over in a maroon Ford (when they were actually pulled over in a brown Oldsmobile) and the repetition of that lie by Mr. Meek in a Prosecution Report [*id.* at ¶¶ 24-25]; Mr. Huff and Mr. Meek's joint decision to leave potentially exculpatory physical evidence untested despite having obtained more than enough information to

implicate Michael Wilson and not Plaintiffs [*id.* at ¶¶ 46-51, 63-64]; Mr. Meek's coercion of witnesses to give false testimony [*id.* at ¶ 43]; and Mr. Meek's closing of the case based on what he knew to be false testimony procured by himself and Mr. Solomon and prior to receiving ballistics testing on the gun found in Michael Wilson's possession [*id.* at ¶ 62].

Mr. Solomon, in concert with the other Officer Defendants, chose to ignore the plain evidence pointing to Michael Wilson as the murderer of Karen Summers. Rather, they decided at the outset of the case that Plaintiffs were their target suspects and bent the evidence to achieve the desired result— conviction of Plaintiffs for murder. Drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient to state a claim for civil conspiracy to violate Plaintiffs' constitutional rights. *Compare with Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (finding that the plaintiff's conclusory allegations that Law School faculty met with certain administrators during an investigation without more detail regarding whether the faculty members were even aware of the investigation did not support a claim of conspiracy).

III. **Mr. Solomon knew or reasonably should have known that his conduct would lead to the deprivation of Plaintiffs' constitutional rights**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Individual defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.").

As established in Section II above, the TAC alleges that Mr. Solomon violated Plaintiffs' constitutional rights while acting under color of state law. The TAC goes further to allege that Mr. Solomon knew or reasonably should have known that his actions would lead to the deprivation of Plaintiffs' constitutional rights. Mr. Solomon certainly cannot argue that in 1994, as a veteran of the TPD, he did not reasonably know that lying in a police report and giving false testimony at trial could lead to the violation of Plaintiffs' constitutional rights. The facts in the TAC, taken as true, show that Mr. Solomon was aware of and participated in the fabrication and suppression of evidence, part of which was later used at trial to wrongfully convict Plaintiffs. But for Mr. Solomon's unlawful conduct, Plaintiffs would never had been convicted and wrongfully incarcerated for nearly twenty (20) years. *See*

*Martinez*, 697 F.3d at 1255 (citing *Trask v. Franco*, 446 F.3d 1036, 1046-47 (10th Cir. 2006)). Thus, the TAC alleges plausible claims for constitutional violations by Mr. Solomon individually.

### IV. Plaintiffs have adequately pleaded a negligence claim against Mr. Solomon under general Oklahoma tort law

Plaintiffs incorporate by reference the argument made in Plaintiffs' Response to Mr. Meek's Motion concerning liability of individual Defendants under state law. [*See* Resp. to Meek Mot., Doc. No. 107, pp. 20-22].

### V. Plaintiffs are entitled to an award of punitive damages

Plaintiffs incorporate by reference the legal standard recited for an award of punitive damages in Plaintiffs' Response to Mr. Meek's Motion. [*See* Resp. to Meek Mot., Doc. No. 107, p. 22]. Plaintiffs' allegations that the Defendants' "conduct, acts and/or omissions alleged [in the TAC] constitute reckless or callous indifference to Plaintiffs' federally protected rights" are adequately supported by the narrative allegations contained in the TAC as outlined herein as well as in Plaintiffs' responses to the motions to dismiss filed by the other named Defendants.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Mr. Solomon's Motion to Dismiss.

Respectfully submitted,

/s/ Emily S. Eleftherakis
John W. Coyle, III
W. Brett Behenna
Coyle Law Firm
125 Park Avenue, First Floor
Oklahoma City, OK 73102
Telephone: (405) 232-1988
Facsimile: (405) 272-9859
jc@coylelaw.com
bb@coylelaw.com

Michael Leon Brooks
Brooks Law Firm
7100 N. Classen Blvd., Ste. 300
Oklahoma City, OK 73116
Telephone: (405) 840-1066
Facsimile: (405) 843-8446
michael.brooks@brookslawok.com

Emily S. Eleftherakis
Emily S. Eleftherakis, PLLC
7100 N. Classen Blvd., Ste. 303
Oklahoma City, OK 73116
Telephone: (405) 254-5097
Facsimile: (405) 212-4459
emily@eleflaw.com

-and-

Joseph M. Norwood
Norwood Law Office
1717 Cheyenne Ave.
Tulsa, OK 74119
Telephone: (918) 582-6464
Facsimile: (918) 582-7830

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2019, I filed the attached document with the Clerk of Court for the Northern District of Oklahoma. A copy of this Motion was provided via electronic filing to Defendants' counsel on the same day it was filed.

/s/ Emily S. Eleftherakis<br>
Emily S. Eleftherakis