**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MALCOLM SCOTT AND DEMARCHOE CARPENTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:17-cv-400-GAG-CDL |
| CITY OF TULSA, OKLAHOMA, et al., | ) | |
| Defendants | ) | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO BIFURCATE TRIAL**

---

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

David B. Owens
Jordan Poole
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
david@loevy.com
poole@loevy.com

Joseph Norwood
Norwood Law Firm PC
1717 S. Cheyenne Ave.
Tulsa, OK 74119
O: 918.582.6464

## TABLE OF CONTENTS


**INTRODUCTION** . . . . . 1

**LEGAL STANDARD** . . . . . 1

**ARGUMENT** . . . . . 3

I. Separate Trials on Individual and Municipal Liability Would Be Prejudicial to Plaintiffs and Would Not Promote Judicial Economy or Conserve Resources . . . . . 3

A. Evidence of Training Substantially Overlaps Both Individual and Municipal Liability and Is Not Unduly Prejudicial to the Individual Defendants . . . . . 4

B. *Monell* Bifurcation Would Prejudice Plaintiffs . . . . . 10

C. *Monell* Bifurcation Would Not Serve Judicial Economy or Conserve Resources . . . . . 11

II. Separate Trials on Liability and Damages Would Be Prejudicial to Plaintiffs and Contradict Judicial Economy . . . . . 11

A. Evidence Relevant to Liability and Damages Overlaps Substantially and Is Intertwined . . . . . 12

B. Plaintiffs Would Be Unfairly Prejudiced by Bifurcation . . . . . 14

C. Bifurcation Would Multiply, Confuse, and Inconvenience the Proceedings . . . . . 14

D. Defendants Would Not Be Unduly Prejudiced by a Single Trial . . . . . 16

**CONCLUSION** . . . . . 19

# TABLE OF AUTHORITIES

**Cases**

*A.G.1 v. City of Fresno*, 2023 WL 3752008 (E.D. Cal. June 1, 2023) . . . . . . . . . . 18

*Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999). . . . . . . . . . 3

*Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957 (10th Cir. 1993) . . . . . . . . . . 2, 9

*Ayers v. City of Cleveland*, 773 F.3d 161 (6th Cir. 2014). . . . . . . . . . 12

*Belisle v. BNSF Ry. Co*., 697 F. Supp. 2d 1233 (D. Kan. 2010). . . . . . . . . . 2, 16

*Bianca v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, 2012 WL 2327832
(N.D. Okla. June 19, 2012). . . . . . . . . . 2

*Birch v. Town of New Milford*, 2025 WL 289205 (D. Conn. Jan. 24, 2025) . . . . . . . . . . 4

*Black v. West Virginia State Police*, 2023 WL 6520079 (S.D. W. Va. Oct. 5, 2023) . . . . . . . . . . 12

*Burke v. Glanz*, 2016 WL 4036187 (N.D. Okla. July 20, 2016). . . . . . . . . . 5

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) . . . . . . . . . . 6

*Comer v. Cnty. of Sutter*, 2024 WL 5007507 (E.D. Cal. 2024) . . . . . . . . . . 10, 11

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . . . . . . 4

*Crowson v. Washington Cnty.*, 983 F.3d 1166 (10th Cir. 2020). . . . . . . . . . 7

*De Freitas v. Hertz Cor.*, 2023 WL 3505498 (D. Nev. May 17, 2023) . . . . . . . . . . 13

*Estate of Hill v. NaphCare, Inc.*, 2022 WL 2177679 (E.D. Wash. June 14, 2022) . . . . . . . . . . 15

*Estate of McClain v. City of Aurora*, 2021 WL 307505 (D. Colo. Jan. 29, 2021) . . . . . . . . . . 7

*Estate of Melvin by and through Melvin v. City of Colorado Springs*, 2021 WL 50872
(D. Colo. Jan. 5, 2021) . . . . . . . . . . 3, 8

*Fairley v. Luman,* 281 F.3d 913 (9th Cir. 2002). . . . . . . . . . 7

*Florek v. Vill. of Mundelein*, 649 F.3d 594 (7th Cir. 2011) . . . . . . . . . . 5

*Garcia v. Salt Lake Cnty.*, 768 F.2d 303 (10th Cir. 1985) . . . . . . . . . . 7

*Gillispie v. City of Miami Twp*., 2022 WL 16541259 (S.D. Ohio Oct. 28, 2022) . . . . . . . . . . 4, 14

*Guinn v. CRST Van Expedited, Inc.*, 2011 WL 2181963 (W.D. Okla. June 2, 2011) . . . . . . 17, 18

*Herd v. Asarco Inc.*, 2003 W 25847423 (N.D. Okla. May 28, 2003) . . . . . . . . . . 2, 16

*Howard v. City of Durham*, 2021 WL 5086379 (M.D.N.C. Nov. 2, 2021) . . . . . . . . . . 12

*Jain v. Randel Solutions, LLC*, 2022 WL 823082 (D. Kan. Mar. 18, 2022) . . . . . . . . . . 2

*Jiminez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) . . . . . . . . . . 5

*Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247 (N.D. Cal. Dec. 17, 2018) . . . . . . . . . 13

*Kluppelberg v. Burge*, 84 F. Supp. 3d 741 (N.D. Ill. 2015) . . . . . . . . . . 13

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023) . . . . . . . . . . 7

*Lutron Electronics Co., Inv. v. Crestron Electronics, Inc.*, 2010 WL 2024510
(D. Utah May 19, 2010) . . . . . . . . . . 17

*Manchas v. City and Cnty. of Denver*, 2024 WL 2318753 (D. Colo. May 21, 2024) . . . . . . 7, 8, 9

*Manganiello v. Agostini*, 2008 WL 5159776 (S.D.N.Y. Dec. 9, 2008) . . . . . . . . . . 4

*McCullon v. Parry*, 2021 WL 4947237 (D. Colo. June 23, 2021) . . . . . . . . . . 5

*McFarlin v. Bd. of Cnty. Comm'rs of Cnty. of Roosevelt*, 2021 WL 5388543
(D.N.M. Nov. 18, 2021) . . . . . . . . . . 3, 17, 18

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) . . . . . . . . . . 5

*Monaghan v. SZS 33 Associates, L.P.*, 827 F. Supp. 233 (S.D.N.Y. 1993) . . . . . . . . . . 2

*Newsome v. McCabe*, 2002 WL 548725 (N.D. Ill. Apr. 4, 2002) . . . . . . . . . . 12

*Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003) . . . . . . . . . . 12

*Overhead Solutions, Inc. v. A1 Garage Door Serv., LLC*, 2021 WL 4145999 (D. Colo. Sept. 13, 2021) . . . . . . . . . . 18

*Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012) . . . . . . . . . . 12

*Parmar v. City of Aurora*, 2021 WL 1662719 (D. Colo. Apr. 28, 2021) . . . . . . . . . . 3

*Patten v. Lederle Laboratories*, 676 F. Supp. 233 (D. Utah 1987) . . . . . . . . . . 2

*Real Bunn-O-Matic*, 195 F.R.D. 618 (N.D. Ill. 2000) . . . . . . . . . . 2

*Restivo v. Hessemann*, 846 F. 3d 547 (2d Cir. 2017) . . . . . . . . . . 12

*Richards v. Cnty. of San Bernardino*, 39 F.4th 562 (9th Cir. 2022) . . . . . . . . . . 7

*Rubalcava v. City of Los Angeles*, 2024 WL 2031641 (C.D. Cal. May 6, 2024) . . . . . 4, 12, 17, 18

*Schrieber v. Federal Express Corp.*, 2010 WL 1078458 (N.D. Okla. Mar. 18, 2010) . . . . . . . . . 14

*Scott v. City of Pasadena*, 2014 WL 12806259 (C.D. Cal. Feb. 6, 2014) . . . . . . . . . . 18

*Strickland v. City of Las Cruces*, 2025 WL 1744307 (D.N.M. June 24, 2025) . . . . . . . . . . 13

*Sunbelt Corp. v. Noble Denton & Assocs.*, 5 F.3d 28 (3d Cir. 1993) . . . . . . . . . . 4

*Tarlton v. Sealey*, 2021 WL 1845171 (E.D.N.C. May 7, 2021) . . . . . . . . . . 12

*Taylor v. Workman*, 554 F.3d 879 (10th Cir. 2009) . . . . . . . . . . 8

*Terry v. Cook County Dep't of Corr.*, 2010 WL 2720754 (N.D. Ill. July 8, 2010) . . . . . . . . . . 9

*United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961) . . . . . . . . . . 14

*Valdez v. Motyka*, 2020 WL 3963717 (D. Colo. July 13, 2020) . . . . . . . . . . 3

*Wallace v. Ormsby Trucking, Inc.*, 2006 WL 8436341 (W.D. Okla. Sept. 29, 2006) . . . . . . . . 1, 2

*Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988) . . . . . . . . . . 6

*Wheatt v. City of East Cleveland*, 2019 WL 4071646 (N.D. Ohio Aug. 29, 2019) . . . . . . . . . . . . 4

*Wiggins v. Penske Logistics LLC*, 2022 WL 1161628 (C.D. Cal. Mar. 17, 2022) . . . . . . . . . 14, 17

*Williams v. City and Cnty. of Denver*, 99 F.3d 1009 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 6

*Windsor Industries, Inc. v. Pro-Team, Inc.*, 87 F. Supp. 2d 1129 (D. Colo. 2000) . . . . . . . . . . . 17

**Rules**

Fed. R. Civ. P. 42(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

**Other Authorities**

Fed. Prac. & Proc. § 2388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Plaintiffs Malcolm Scott and Demarchoe Carpenter, through their attorneys, respectfully submit this response in opposition to Defendants' Joint Motion to Bifurcate Trial [Dkt. 317]. In opposition, Plaintiffs state as follows:

## INTRODUCTION

This action concerns the wrongful convictions of Plaintiffs Malcolm Scott and Demarchoe Carpenter, who have agreed to try their claims together. As is the normal course, the trial in this matter for the three discrete claims against three discrete co-defendants should be tried at the same time. Defendants' bifurcation motion is really a motion to *trifurcate* the trial. They are seeking separate trials not only on the claims against the individual Defendants and the City of Tulsa but also on liability and damages. Having separate trials on liability and damages as well as on the individual and municipal liability claims in this case is impossible, given overlapping issues and evidence. Plaintiffs' innocence and the damages they suffered as innocent people are relevant to the substantive claims that are going to be tried—primarily, fabrication of evidence. Bifurcating or trifurcating the trial would severely prejudice Plaintiffs, confuse the issues, be inefficient and burdensome, lead to additional disputes at trial (about issues like what evidence is admissible during which trial), and burden third parties, who would have to appear and testify twice. Defendants have not met their burden of showing that trifurcation is warranted, and their motion should be denied.

## LEGAL STANDARD

In limited circumstances, Federal Rule of Civil Procedure 42(b) gives courts discretion to bifurcate trial "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b); *see Wallace v. Ormsby Trucking, Inc.*, 2006 WL 8436341, at

*2 (W.D. Okla. Sept. 29, 2006). The narrow circumstances where bifurcation might be appropriate are an exception, not the rule, to the general course of action. *See* FED. R. CIV. P. 42(b), advisory cmt. ("separation of issues for trial is not to be routinely ordered"); 7 FED. PRAC. & PROC. § 2388 (2016) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course."); *Herd v. Asarco Inc.*, 2003 W 25847423, at *3 (N.D. Okla. May 28, 2003) ("Bifurcation is not to be routinely ordered."). As a result, separate trials should not be ordered "unless such a disposition is clearly necessary." *Real Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also Jain v. Randel Solutions, LLC*, 2022 WL 823082, at *1 (D. Kan. Mar. 18, 2022); *L-3 Comms. Corp. v. OSI Sys., Inc.*, 418 F. Supp. 2d 380, 382 (S.D.N.Y. 2005); *Bianca v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, 2012 WL 2327832, at *2 (N.D. Okla. June 19, 2012) (declining to bifurcate trial because movant had not shown *undue* prejudice from a single trial and citing *Monaghan v. SZS 33 Associates, L.P.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) ("[Defendants] have failed to overcome the fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation … is reserved for truly extraordinary situations of *undue* prejudice")).

Moreover, bifurcation cannot be entered where doing so will prejudice one party. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). As the parties seeking bifurcation, Defendants bear the burden of showing it is warranted. *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010). The "presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses. The burden is on the defendant … to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Patten v. Lederle Laboratories*, 676 F. Supp. 233, 238 (D. Utah 1987) (internal quotation marks omitted).

## ARGUMENT

### I. Separate Trials on Individual and Municipal Liability Would Be Prejudicial to Plaintiffs and Would Not Promote Judicial Economy or Conserve Resources

Bifurcation is the exception, not the norm, and Defendants have failed to justify its application here. Despite asserting that "it is routine throughout the country to bifurcate trials in cases like the one before the Court," Dkt. 317 at 3, Defendants are mistaken.[1]

The fact is that the majority of courts in this Circuit have declined to bifurcate municipal from individual liability claims in § 1983 cases. *See, e.g.*, *Parmar v. City of Aurora*, 2021 WL 1662719, at *1 (D. Colo. Apr. 28, 2021) ("Bifurcation in this case, where there is close connection and overlap between the individual and entity liability claims, would be costly, waste time, and result in duplicative litigation"); *Estate of Melvin by and through Melvin v. City of Colorado Springs*, 2021 WL 50872, at *1 (D. Colo. Jan. 5, 2021); *Valdez v. Motyka*, 2020 WL 3963717, at *1 (D. Colo. July 13, 2020) (finding bifurcation unwarranted where the plaintiff was "limited to two *Monell* theories (which are arguably a single theory) and the evidence with which he may pursue those theories is relatively straightforward, not voluminous" and were "closely connected to his individual liability theory"). Similar motions to trifurcate have been denied. *McFarlin v. Bd. of Cnty. Comm'rs of Cnty. of Roosevelt*, 2021 WL 5388543, at *2 (D.N.M. Nov. 18, 2021) (denying defendants' motion to trifurcate trial in a § 1983 case between individual and municipal liability and between liability and damages, because it would not "prevent delay or prejudice" or be "conducive to the convenience or economy of the Court").

---

[1] Defendants cite a single case (*Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999)), in support of their request to bifurcate individual and municipal liability claims. But because district courts have the discretion to bifurcate when the movant proves it is warranted, an appellate court decision affirming a district court's decision to exercise that discretion in a factually distinguishable case is unpersuasive.

The same is true in wrongful conviction cases throughout the country: motions to bifurcate (or trifurcate) trial are routinely denied. *See, e.g.*, *Birch v. Town of New Milford*, 2025 WL 289205, at *4 (D. Conn. Jan. 24, 2025); *Rubalcava v. City of Los Angeles*, 2024 WL 2031641, at *8 (C.D. Cal. May 6, 2024); *Gillispie v. City of Miami Twp*., 2022 WL 16541259, at *4 (S.D. Ohio Oct. 28, 2022); *Wheatt v. City of East Cleveland*, 2019 WL 4071646, at *4 (N.D. Ohio Aug. 29, 2019); *Manganiello v. Agostini*, 2008 WL 5159776, at *9 (S.D.N.Y. Dec. 9, 2008).

### A. Evidence of Training Substantially Overlaps Both Individual and Municipal Liability and Is Not Unduly Prejudicial to the Individual Defendants

Plaintiff's *Monell* claim at trial pertains to the failure to train the defendant officers. The defendant officers' background training—or lack thereof—is relevant to their mental state. On that issue, Plaintiffs must prove sufficient *mens rea* to show a constitutional violation on each of their claims and the Supreme Court has held negligence is insufficient to give rise to constitutional violations. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *see also Davidson v. Cannon*, 474 U.S. 344 (1986); *Daniels v. Williams*, 474 U.S. 327 (1986).

Accordingly, evidence of training (or its absence) is simultaneously relevant to both claims against the defendant officers and the City. If the officers were to argue, for example, that they did not have training on how to properly write reports or disclose evidence, they could point to the City as being at fault for not training them. The City in this way is no different than any other co-defendant and bifurcation would create a problem where the harm was caused by either an officer or the City but Plaintiff would not be permitted to point to both of them simultaneously. *See, e.g.*, *Sunbelt Corp. v. Noble Denton & Assocs.*, 5 F.3d 28, 34 (3d Cir. 1993) (court should not allow severance where it would "place each defendant in the position of being able to defend by asserting the absent party's negligence.") Plaintiffs would be prejudiced in that trial if they were not

permitted to elicit evidence about the City's lack of training or to present an argument that the constitutional obligation was so obvious that no additional training was necessary. Either way, the jury must consider both evidence of training (or its absence) to properly evaluate the defendant officers' testimony.

Put differently, bifurcation of *Monell* and individual liability would create a prejudicial empty-chair problem in the same way as bifurcation between any co-defendants.[2] Indeed, and though not the same as a constitutional violation itself, evidence of training or the City of Tulsa's policies at the time—or their absence—is relevant to the jury's consideration of the officers' mental state. *See, e.g.*, *Burke v. Glanz*, 2016 WL 4036187, at *1 (N.D. Okla. July 20, 2016); (evidence of policies relevant to sheriff's mental state); *McCullon v. Parry*, 2021 WL 4947237, at *9 (D. Colo. June 23, 2021) (same); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 602-03 (7th Cir. 2011). Evidence of training (or its absence) is thus akin to expert testimony in police practices where it such testimony "can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Jiminez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013); *see also, e.g.*, *Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (in a § 1983 wrongful conviction case involving a *Brady* claim, explaining a police practices expert "should have been admitted to assist the trier of fact in determining whether [the detective defendant's] conduct deviated so far from institutional norms that the jury could conclude that [he] was reckless or deliberately indifferent to [plaintiff's] constitutional rights.").

[2] Plaintiffs do not address here the potential conflict of interest in the same counsel representing both the City and the individual defendants. Though joint representation may preclude the "finger pointing" or "empty chair" arguments, the basic testimony by either the City or the officers could have the same effect regardless of the fact they have the same counsel.

Moreover, contrary to Defendants' assertion, Dkt. 317 at 6, *Monell* liability is not predicated on individual liability, which can sometimes warrant bifurcation. This is not a case, like an excessive force claim under the Fourth Amendment where intent is irrelevant, where individual liability and *Monell* liability are contingent on one another. That was the situation in *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), cited by Defendants, Dkt. 317 at 6. In this case however, because Plaintiff must prove not only a constitutional violation but also requisite mental state of the officers for *liability*, a jury could find a constitutional violation but not liability just as if the officers were entitled to qualified immunity. As a result, a lack of individual *liability* does not preclude Plaintiffs from having viable *Monell* claims against the City. *See Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988) ("We note that there is no inherent inconsistency in allowing a suit alleging an unconstitutional policy or custom to proceed against the city when the individuals charged with executing the challenged policy to in[j]ure the plaintiff have been relieved from individual liability. While it would be improper to allow a suit to proceed against the city if it was determined that the officers' action did not amount to a constitutional violation, there is nothing anomalous about allowing such a suit to proceed when immunity shields the individual defendants. The availability of qualified immunity does not depend on whether a constitutional violation has occurred. While a government official who violates the constitution will be protected if his or her actions were reasonable in light of clearly established law and the information the official possessed when he or she acted, municipalities enjoy no such shield.").[3]

---

[3] *See also Williams v. City and Cnty. of Denver*, 99 F.3d 1009, 1014 n.3 (10th Cir. 1996) ("Officer Farr is entitled to qualified immunity because the law was not clearly established. Nonetheless, … the City may be liable for its inadequate hiring and training policies if Officer Farr acted unconstitutionally. The grant of qualified immunity does not therefore eliminate Ms. Williams's claim against the City based on *City of Canton*.").

Given these authorities, it is established that municipal liability may exist without individual liability in the face of systemic failure of policies, procedures, or training. *See, e.g.*, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) ("municipal liability may exist without individual liability: for example, for a systemic failure of medical policies and procedures") (citing *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191-92 (10th Cir. 2020); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 306-07 (10th Cir. 1985)). While the Tenth Circuit has not addressed this exact scenario in a wrongful conviction case, the Ninth Circuit has in *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 574 (9th Cir. 2022). There, as it pertains to a *Brady* claim, the Court explained that a plaintiff can establish municipal liability even where "'the officers are exonerated on the basis of qualified immunity, because they were merely negligent, or for other failure of proof,'" *Id.* (quoting *Fairley v. Luman,* 281 F.3d 913, 917 n.4 (9th Cir. 2002)). In addition to an express policy, the Court described the Plaintiff's *Monell* claim concerning whether "the lack of any training or policy on *Brady* by [the police department] resulted in critical exculpatory evidence being withheld by the prosecution" was a *Monell* claim "not premised on a theory of liability that first requires a finding of liability on the part of the individual officers." *Id.* The same is true here.

As a result, the argument that bifurcation is appropriate because a finding of municipal liability is dependent on an underlying finding of individual liability has been repeatedly rejected. *See, e.g.*, *Manchas v. City and Cnty. of Denver*, 2024 WL 2318753, at *3 (D. Colo. May 21, 2024); *Estate of McClain v. City of Aurora*, 2021 WL 307505, at *2 (D. Colo. Jan. 29, 2021) (discussing Tenth Circuit case law holding that individual liability is not required for municipal liability, citing *Crowson*, 983 F.3d at 1191, and denying motion to bifurcate).

Nor is there any prejudice to the individual defendants by having a unified trial. This trial will not involve a widespread practice claim where there are scores of other collateral instances of officer misconduct, nor will this trial involve a *Monell* claim that involves proving the bad acts of other Tulsa police officers. It is about whether the City of Tulsa provided adequate training (including to these particular officers), and whether that absence of training caused Plaintiff's wrongful convictions. That sort of *Monell* evidence overlaps with the officers' liability.

Defendants provide little argument on why bifurcation is warranted. For example, Defendants do not explain why evidence relating to the City's failure to train officers on their *Brady* obligations would be prejudicial (much less *unduly* prejudicial) to Defendants Meek and Solomon. *See* Dkt. 317 at 5. They simply assert prejudice without any analysis. *Id.* Discussion of the City's failure to train officers on the handling of exculpatory evidence and adequate interview and interrogation tactics is not inflammatory evidence. Again, Plaintiffs' failure-to-train theory is unlike a widespread practice theory of *Monell*, which would involve evidence of other officers' misconduct against other individuals that might be prejudicial to Defendants Meek and Solomon or which could take a substantial amount of time to present during trial. Even with respect to a widespread practice theory of *Monell*, courts have found that any risk of prejudice can be cured with limiting instructions. *See Manchas*, 2024 WL 2318753, at *3 (holding that any risk of prejudice from "evidence of unrelated arrests of other individuals, the Officers' conduct during unrelated uses of force, and DPD training and policies … can be mitigated by the use of jury instructions and verdict forms"). That is certainly the case here. *Estate of Melvin*, 2021 WL 50872, at *3 ("[T]o the extent that Defendants may be prejudiced by jurors confusing or conflating issues, such prejudice can be mitigated through the jury instructions and verdict form."); *Taylor v. Workman*, 554 F.3d 879, 893 (10th Cir. 2009) ("Jurors are presumed to follow their instructions.").

Despite Defendants' contentions otherwise, the testimony of multiple witnesses would be repeated in several phases of the trial, if bifurcated or trifurcated. For one, both Plaintiffs would have to testify at least twice (and possibly thrice). In addition, the Defendants themselves would have to testify at least twice (and possibly thrice). The City of Tulsa, through its 30(b)(6) representative, Matt McCord, would have to testify twice. The testimony of Plaintiffs' police practices expert, Chief Joseph Allio—who, in summary, has opined that various aspects of the detectives' conduct during the investigation as well as Tulsa's policies and training fell below generally accepted police practices at the time—is relevant and helpful to the jury on Plaintiffs' claims against both the individual defendants and the City of Tulsa. *See* Ex. 1 (Allio Report). More specifically, Chief Allio opines that the detectives' conduct with respect to their interviews of Ken Price, Rashun Williams, and other witnesses fell below generally accepted police practices at the time. *E.g.*, Ex. 1 at 14, 16, 23-24. Bifurcating these claims would only result in the same evidence and the testimony of Chief Allio having to be presented twice. *See Terry v. Cook County Dep't of Corr.*, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) (denying motion to bifurcate individual and municipal liability claims because it would result in "two trials to prepare for, and two trials that would include much redundant evidence," which "would not serve judicial economy."). Third party witnesses may need to be called twice (if not thrice).

In short, separating the trial of Plaintiffs' individual and municipal liability claims will not conserve judicial economy or resources because evidence of the City of Tulsa's failure to train (e.g., testimony from Plaintiffs' expert, Chief Allio, and the City's Rule 30(b)(6) witness on training, Matt McCord), is relevant to both. *Manchas*, 2024 WL 2318753, at *3 ("Plaintiff's theory of municipal liability is straightforward and closely connected to Plaintiff's individual liability theories against the Individual Defendants. At issue here are the Individual Defendants' actions

and the City of Denver's policies and training regarding those actions. Thus, there will be substantial overlap in the evidence and witnesses necessary for both sets of claims.").[4]

**B. *Monell* Bifurcation Would Prejudice Plaintiffs**

For many of the reasons described above, bifurcating Plaintiffs' claims against Defendants Meek and Solomon from the claims against the City of Tulsa would be prejudicial to Plaintiffs. *Angelo*, 11 F.3d at 964 ("[B]ifurcation is an abuse of discretion if it is unfair or prejudicial to a party"). For one, it would make it more difficult at each phase to prove the liability of the co-defendant if they were bifurcated out. At the trial against the individual officers, Defendants Meek and Solomon could say that they did not know or understand their *Brady* obligations. At the trial against Meek and Solomon, Plaintiffs need to be able to present evidence that the City should have trained them on these obligations. Second, apart from their own testimony, the testimony of the individual defendants, and the testimony of the City representative, Plaintiffs would have to bring in their police practices expert (Chief Allio) twice, resulting in greater expense.

In addition, because training is relevant to the officers' mental states, excluding evidence of the City's training (or lack thereof) could contribute to an unfair and incorrect result based upon a limited range of evidence that should have been available to Plaintiffs to show liability of either the City, the individual defendants, or both.[5]

---

[4] The only citation Defendants provide in support of their argument—*Crawford v. City of Oklahoma City*, 2009 WL 5070832 (W.D. Okla.)—is not a court decision at all; it is a motion by the City of Oklahoma City seeking bifurcation in that case. This motion was denied. Dkt. 36, No. 5:08-cv-472-HE. This is not legal authority supporting Defendants' trifurcation request.

[5] Defendants claim that bifurcation of individual and *Monell* claims could encourage settlement if Plaintiffs prevail on their individual liability claims first. Plaintiffs do not understand this. But beyond that, prejudicing one party at trial so that it might settle with another is obviously anathema to the just and fair operation of the Courts. Regardless, Plaintiffs have a very strong interest in holding the City accountable—an interest that Defendants cannot simply wave away. *See, e.g.*, *Comer v. Cnty. of Sutter*, 2024 WL 5007507, at *3 (E.D. Cal. 2024) (denying bifurcation of individual and *Monell* claims and recognizing "the independent constitutional injuries that

### C. *Monell* Bifurcation Would Not Serve Judicial Economy or Conserve Resources

As discussed above, the same evidence on training and testimony from Plaintiff's expert, Chief Allio, and the City's Rule 30(b)(6) witness, Matt McCord, would have to be presented at both the trial against Defendants Meek and Solomon and the City of Tulsa. Thus, it would not serve judicial economy to separate the trials of individual and municipal liability. And, a trial on the *Monell* claims would necessarily require at least some explication of the underlying constitutional claims. *Comer*, 2024 WL 5007507, at *4 ("To prove Plaintiff's *Monell* theories of … failure to train at a bifurcated trial would necessarily require evidence of the underlying individual constitutional violation as a touchstone for each theory. This is exactly the type of evidence that meaningfully overlaps between individual officer liability and *Monell* liability.").

Furthermore, the evidence of the City's training (or lack thereof) is pretty straightforward, and so it would not result in a "much longer trial" if there was a single trial including the *Monell* claim. *See, e.g.*, Dkt. 288-28 (McCord Dep.) at 64-66 (testifying that City provided no training on disclosure of exculpatory evidence). Notably, Defendants did not even disclose any opinions from their police practices expert, Jack Ryan, on the topic of the City's training (or policies). *See* Dkt. 215-1 (Ryan Report) at 90-106. Thus, there would be no time savings there.

## II. Separate Trials on Liability and Damages Would Be Prejudicial to Plaintiffs and Contradict Judicial Economy

Bifurcation of liability and damages cannot work in any fair manner and would grievously prejudice Plaintiffs by excluding evidence of Plaintiffs' innocence. Indeed, bifurcating liability and damages would be reversible error. Defendants' motion must be denied.

---

Plaintiff allegedly suffered at the hands of the municipality" and the "validity and import of non-economic objectives a plaintiff may have for their litigation.") (internal quotation marks omitted).

### A. Evidence Relevant to Liability and Damages Overlaps Substantially and Is Intertwined

Defendants' motion is premised on the idea that damages and liability can be neatly carved apart. But, that assumption is mistaken. For one, both Plaintiffs will testify about their innocence, about the facts and circumstances in their lives, and about their lack of knowledge of the *Brady* evidence. Evidence of innocence is relevant to damages. *See Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014); *Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012). Evidence of innocence is also relevant to liability in at least three ways.

First, evidence of Plaintiffs' innocence corroborates Plaintiffs' fabrication claims. Specifically, Plaintiffs' innocence corroborates the accounts of Ken Price and Rashun Williams that when, for example, Defendants Meek and Solomon interviewed them, they did not claim that Plaintiffs committed the shooting. *See, e.g.*, *Ayers*, 773 F.3d at 169; *Rubalcava*, 2024 WL 2031641, at *8; *Black v. West Virginia State Police*, 2023 WL 6520079, at *2 (S.D. W. Va. Oct. 5, 2023); *Tarlton v. Sealey*, 2021 WL 1845171, at *1 (E.D.N.C. May 7, 2021); *Howard v. City of Durham*, 2021 WL 5086379, at *6 (M.D.N.C. Nov. 2, 2021) (evidence of innocence relevant to whether police fabricated witness statements).

Second, evidence of Plaintiffs' innocence is necessary to have a fair trial because Defendants intend to submit evidence tending to suggest Plaintiffs' guilt and that they did nothing wrong by emphasizing (among other things) that they were convicted at their original criminal trial. Evidence of innocence is as "relevant to this trial as the fact of their convictions." *Tarlton*, 2021 WL 4944349, at *2; *Restivo v. Hessemann*, 846 F. 3d 547, 559 (2d Cir. 2017) (noting that although innocence was not an element of plaintiffs' § 1983 claims "the evidence of their innocence provides an important backdrop for their claims at trial"); *Newsome v. McCabe*, 2002 WL 548725, at *6 (N.D. Ill. Apr. 4, 2002), aff'd 319 F.3d 301 (7th Cir. 2003) ("The issue in this

was not, as defendants point out, whether Newsome was guilty or innocent of the crime. But that is what it would have become if the fact of Newsome's innocence … had been kept from the jury. Excluding that evidence … would have invited the jurors to draw the impermissible inference that he was actually guilty, and thus, absolve defendants of any misconduct."); *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 747 (N.D. Ill. 2015) ("The COI, like the initial guilty verdict, is evidence in the case.").

Third, evidence of innocence is relevant to showing what ultimately happened in Plaintiffs' criminal proceedings. The jury cannot be misled into believing that the charges were dismissed on a ground entirely unrelated to innocence or that there is a chance they were freed due to a "technicality." Instead, Plaintiffs must be permitted to show the truth of the matter: they were declared innocent after witnesses came forward confirming their innocence.

Finally, Defendants' motion must be denied because even assuming *arguendo* that innocence evidence is not relevant to Plaintiffs' constitutional claims, damages and liability still could not be neatly separated. Where, as here, "liability and damages evidence may overlap, the proper course is to deny bifurcation." *Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018); *De Freitas v. Hertz Cor.*, 2023 WL 3505498, at *2 (D. Nev. May 17, 2023) (denying bifurcation where the "liability and damages evidence is intertwined."); *Strickland v. City of Las Cruces*, 2025 WL 1744307, at *1 (D.N.M. June 24, 2025) (denying bifurcation of liability and damages in a § 1983 shooting case). The evidence of fabrication—which includes evidence of Plaintiffs' innocence—is relevant to showing that Plaintiffs suffered serious damages.

Even if there were "some examples of evidence that would fall only into one category" of damages versus liability, it is impossible to "draw clear lines that would distinguish between the

evidence relevant to" just damages versus just liability. *Gillispie*, 2022 WL 16541259, at *4; *see also Wiggins v. Penske Logistics LLC*, 2022 WL 1161628, at *2 (C.D. Cal. Mar. 17, 2022) ("Bifurcation would create difficult line-drawing questions as trial draws nearer and it becomes necessary to determine what evidence goes to which phase of the trial.").

**B. Plaintiffs Would Be Unfairly Prejudiced by Bifurcation**

Plaintiffs would be unfairly prejudiced by bifurcation. Indeed, where the "question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial." *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961); *see also Schrieber v. Federal Express Corp.*, 2010 WL 1078458, at *1 (N.D. Okla. Mar. 18, 2010) (denying bifurcation because plaintiff would be prejudiced and the liability and damages issues are strongly tied together).

Plaintiffs cannot get a fair trial on their fabrication claims if the Court severed liability from damages. Plaintiffs cannot get a fair trial if, in one phase of the trial, the Defendants are permitted to parade around the fact that Plaintiffs were wrongfully convicted without Plaintiffs being able to counter that evidence, at that time, to show that they are in fact innocent.

**C. Bifurcation Would Multiply, Confuse, and Inconvenience the Proceedings**

With respect to judicial economy, Defendants have not met their burden of showing any convenience from bifurcation. For one, as explained, the issues of liability and damages substantially overlap and so there are no savings on that front. Defendants also neglect to consider the substantial costs of having two trials, including the burden on witnesses. Plaintiffs' alibi evidence—e.g., evidence of their innocence—include witnesses (such as Plaintiffs' family members as well as Plaintiffs themselves) who will also have damages testimony to provide.

Bifurcation is inappropriate where there is significant overlap between liability and damages evidence. *See Estate of Hill v. NaphCare, Inc.*, 2022 WL 2177679, at *4 (E.D. Wash. June 14, 2022) ("The Court agrees that there is significant overlap between the liability and damages evidence in this case. Accordingly, judicial economy is better served by a single trial. Even if the Court utilized a single jury for both phases of a bifurcated trial as NaphCare and Nurse Gubitz suggest, bifurcation would require jurors to twice observe the presentation of significant and identical portions of evidence—first in the liability phase and then again in the damage phase (as well as observe twice the opening statements and closing arguments). Duplicating proceedings in this fashion wastes party and judicial resources that would burden the witnesses to be called in this matter.").

Evidence of Plaintiffs' innocence includes not simply a court's declaration of innocence, but also evidence that someone else the police investigated—Michael Wilson—committed the crime and confessed to committing the crime in a videotaped interview and in his own letters. *See* Dkt. 286 (Resp. to Meek and Solomon's MSJ) at 15-17, 24-25 (discussing Wilson, Harjo and Alverson's commission of the crime); Dkt. 288-17 (2016 Post-Conviction Order). Meek interviewed Wilson and Wilson was found not only with the murder weapon but also the maroon vehicle seen by witnesses during the shooting. This evidence is relevant to both liability and damages. Bifurcating liability from damages would require this same evidence to be presented twice and would disserve judicial economy. If Defendants' proposal were granted, witnesses would have to be called once and recalled again later, with their testimony carefully choreographed to avoid crossing the line between liability and damages. The Court would have to entertain objections about whether evidence and testimony is for liability or damages or both. Sidebars (and confusion) would abound. The trial would expand considerably in length. Witnesses would have

to travel multiple times. Rule 42(b) provides that trial may be bifurcated for convenience, but bifurcation would have the opposite effect. *See Herd*, 2003 WL 25847423, at *3 ("Defendants argue that judicial economy would be served by bifurcation or trifurcation because a separate liability trial might eliminate the need for a trial on damages; the Court does not find this argument persuasive. Because the trial will only involve two Plaintiffs, evidence with respect to damages will not be an inconvenience to the Court or to the parties.").

**D. Defendants Would Not Be Unduly Prejudiced by a Single Trial**

Nearly every trial is unitary—juries hear about both liability and damages and are instructed on the law (which requires them to find liability before assessing damages). This is not a trial involving graphic or extreme evidence of either liability or damages. This is not a trial involving many witnesses. Indeed, a single trial is *already* a huge efficiency because two plaintiffs—both with separate Seventh Amendment rights to their own trial—have agreed to a single trial. The norm should prevail.

Defendants argue that bifurcating liability and damages will avoid prejudice to them because Plaintiffs spent 22 years in prison and are expected to testify about their substantial damages. Dkt. 317 at 5. This does not justify bifurcation.

Plaintiffs are going to tell the jury that they are innocent—that is relevant to both liability and damages, as explained above. And, the jury (in both the liability and damages phases of a trial) is going to know that Plaintiffs spent decades in prison as a result of Defendants' actions. *See Belisle*, 697 F. Supp. 2d at 1250-51 (denying motion to bifurcate liability and damages where plaintiff's injuries would be evident to the jury regardless and it would adversely impact plaintiff's ability to present his case). It is necessary for the jury to understand that Plaintiffs are innocent for them to prove liability. This sort of argument is usually made in terms of "sympathy" for the

plaintiffs and has been routinely rejected. *See Rubalcava*, 2023 WL 2031641, at *8 ("[w]ith respect to Defendants' concern that jury sympathy will be elicited by Plaintiffs' evidence regarding the hardship and effects of incarceration, district courts in the Ninth Circuit routinely address such concerns by appropriate jury instructions rather than bifurcation.") (citations omitted); *Guinn v. CRST Van Expedited, Inc.*, 2011 WL 2181963, at *3 (W.D. Okla. June 2, 2011) ("A defendant's speculative concerns regarding jury sympathy are insufficient to warrant bifurcation…. Instead, [a defendant] must identify 'actual prejudice, present or potential, specific to this case.'") (denying motion to bifurcate liability and damages because defendant had not "satisfied its burden" or "offered sufficient argument to show that the prejudice it claims cannot be avoided by proper jury instructions"). Regardless of any sympathetic testimony, it "is commonplace for juries to assess evidence of both liability and damages without bifurcation." *Wiggins*, 2022 WL 1161628, at *2. The same should be true here.

Moreover, "[t]he damages issues in this case do not appear to be extraordinarily complex, therefore, bifurcation will not appreciably shorten the trial." *Windsor Industries, Inc. v. Pro-Team, Inc.*, 87 F. Supp. 2d 1129, 1132 (D. Colo. 2000). "A single trial usually lessens the delay, expense, and inconvenience to all parties." *Lutron Electronics Co., Inv. v. Crestron Electronics, Inc.*, 2010 WL 2024510, at *2 (D. Utah May 19, 2010) (denying motion to bifurcate liability and damages); *Blagg v. Line*, 2012 WL 90439, at *2 (N.D. Okla. Jan. 11, 2012) (denying defendants' motion to bifurcate trial between liability and damages).

Finally, the Court will instruct the jury as to compensatory damages, liability, and provide any other instructions necessary to ensure proper adjudication. Because juries are presumed to follow their instructions, there is no unfair prejudice from proceeding in a single trial. *McFarlin*, 2021 WL 5388543, at *2 ("[t]he jury will be required to address first liability and then damages,"

and that the "Court will provide jury instructions that will clarify the order in which the jury is to consider the issues."); *see also Guinn*, 2011 WL 2181963, at *3 ("CRST points to no specific anticipated testimony or evidence that it believes will engender an emotional response rising to a level that would prevent jurors from adhering to the Court's instructions and the Court's admonition that they must evaluate the evidence without regard to emotion or sympathy. All trials involving serious injuries or death include testimony of family members, and such testimony is often highly emotional. CRST offers no persuasive argument that such evidence in this case is so prejudicial that it must not be presented until after liability is determined.").

The fact that damages evidence will be moot if the jury finds in favor of Defendants on liability is not enough to warrant bifurcation. "[T]hat possibility exists in every case in which the right to damages is disputed," but Defendants "offer[] no argument that this case is unique in that regard and no persuasive argument that bifurcation would promote judicial economy." *Id.*; *see also Overhead Solutions, Inc. v. A1 Garage Door Serv., LLC*, 2021 WL 4145999, at *2 (D. Colo. Sept. 13, 2021) ("Courts routinely try liability and damages together, and defendant has not established a persuasive reason to deviate from this routine practice. Moreover, Rule 42(b) promotes expedition and economy, yet the damages issues in this case are not extraordinarily complex. Therefore, bifurcation will not appreciably shorten the trial. Rather, some issues appear to overlap both liability and damages, and resolving both issues in a single trial will eliminate possible inconsistencies and avoid wasting time and effort that may result from conducting two trials.").

Although Defendants cite one wrongful conviction case where the district court bifurcated damages and liability, such motions have been denied in the majority of cases. *See*, *e.g.*, *Rubalcava*, 2024 WL 2031641, at *8; *A.G.1 v. City of Fresno*, 2023 WL 3752008, at *7 (E.D. Cal. June 1, 2023); *Scott v. City of Pasadena*, 2014 WL 12806259, at *8 (C.D. Cal. Feb. 6, 2014).

## CONCLUSION

For the foregoing reasons, Defendants' motion to bifurcate (indeed, trifurcate) the trial should be denied.

Respectfully submitted,

s/ Elizabeth Wang
Counsel for Plaintiffs

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

David B. Owens
Jordan Poole
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
david@loevy.com
poole@loevy.com

Joseph Norwood
NORWOOD LAW FIRM PC
1717 S. Cheyenne Ave.
Tulsa, OK 74119
O: 918.582.6464

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on July 2, 2025, I filed the foregoing electronically via CM/ECF and thereby served a copy on all counsel of record.

s/ Elizabeth Wang
Counsel for Plaintiffs