IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MALCOLM NIGEL SCOTT**, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**CITY OF TULSA, OKLAHOMA**, *et al.*,<br><br>*Defendants*. | Case No. 4:17-CV-400-GAG-CDL |

**OPINION AND ORDER**

**GUSTAVO A. GELPÍ, Circuit Judge.**[1]

Before this Court are two motions: (1) Plaintiffs Malcolm Scott ("Plaintiff Scott") and De'Marchoe Carpenter's ("Plaintiff Carpenter," collectively, "Plaintiffs") motion to exclude certain opinions of John Ryan ("Ryan"), the proffered expert witness for Defendants City of Tulsa, Oklahoma ("Defendant Tulsa"), Gary Meek ("Defendant Meek"), and Randall Solomon ("Defendant Solomon," collectively, "Defendants"), (Dkt. No. 315, "Plaintiffs' Motion"); and (2) Defendants' motion to exclude certain opinions of Plaintiffs' expert Joseph Allio ("Allio"), (Dkt. No. 316, "Defendants' Motion"). For the reasons discussed below, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion and **DENIES** Defendants' Motion.

**I.     BACKGROUND**

As this Court recently observed, "[t]his case arises from Plaintiffs[']  . . . convictions—and decades-long imprisonment—for a crime they did not commit: a drive-by shooting on

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

1

September 10, 1994." (Dkt. No. 302 at 1-2.)[2] After their exoneration, Plaintiffs filed this lawsuit in July 2017, alleging claims under 42 U.S.C. § 1983 and Oklahoma state law against (among others) Defendants Tulsa, Meek, and Solomon. (Dkt. No. 2.) Following discovery, Defendants separately moved for summary judgment and jointly moved to exclude certain opinions of Plaintiffs' expert witness Allio. (Dkt. Nos. 268, 270-72.) On the same day, Plaintiffs moved to exclude certain opinions of Defendants' expert witness Ryan. (Dkt. No. 269.)

On March 31, 2025, this Court granted in part and denied in part Defendants' motions for summary judgment, leaving intact the following claims: (1) Plaintiffs' *Monell* claim against Defendant Tulsa based solely on the "single-incident failure-to-train" theory of municipal liability; (2) Plaintiffs' *Brady* claims against Defendant Meek based solely on his threatening others to fabricate their statements; (3) Plaintiffs' substantive due process claims against Defendant Meek based solely on his fabricating evidence; and (4) Plaintiffs' substantive due process claim against Defendant Solomon based solely on inaccuracies in his reporting. (Dkt. No. 302 at 26-27.) At the same time, this Court denied without prejudice the dueling motions to exclude expert testimony, allowing the parties to renew those motions after they had accounted for this Court's summary judgment ruling. (Id. at 27.)

Both parties so renewed the motions on May 30, 2025. (Dkt. Nos. 315, 316.) And both parties timely briefed the motions. (Dkt. Nos. 319, 320, 324, 325.)

## II. STANDARD

Federal Rule of Evidence ("Rule") 702 is the starting point for a court considering a motion to exclude expert testimony. It states:

---

[2] This Court incorporates by reference the background facts set forth in the Opinion and Order issued on March 31, 2025. (Id. at 1-8.)

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court and Tenth Circuit have construed this Rule as imposing upon district courts "a gatekeeping function . . . to ensure expert testimony is admitted only if it is relevant and reliable." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).[3] A district court enjoys "broad discretion" in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). But "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. For "[m]ost expert reports are simply disclosure tools, not the script by which an expert will testify at trial." *Clifton v. State Farm Mut. Auto. Ins.*, No. 18-01231, 2021 WL 1100403, at *2 (D. Colo. Mar. 23, 2021).

**III.    DISCUSSION**

This Court first examines Plaintiffs' Motion before turning to Defendants' Motion.

---

[3] Although Rule 702 was amended in December 2023, neither party contends that the 2023 amendments render inapposite the pre-2023-amendment precedent relevant to this case. Indeed, both parties rely heavily on pre-2023-amendment case law.

**A. Plaintiffs' Motion to Exclude Defendants' Expert Ryan**

Defendants offer Ryan as an expert witness to testify on "the reasonableness of the City's training[ and] the remaining *Monell* claim against the City, and to rebut Plaintiffs' police practices expert Joseph Allio." (Dkt. No. 320 at 1.) Plaintiffs argue that Ryan's opinions should be excluded because he (1) "opines on the law" and what "legal mandates" applied to Defendants' investigation, (Dkt. No. 315 at 3-5); (2) encroaches on the jury's role of assessing facts and evidence, determining witness credibility, and applying the law to facts, (id. at 5-8); and (3) makes assertions about officers' training which are neither reliable nor relevant, (id. at 8-9). This Court examines Plaintiffs' arguments in turn.[4]

**1. Opinions Challenged as Improper Legal Conclusions**

Plaintiffs move to exclude Ryan's testimony on the grounds that he "opines on the law" and "legal mandates" in paragraphs 489 through 494, 496, 498, 499, 502, 514, and 521 in his report. (Id. at 3-4.) In response, Defendants contend that Ryan will "not testify to the ultimate issue, but rather [will] discuss[] generally accepted law enforcement practices, including how the law directs those practices." (Dkt. No. 320 at 4.) Plaintiffs' arguments are well-founded to some extent; however, at this stage, it is too early to bar wholesale Ryan from testifying about how the law and so-called legal mandates informed training practices.

Rule 704 "allows an expert witness to testify about an ultimate question of fact." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). But, "[t]o be admissible, an expert's testimony must be helpful to the trier of fact." *Id.* That command prohibits an expert from "stat[ing] legal conclusions drawn by applying the law to the facts." *Id.* (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)). And yet, an expert still "may refer to the law in

---

[4] Because Plaintiffs do not challenge Ryan's qualifications, this Court need not address them.

expressing his or her opinion." *Id.* When doing so, though, the expert must be careful not to "interfere[] with the function of the judge in instructing the jury on the law." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993).

As Plaintiffs point out, courts in this District and beyond have barred Ryan from offering legal conclusions or opinions on the ultimate issue for the jury. *See, e.g.*, *Murphy v. City of Tulsa*, No. 15-528, 2018 WL 468286, at *6-7 (N.D. Okla. Jan. 18, 2018); *Lurry v. City of Joliet*, No. 20-4545, 2023 WL 2138763, at *10 (N.D. Ill. Feb. 21, 2023) (listing cases barring Ryan from testifying on legal conclusions). He, of course, cannot do so.

Still, courts routinely permit experts to testify about whether a defendant's "conduct was consistent with, or constituted a deviation from, standard police practices and procedures." *Murphy*, 2018 WL 468286, at *6-7; *see also Clark v. Louisville-Jefferson Cnty. Metro Gov't, Ky.*, No. 17-00419, 2024 WL 55518, at *5 (W.D. Ky. Jan. 4, 2024) (allowing Ryan to "explain specific police practices that are relevant to the case" provided that he "does not apply those police practices to the facts of the case"); *Lurry*, 2023 WL 2138763, at *12 (permitting Ryan to testify about why defendants "acted consistently with generally accepted police practices and training"). For instance, in *Clark*, the district court prohibited Ryan from "explaining" Supreme Court precedent on exculpatory or impeachment evidence, however, permitted him to "testify about specific police procedures regarding exculpatory or impeachment evidence without expressing legal conclusions." 2024 WL 55518, at *6.

So too here. Ryan may opine on "legal mandates" (a vague term that neither party has defined) when discussing "what police training consists of," but not when purporting to explain what is, in fact, "mandated by the law." *Provost v. Crockett Cnty., Tenn.*, No. 17-01060, 2018 WL 11416133, at *3; *see also Cox v. Glanz*, No. 11-457, 2014 WL 916644, at *5 (N.D. Okla. Mar. 10,

5

2014) ("It is the responsibility of the court, not testifying witnesses, to define legal terms." (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994))).

To be clear, this ruling applies only to Ryan's anticipated testimony. The task of differentiating "between a permissible opinion on an ultimate issue and an impermissible legal conclusion" is complex work. *Richter*, 796 F.3d at 1195 (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). And that task becomes even more difficult at this pretrial stage, where this Court evaluates forecasted testimony without the benefit of a developed trial record. So, to the extent Ryan offers objectionable testimony during trial, Plaintiffs must raise timely and specific objections in accordance with Rule 103.

**2. Opinions Challenged as Improper Encroachment on Jury's Function**

Plaintiffs contend that the "bulk of Ryan's report (85 pages of it)"—paragraphs 18 through 485—recounts what fact witnesses will testify, interprets evidence, and assesses witness credibility. (Dkt. No. 315 at 5-8.) Plaintiffs say that these segments encroach on the jury's function and are "not helpful to the jury under Rule 702 and [are] therefore inadmissible." (Id. at 6.) For their part, Defendants maintain that the paragraphs at issue are the "factual basis" for Ryan's "Opinion section, which follows on paragraph 486." (Dkt. No. 320 at 5.) This Court bars Ryan from testifying about factual findings reserved for the jury; however, this Court will not strike paragraphs 18 through 485 of Ryan's report to the extent those segments merely present the facts on which Ryan relied in forming his opinion.

The dictates of Rule 702 make clear that "[a]n expert may not go so far as to usurp the exclusive function of the jury." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (alteration in original). This means that an expert "may not simply tell the jury what result it should reach without providing any explanation." *Richter*, 796 F.3d at 1195-96. Likewise, an

expert cannot "usurp[] the function of the jury in deciding the facts." *Id.* at 1196 (quoting *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005)). Nor can an expert assess another witness's credibility. *See United States* v. *Walker*, 85 F.4th 973, 985 (10th Cir. 2023).

Paragraphs 18 through 485 of Ryan's report appear to recount what Ryan read in transcripts related to depositions and the November 1995 trial. (Dkt. No. 315-1 ¶¶ 18-485.) On the one hand, Ryan cannot impose upon the jury his factual findings as laid out in paragraphs 18 through 485. *See Clark*, 2024 WL 55518, at *6. But, on the other hand, to the extent that these facts merely present the facts on which Ryan relied in forming his opinions, this Court will not strike them. *See Clifton*, 2021 WL 1100403, at *11 ("Rule 702 does not provide a mechanism to strike an expert's recitation of the facts they understood to exist."); *cf. id.* at *2 ("Most expert reports are simply disclosure tools, not the script by which an expert will testify at trial. Not every statement made in an expert's report will be uttered at trial, and frequently they contain . . . facts that the expert has derived from other sources or simply assumed, and even arguments, little of which may actually be offered for admission at trial."). Should Plaintiffs wish to undermine any factual inaccuracies underlying Ryan's opinions, their counsel may cross-examine Ryan and present evidence that Ryan's understanding of the facts deviates from the evidence produced at trial. *See Murphy*, 2018 WL 468286, at *5-6; *Clifton*, 2021 WL 1100403, at *11.

Plaintiffs also challenge paragraphs 491 through 493, 498, and 503, claiming that these conclusions about what officers and prosecutors knew and which events are supported by evidence "impermissibly encroach on the jury's role." (Dkt. No. 315 at 6-7.) Such testimony would "usurp[] a critical function of the jury" —to evaluate witness credibility—and would not help the jury. *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) . This Court bars Ryan from so testifying. *See Clark*, 2024 WL 55518, at *6.

### 3. Opinions Challenged as Not Relevant or Reliable

Plaintiffs next insist that Ryan's testimony on how officers "are trained" in paragraphs 489, 491 through 494, 498, 499, 501, and 514 is not relevant. (Dkt. No. 315 at 8-9.) They claim there is "no connection between Ryan's assertions about how . . . officers in the United States are trained, and how *the defendant officers in this case were trained* as of . . . 1994." (Id.) Moreover, they say that Ryan's opinions are unreliable because they are largely based on materials published in 2004 and 2021—and thus unrelated to training practices in 1994. (Id. at 8-9.)

Of course, to prevail on claims arising out of a failure to train, the plaintiff "must prove in part[] that [the defendant's] training was inadequate and that such inadequacy 'demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact.'" *Murphy*, 2018 WL 468286, at *3 (quoting *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000)). And "expert testimony regarding professional standards can be relevant and helpful" to proving that point. *Id.* at *4. The defendant, to the contrary, may present expert testimony to demonstrate that its training did conform with professional standards.

Here, to the extent that Ryan wishes to testify about the generally accepted policies in 1994, this Court will permit him to do so. But, to the extent that Ryan seeks to testify about present-day training standards, the opinions would be irrelevant. The events at issue here occurred in 1994; general information about how officers are being trained today—thirty years later—will not help the jury.

As for reliability, Plaintiffs raise arguments in favor of broadly striking Ryan's report at paragraphs 489, 491 through 494, 498, 499, 501, and 514 for lacking reliability. For one thing, they point to Ryan's cited resources in support of his opinion: only documents that post-date by

8

many years the events of this case. And, for another, Plaintiffs note that Defendants have barely rebutted that argument.

Yet, this Court's reading of the relevant sections of the expert report indicate that Ryan has permissibly based his testimony on his specialized knowledge and decades of experience—including experience during the relevant time period. *See Harriet v. Wyoming ex rel. Wyo. Dep't of Transp.*, No. 07-122, 2008 WL 11409392, at *5 (D. Wyo. July 16, 2008) ("In certain fields (such as police behavior), an expert may rely on his experience in making his conclusions." (quoting *Morris v. Hockenmeier*, No. 05-362, 2007 WL 1073875, at *4 (W.D. Mo. Apr. 4, 2007)); *see also United States v. Reulet*, No. 14-40005, 2015 WL 7776876, at *3 (D. Kan. Dec. 2, 2015) (collecting cases for the proposition that "training and experience can supply the requisite bases and reasons for an expert's testimony."). Although Ryan cites to two manuals published after the events at issue in 1994, his report makes manifest that he relied on those materials, among others, in addition to his experience. (Dkt. No. 315-1 at 4.)

So this Court is convinced that Ryan's testimony may be relevant and reliable as to the generally accepted police practices in 1994. Should Plaintiffs wish to undermine Ryan's testimony at trial, they have at their disposal "the traditional and appropriate means of attacking shaky but admissible evidence": "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

### B. Defendants' Motion to Exclude Plaintiffs' Expert Allio

Having decided Plaintiffs' Motion, this Court now turns to Defendants' Motion. Plaintiffs offer Allio as an expert witness on "Defendants' investigation and Tulsa's policies and training during the relevant time period." (Dkt. No. 319 at 1.) Defendants move to exclude Allio's

testimony, claiming that (1) he is not qualified to offer expert testimony; (2) his opinions are not reliable; and (3) his opinions are not relevant and do not help the jury because they do not relate to the remaining claims. (Dkt. No. 316.) This Court addresses Defendants' arguments in turn and finds them unpersuasive.

### 1. Qualifications

Start with Defendants' assertion that Allio is not qualified. They point to his lack of experience training detectives in 1994, establishing policies and procedures in 1994, and teaching, researching, or publishing articles on homicide investigations. (Dkt. No. 316 at 3-4.) Defendants are wrong.

Rule 702 establishes a "liberal standard" for expert qualifications. *United States v. Gomez*, 67 F.3d 1515, 1525-1526 (10th Cir. 1995). To qualify as an expert, the witness must "possess skill, experience, or knowledge in the '[relevant] field.'" *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)). "[E]xperience alone" may suffice. *Seifert v. Unified Gov't of Wyandotte Cnty.*, No. 11-2327, 2016 WL 107932, at *2 (D. Kan. Jan. 8, 2016). And "[a]s long as an expert stays 'within the reasonable confines of his subject area,' . . . 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (second alteration in original) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)).

The information in Allio's report (Dkt. No. 316-1) and *curriculum vitae* (Dkt. No. 289-1) persuades this Court that Allio's experience from 1984 through 2022—as an officer, sergeant, lieutenant, captain, Assistant Police Chief, and Chief of Police—makes him qualified. *See Lakey v. City of Wilson*, No. 20-152, 2024 WL 492389, at *6 (E.D. Okla. Feb. 8, 2024) (holding that

proffered expert was qualified because of his "decades of experience navigating the appropriate means and [relevant] circumstances"); *see also United States v. Bindues*, 741 F. Supp. 3d 967, 999 (D.N.M. 2024) ("Specialized training and substantial length of time in the pertinent field go to establishing an expert's qualifications."). Of particular relevance here, Allio worked on homicide cases as a violent crime detective in the 1990s, and he has received hundreds of hours of training throughout the years. (Dkt. No. 316-1 at 2.) Defendants' objections to Allio's lack of teaching, research experience, or publications are of no matter: those alleged deficiencies may erode the weight of Allio's testimony, but not its admissibility. *See Wise v. Bowling*, No. 20-00067, 2022 WL 4480342, at *7 (N.D. Okla. Aug. 26, 2022) (deciding that perceived deficiencies in an expert, such as their lack of specialization, go to the "weight" of their testimony and can be addressed through cross-examination). And defense counsel may address those alleged weaknesses on cross-examination. *Id.*

### 2. Opinions Challenged as Not Reliable

Next, consider Defendants' attack on the reliability of Allio's testimony. They say that he did not "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." (Dkt. 316 at 4-5.) While Defendants correctly state the Rule, they misconstrue it here.

An expert witness "relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. In *United States v. Medina-Copete*, the Tenth Circuit held that a witness with twenty-five years of experience as a police officer failed to make that requisite connection. 757 F.3d 1092, 1104 (10th Cir. 2014). But there, the officer's testimony was

unreliable because his testimony—about religious iconography and how veneration of a spiritual figure constituted evidence of drug trafficking—was based only on his experience as a "cultural iconography hobbyist," who "visit[ed] several shrines of [Mexican drug traffickers'] patron saints," and "compil[ed] several cases from law enforcement officers throughout the United States where these items have been involved in drug trafficking and other criminal activity." *Id.* at 1098, 1104. The Tenth Circuit held that the "opinion evidence [was] connected to existing data only by the *ipse dixit* of the expert." *Id.* at 1104 (quoting *Kumho Tire*, 526 U.S. at 157).

Not so here. Allio's testimony is based on his decades-long experience as a member of law enforcement, including his years of experience investigating homicides in the 1990s. (Dkt. No. 316-1 at 2.) In that capacity, Allio not only received regular training, but also was routinely engaged in homicide investigation tactics. (Id.) Plainly stated, unlike the purported expert in *Medina-Copete* testifying about "his own self-study of the 'iconography of the Mexican drug underworld,'" *id.*, Allio's experience as a law enforcement officer in the 1990s quite obviously relates to and informs his understanding of the generally accepted police tactics of the relevant time period. This Court thus denies Defendants' challenge to the reliability of Allio's testimony.

### 3. Opinions Challenged as Not Relevant

Finally, move to Defendants' challenge of the relevance of Allio's opinions. (Dkt. No. 316 at 5-10.) In particular, they take aim at Allio's opinions on (1) "Tunnel Vision," "Physical Evidence," "Murder Weapon," "Suspect Vehicle," "Photo Lineup," and "Supervision and Case Management"; (2) Defendants' tactics for interviewing witnesses and suspects tactics; and

(3) TPD's recording and interviewing practices.[5] (Dkt. No. 316 at 5-10.)  These challenges are premature.

Rule 702's command that expert testimony must "help the trier of fact" encompasses a relevance requirement.  *See Daubert*, 509 U.S. at 591.  In other words, the "expert testimony must 'fit'—it must relate to a disputed issue in the case." *Etherton*, 829 F.3d at 1217 (quoting *Daubert*, 509 U.S. at 591-92).  Conversely, "testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id.* at 1223 (quoting *Daubert*, 509 U.S. at 591); *see generally* Fed. R. Evid. 402 (stating that "[i]rrelevant evidence is not admissible").

But "[t]he relevancy standard set out in the [Rules] 'is a liberal one.'" *United States v. Parson*, 84 F.4th 930, 938 (10th Cir. 2023) (quoting *Daubert*, 509 U.S. at 587); *see also id.* ("Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (quotation marks omitted) (quoting *Daubert*, 509 U.S. at 587)).  And "a court is almost always better situated during the actual trial to determine the probative value of evidence." *Delaney v. City of Tulsa*, 766 F. Supp. 3d 1180, 1188-89 (N.D. Okla. 2025) (quoting *Mendelsohn v. Sprint United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010)).  Indeed, "courts are often reluctant to enter pretrial rulings which

---

[5] Defendants also make thinly veiled attempts to point out weakness and contradictions in Allio's opinions.  For instance, Defendants routinely say that the generally accepted standards espoused by Allio contravene those elucidated in the International Association of Chiefs of Police's policy paper from 1996. (See, e.g., id. at 8-9.)  But that argument misses the mark.  "[A]ny weaknesses in the underpinnings of the [expert] opinion go to the weight and not the admissibility of the testimony, and Defendant[s are] free, on cross-examination, to expose whatever weaknesses [they] believe[] exist." *Blocker v. ConocoPhillips Co.*, No. 17-248, 2019 WL 9698536, at *3 (W.D. Okla. May 13, 2019); *see also Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) ("Although an expert opinion must be based on 'facts which enable [her] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required." (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988))).

broadly exclude evidence unless it is clear that the evidence will be inadmissible on all potential grounds." *Evans v. Gen. Elec. Co.*, No. 11-802, 2016 WL 3765735, at *1 (N.D. Okla. Jan. 28, 2016).

Guided by those familiar principles, this Court denies without prejudice Defendants' motion to exclude Allio's testimony as irrelevant. Here, as in this Court's recent decision in *Delaney v. City of Tulsa*, Plaintiffs (*i.e.*, the party opposing the motion to exclude on relevance grounds) "rightly observe that there are permissible purposes for the admission of the evidence that Defendant[s] . . . wish[] to exclude." 766 F. Supp. 3d at 1189. This Court therefore rejects Defendants' premature relevance-based challenges and instructs them to timely and specifically object to the improper use of the testimony at trial. *See id.*

## IV.   CONCLUSION

In light of the foregoing, **IT IS ORDERED** that Plaintiffs' Motion (Dkt. No. 315) is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion (Dkt. No. 316) is hereby **DENIED**.

**IT SO ORDERED.**

DATED: July 11, 2025

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation