IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MALCOLM NIGEL SCOTT,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **CITY OF TULSA, OKLAHOMA,** *et al.*, <br><br> *Defendants*. | Case No. 4:17-CV-400-GAG-CDL |

**OPINION AND ORDER**

**GUSTAVO A. GELPÍ, Circuit Judge.[1]**

Before this Court is Defendants City of Tulsa ("Defendant Tulsa"), Gary Meek ("Defendant Meek"), and Randall Solomon's ("Defendant Solomon," collectively "Defendants") joint motion to bifurcate the trial scheduled for February 2026. (*See generally* Dkt. No. 317, the "Motion.") Defendants, through their Motion, ask this Court to (1) separate the claims against Defendants Meek and Solomon ("individual claims") from the claims against Defendant Tulsa ("*Monell* claims") and (2) separate the liability phase from the damages phase of trial. (Dkt. No. 317 at 1.) For the reasons discussed below, this Court **DENIES** Defendants' Motion.

**I.    BACKGROUND**

This Court writes only for the parties and assumes their familiarity with the facts  In sum, "[t]his case arises from Plaintiffs Malcolm Scott's ("Plaintiff Scott") and De'Marchoe Carpenter's ("Plaintiff Carpenter," collectively, "Plaintiffs") convictions—and decades-long imprisonment—for a crime they did not commit: a drive-by shooting on September 10, 1994." (Dkt. No. 302 at

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

1-2; *see also* Dkt. No. 326.)[2]

On March 31, 2025, this Court issued an Opinion and Order that significantly narrowed the claims at issue. What remains are the following claims: (1) Plaintiffs' *Brady* claims against Defendant Meek based on whether he coerced others to identify Plaintiffs as the shooters and then failed to turn over that exculpatory information; (2) Plaintiffs' substantive due process claims against Defendant Meek based on whether he fabricated evidence; (3) Plaintiffs' substantive due process claim against Defendant Solomon based on whether he knowingly put inaccurate information in his police report; and (4) Plaintiff's *Monell* claim against Defendant Tulsa based on the "single-incident-failure-to-train" theory of municipal liability. (Dkt. No. 302 at 26-27.)

Following this Court's decision, Defendants jointly moved to bifurcate the trial scheduled for February 2026. The parties timely briefed the Motion. (Dkt. Nos. 317, 323, 330.)

## II. STANDARD

Federal Rule of Civil Procedure ("Rule") 42(b) permits a district court to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). That Rule grants a district court "broad discretion in deciding whether to sever issues for trial." *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985). But bifurcation should not be "routinely ordered. " Fed. R. Civ. P. 42(b), advisory committee's note, 1966 Amendment; *see also Jain v. Randel Sols., LLC*, No. 21-2126, 2022 WL 823082 at *1 (D. Kan. Mar. 18, 2022) (noting that "bifurcation is 'the exception not the rule'" (quoting *Byrne v. Yale Univ.*, No. 17-1104, 2020 WL 5258998, at *13 (D. Conn. Sept. 3, 2020))). In determining whether to grant relief, a district court

---

[2] This Court incorporates by reference the background facts set forth in the Opinion and Order issued on March 31, 2025. (Dkt. No. 302 at 1-8.)

must evaluate the facts and circumstances of the case to determine whether bifurcation would "favor separation of issues and the issues are clearly separable." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

## III. DISCUSSION

Defendants seek bifurcation at two steps. First, they argue that this Court should bifurcate the trial by ordering separate trials on the individual claims and the *Monell* claims. And second, they ask this Court to bifurcate the liability and damages stages. They say that the Rule 42(b) factors—separability, avoidance of prejudice, and judicial economy—weigh decisively in their favor at each step of the way. Not so. This Court addresses (and rejects) each bifurcation request, starting with the request to bifurcate the individual claims from the *Monell* claims.

### A. Bifurcation of Individual Claims and *Monell* Claims[3]

Defendants make a slew of arguments, often in conclusory fashion, in support of their pleas to bifurcate the individual claims and the *Monell* claims. They say that bifurcation is warranted because (1) the issues are separable (Dkt. Nos. 317 at 4; 330 at 3-4); (2) they will experience prejudice if the claims are presented together (Dkt Nos. 317 at 4-6; 330 at 5-7); (3) Plaintiffs would not be prejudiced (Dkt. Nos. 317 at 7; 330 at 7-10); and (4) it would promote judicial economy (Dkt. Nos. 317 6-7; 330 at 5). This Court is unpersuaded.

To begin with, the individual claims and *Monell* claims are not so easily separable. Although individual and municipal liability claims have different legal standards and evidentiary

---

[3] Defendants inconsistently frame their request for bifurcating the claims. At first, they ask generally for bifurcation of the individual claims from the *Monell* claims. But, in their Motion, they ostensibly ask this Court to order an initial trial on the discrete issue of whether Plaintiffs suffered a constitutional violation—a question distinct from, and more narrow than, whether Plaintiffs' prevail on their individual claims. For the reasons set forth herein, neither theory succeeds.

3

requirements, the claims in this case are not so unrelated that they require bifurcation. *See e.g.*, *Manchas v. City & Cnty. of Denver*, No. 23-2789, 2024 WL 2318753, at *3 (D. Colo. May 21, 2024) (denying bifurcation in part due to substantially overlapping evidence and witnesses). For one thing, Plaintiffs will have to prove both a constitutional violation and the requisite *mens rea* to prevail on the individual claims; and that showing may require evidence of both individual and *Monell* liability. This Court offers just three examples. First, Plaintiffs will have to prove that Defendant Solomon *knowingly* put inaccurate information in his report. *See Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021) (explaining that the first element of a fabrication-of-evidence claim is that "the defendant *knowingly* fabricated evidence" (emphasis added)). Evidence of Defendant Tulsa's failure to train Defendant Solomon might be relevant to proving such knowledge. *Cf. United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("If, for example, an officer has been trained that officers should do certain things . . . , and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully. And vice verse: If . . . an officer has been trained that officers should not do several things . . . , yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully." (citation omitted)). Second, because both Defendant Meek and Solomon would likely testify at this initial stage, their credibility would be at issue; and their having received (or not received) training could render them less (or more) credible to the jury. Third, Defendant Meek's and Defendant Solomon's *mens rea* will be relevant to the qualified immunity determination. *See Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 747 (10th Cir. 2021) (holding that a plaintiff can overcome qualified immunity by showing (1) a constitutional violation and (2) the law "was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right" (quoting *Bond v.*

*City of Tahlequah*, 981 F.3d 808, 814 (10th Cir. 2020), *rev'd on other grounds*, 595 U.S. 9 (2021) (per curiam))); *see also Scott v. City of Tulsa, Oklahoma*, 775 F. Supp. 3d 1190, 1208 (N.D. Okla. 2025) ("[I]t is clearly established for purposes of section 1983 'that an investigator must not knowingly or recklessly cause a *Brady* violation.'" (citation omitted)).  In sum, the issues are not so separable.

Given the not-so-easy separability of the issues, bifurcating the trial on the claims would then be both (a) more prejudicial to Plaintiffs[4] and (b) inefficient.  And Defendants' oft-conclusory arguments have not persuaded this Court as to the prejudices and inefficiencies that would arise from bifurcation.  Start with prejudice.  There is a "presumption" that Plaintiffs "should be allowed to present [their] case in the order [they] choose[]," and " [t]he burden is on the defendant[s] . . . to convince the court 'that a separate trial is proper.'"  *Patten v. Lederle Lab'ys*, 676 F. Supp. 233, 238 (D. Utah 1987) (quoting *McCrae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490, 492 (E.D. Pa. 1983)); *see also Bianca v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, 2012 WL 2327832 at *2 (N.D. Okla. Jun. 19, 2012) (considering prejudice to Plaintiff's "ability to present a well-supported case").  But Defendants' desired bifurcation would prevent Plaintiffs from presenting pertinent

---

[4] This Court does not minimize the risks of prejudice to Defendants of a trial on all claims.  As Defendants point out, the admission of Defendant Tulsa's inadequate policies might prejudice the individual Defendants because inadequate policies make it more likely that a constitutional violation occurred.  And vice versa: The evidence of the individual Defendants' misconduct might indicate to a jury that Defendant Tulsa must have done something wrong, too.  But, with measured jury instructions and a thoughtful verdict form proposed by the parties, the jury will be well-equipped to discern the difference between individual and municipal liability.  *See Sims v. City of Jasper*, 117 F.4th 283, 291 (5th Cir. 2024) (agreeing with district court's reasoning, which included the district court's opinion that the "jury would be smart enough to separate the evidence on liability and damages"); *see also Manchas*, 2024 WL 2318753 at *3 (stating jury instructions and verdict forms mitigate prejudice); *cf. Taylor v. Workman*, 554 F.3d 879, 893 (10th Cir. 2009) ("Jurors are presumed to follow their instructions."); *Jones v. City of San Antonio*, 757 F. App'x 410, 412 (5th Cir. 2019) (upholding denial to sever based on jury's ability to follow limiting instructions).

evidence to prove their claims. And Defendants Meek and Solomon, in turn, could take advantage of this lack of proof, escaping liability by pointing to Defendant Tulsa's lack of training while, at the same time, preventing Plaintiffs from putting forth evidence of said training. *See, e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 34 (3d Cir. 1993) ("To grant severance here would place each defendant in the position of being able to defend by asserting the absent party's negligence. We refuse to encourage a result which in our view hampers rather than furthers the administration of justice.").

What is more, the inefficiencies of such bifurcation would abound. For one thing, bifurcation would result in increased expenses and time consumption. After all, witnesses—including at least both Plaintiffs, both individual Defendants, the dueling police experts, and any other witnesses with knowledge of the shooting and subsequent investigation—would have to testify at least twice: first, to prove a constitutional violation, and thereafter to discuss testimony relevant to either Defendant Tulsa's liability under *Monell* or damages. For another thing, "[b]ifurcation would create difficult line-drawing questions as trial draws nearer and it becomes necessary to determine what evidence goes to which phase of the trial." *Wiggins v. Penske Logistics LLC*, No. 19-2260, 2022 WL 1161628, at *2 (C.D. Cal. Mar. 17, 2022). Plaintiffs will have to painstakingly choreograph which questions to ask Defendants and witnesses as to not venture into the other claims. And this Court, in turn, would have to weigh Defendants' objections, which would require it to parse through inevitably polysemous evidence.

Take, for a moment, evidence of Plaintiffs' actual innocence. That evidence could (1) bolster Plaintiffs' claims of fabricated evidence, (2) undermine Defendants' evidence tending to show Plaintiffs' guilt (thereby making their prosecutions more convincing), and (3) increase,

perhaps, the jury's damages calculation.[5] In other words, such evidence would be permissible for some purposes in one stage of the trial and for different purposes at another stage of the trial. So this Court would need to give multiple—and seemingly contradictory—limiting instructions, telling the jury to consider differently the import of the same evidence just because it has been offered at different stages of the trial. That task highlights the intractable hair-splitting that bifurcation would require, and thus cuts strongly against bifurcation. This Court therefore rejects Defendants' request to bifurcate the trial on the individual and *Monell* claims.

### B. Bifurcation of Liability from Damages

Similar considerations doom Defendants' effort to bifurcate the damages portion of the trial from the liability portion. Defendants tell this Court that "[b]ifurcation of proceedings into separate trials concerning liability and damages is appropriate when 'the evidence pertinent to the two issues is wholly unrelated' and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Helminski v. Ayerst Lab'ys, a Div. of Am. Home Prods. Corp.*, 766 F.3d 208, 212 (6th Cir. 1985). But, far from wholly unrelated, the evidence of damages often overlaps with that of liability. As mentioned above, evidence of Plaintiffs' innocence, for example, goes toward proving liability, bolstering Plaintiffs' credibility, disproving one of Defendants' potential defenses, and increasing damages. What is more, Plaintiffs' claims require expert testimony evaluating generally accepted police polices *from 1994*. The jury thus will inevitably hear evidence of Defendant Tulsa's officer training, or lack thereof, during that time. And so, by introducing such testimony—about conduct and practices from thirty

---

[5] Defendants also suggest that bifurcation will encourage settlement among the parties. But the parties are free to settle at any point, and Defendants' speculative suggestion that, if Plaintiffs prove that they suffered constitutional violations, Defendants would be more inclined to settle (and thereby save judicial resources) is not moving. *Cf. Rubalcava v. City of San Jose*, No. 20-4191, 2024 WL 2031641, at *8 (N.D. Cal. May 6, 2024).

7

years ago—the jury will intuit that the constitutional violations and subsequent harm to Plaintiffs occurred decades ago. Thus, separating evidence of damages and evidence of constitutional violations would be impractical. And, for reasons similar to those mentioned above, bifurcation on liability and damages would be inefficient: "[t]he same witnesses would have to testify . . . twice" and, in that way, "would needlessly prolong the trial unless the jury were to find Defendants not liable." *Rubalcava v. City of San Jose*, No. 20-4191, 2024 WL 2031641, at *8 (N.D. Cal. May 6, 2024).

To be sure, Defendants are correct that evidence of Plaintiffs 22-year imprisonment could provoke sympathy thereby prejudicing their defense. (Dkt. No. 330 at 6-7.) But the norm in jury trials is that "juries . . . assess evidence of both liability and damages without bifurcation." *Wiggins*, 2022 WL 1161628, at *2. And courts routinely handle such sympathy-based concerns "'through a clear set of jury instructions at trial,' even in the most complex of cases." *Yukech v. Cal. Transport LLC*, No. 20-5804, 2023 WL 4304722, at *2 (S.D. Ohio June 30, 2023) (quoting *Fields v. Ashford*, No. 17-11812, 2022 WL 957501, at *1 (E.D. Mich. Mar. 29, 2022)); *see also Doe 1 v. U.S. Twirling Ass'n, Inc.*, No. 22-5399, at *4 (E.D.N.Y. Apr. 28, 2024) ("Defendants' concerns with regard to the jury improperly using sympathy to conflate liability and damages '[can] most effectively be minimized, or altogether avoided, through limiting instructions designed to emphasize that the jurors must not be swayed by sympathy.'" (quoting *Lewis v. City of New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010)).

At bottom, various considerations weigh against bifurcation, and "outweigh any risk that evidence regarding [Plaintiffs'] injuries . . . will provoke excess sympathy toward [them]." *Wiggins*, 2022 WL 1161628, at *2. This Court therefore denies Defendants' Motion in its entirety.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion (Dkt. No. 317) is hereby **DENIED**.[6]

**IT SO ORDERED.**

DATED: August 14, 2025

                                          *s/ Gustavo A. Gelpí*
                                          GUSTAVO A. GELPÍ
                                          United States Circuit Judge, Sitting by Designation

---

[6] This Court commends all parties for their excellent written advocacy.