### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MALCOLM NIGEL SCOTT**, *et al.*, | |
| *Plaintiffs*, | |
| | **Case No. 4:17-CV-400-GAG-CDL** |
| **v.** | |
| **CITY OF TULSA, OKLAHOMA**, *et al.*, | |
| *Defendants*. | |

### OPINION AND ORDER

**GUSTAVO A. GELPÍ, Circuit Judge.[1]**

     Before this Court are two sets of motions *in limine*: (1) Plaintiffs Malcolm Scott ("Plaintiff Scott") and De'Marchoe Carpenter's ("Plaintiff Carpenter," collectively, "Plaintiffs") nine motions *in limine* (Dkt. No. 322, "Plaintiffs' Motions"); and (2) Defendants City of Tulsa, Oklahoma ("Defendant Tulsa"), Gary Meek ("Defendant Meek"), and Randall Solomon's ("Defendant Solomon," collectively, "Defendants") fourteen motions *in limine* (Dkt. No. 321, "Defendants' Motions"). For the reasons discussed below, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motions and **GRANTS IN PART AND DENIES IN PART** Defendants' Motions.

### I.    BACKGROUND

     Following their decades-long imprisonment, Plaintiffs were exonerated and subsequently filed this lawsuit in July 2017. They allege "claims under 42 U.S.C. § 1983 and Oklahoma state law against (among others) Defendants Tulsa, Meek, and Solomon." (Dkt. No. 326 at 2.)

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

Following discovery, Defendants moved for summary judgment, which this Court granted in part and denied in part in March 2025. (See generally Dkt. No. 302.)[2] The claims that survived this Court's summary judgment ruling are:

> (1) Plaintiffs' *Monell* claim against Defendant Tulsa based solely on the "single-incident failure-to-train" theory of municipal liability; (2) Plaintiffs' *Brady* claims against Defendant Meek based solely on his threatening others to fabricate their statements; (3) Plaintiffs' substantive due process claims against Defendant Meek based solely on his fabricating evidence; and (4) Plaintiffs' substantive due process claim against Defendant Solomon based solely on inaccuracies in his reporting.

(Dkt. No. 326 at 2; see also Dkt. No. 302 at 26-27.) In June 2025, Plaintiffs and Defendants filed the instant motions *in limine*. (Dkt. Nos. 321, 322.) The parties timely briefed the Motions. (Dkt. Nos. 333, 334, 341, 342.)

## II.    STANDARD

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)). The purpose of such motion is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Delaney v. City of Tulsa*, 766 F. Supp. 3d 1180, 1188 (N.D. Okla. 2025) (quoting *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010)). A motion *in limine* "may be granted or denied at the trial court's discretion." *Sandhar v. CSAA Fire & Cas. Ins.*, No. 19-306, 2023 WL 2646307, at *1 (N.D. Okla. Mar. 27,

---

[2] Now this Court incorporates by reference the background facts set forth in that Opinion and Order.

2023). And, generally, a district court will only grant a motion *in limine* when the moving party carries the heavy "burden of showing that the evidence in question is clearly inadmissible on all potential grounds." *Read v. Okla. Flintrock Prods., LLP*, No. 21-316, 2022 WL 17820158, at *1 (N.D. Okla. Dec. 20, 2022) (citation omitted). If the moving party fails to meet that burden, the better course is for a district court to defer evidentiary rulings "until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Malinski v. BNSF Ry. Co.*, No. 15-502, 2017 WL 1278671, at *1 (N.D. Okla. Mar. 31, 2017) (quoting *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). As this Court has said before, "a court is almost always better situated during the actual trial" to make these determinations. *Delaney*, 766 F. Supp. 3d at 1188-89 (quoting *Mendelsohn*, 587 F. Supp. 2d at 1208).

These principles guide this Court in ruling on the parties' Motions below.

## III.     DISCUSSION

Plaintiffs and Defendants both ask this Court to resolve evidentiary disputes. Plaintiffs make nine such requests, and Defendants submit fourteen. This Court starts with Plaintiffs' Motions before turning to Defendants'.

### A.     Plaintiffs' Motions *in Limine*

At the outset, this Court notes that Defendants do not contest several of Plaintiffs' Motions. In particular, Defendants have not opposed Plaintiffs' requests (1) to exclude any references to collateral source payments (Motion *in Limine* No. 6); to bar Defendants from referring to or introducing into evidence Plaintiffs' decision not to testify at their criminal trial (Motion *in Limine* No. 8); and to preclude any arguments that appeal to jurors' pecuniary interests as taxpayers (Motion *in Limine* No. 9). (See Dkt. No. 322 at 26-27, 39-31.) Indeed, Defendants expressly

concede these points.  (Dkt. No. 333 at 13, 15.)  So this Court grants Plaintiffs' uncontested Motions *in Limine* Nos. 6, 8, and 9.

> **Plaintiffs' Motion *in Limine* No. 1 Regarding Evidence that Plaintiffs Were Declared Actually Innocent**

Plaintiffs ask this Court to issue an order admitting the State of Oklahoma's declaration of Plaintiffs' actual innocence of the 1994 shooting of Karen Summers ("Summers").[3]  (Dkt. No. 322 at 8-9.)  Plaintiffs contend that the state court's finding would ensure a fair trial and would be relevant to proving Defendants' potential liability and damages.  (Id. at 9-10.)  Plaintiffs also maintain that, because Defendants dispute Plaintiffs' innocence, excluding evidence of their innocence would be unfairly prejudicial in contravention of Federal Rule of Evidence ("Rule") 403.  (Id. at 12-13.)  Defendants oppose the Motion, contending that evidence of actual innocence is not relevant to the remaining claims, and that its admission would substantially outweigh its probative value.  (Dkt. No. 333 at 4.)  After considering these arguments, this Court denies Plaintiffs' Motion.

Although this Court previously indicated that evidence of Plaintiffs' innocence could be relevant to the issues in this case, (see Dkt. No. 338 at 7), that discussion is not dispositive on this particular issue.  After all, evidence that the State of Oklahoma declared Plaintiffs actually innocent differs from evidence tending to prove that Plaintiffs were, in fact, innocent.  *See Murphy v. City*

---

[3] The District Court of Tulsa County granted Plaintiffs' Applications for Post-Conviction Relief on May 13, 2016,  and concluded that "the Petitioners are actually innocent of the murder of Karen Summers and the other attendant offenses for which they were convicted."  *Carpenter v. Oklahoma*, No. CF-1994-4356, at *1033297470 (Okla. Dist. May 13, 2016) (Okla. State Courts Network) (order granting post-conviction relief).  The State of Oklahoma appealed, and the Court of Criminal Appeals denied the State's appeal, and affirmed the District Court of Tulsa County's order granting post-conviction relief.  *Carpenter v. Oklahoma*, No. PC-2016-498, at *1034513329 (Okla. Crim. App. Nov. 10, 2016) (Okla. State Courts Network) (mandate denying the State's appeal and affirming the order granting post-conviction relief).

*of Tulsa*, No. 15-528, 2017 WL 11414374, at *1-2 (N.D. Okla. Sept. 20, 2017) (distinguishing a "state court's finding of 'actual innocence,' [which] was merely a threshold finding for the purpose of initiating a government tort claim against the State of Oklahoma," from a "final determination of [the plaintiff's] actual innocence").  The former evidence, though perhaps probative, carries with it the potential of undue prejudice to Defendants.  *See id.*  And, at this pre-trial stage, this Court cannot accurately determine the probative value of such evidence, nor can this Court properly evaluate potential prejudice.  Those questions are better left for trial.  *See Delaney*, 766 F. Supp. 3d at 1189 (stating that "a court is almost always better situated during [an] actual trial to determine the probative value of evidence"); *see also Malinski*, 2017 WL 1278671, at *1 (explaining that unless evidence is "clearly inadmissible on all potential grounds," courts defer evidentiary rulings "until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context" (quoting *Hawthorne Partners*, 831 F. Supp. at 1400)).  This Court thus denies Plaintiffs' Motion to admit wholesale evidence of their declaration of actual innocence by the State of Oklahoma.

Still, this Court does foresee potentially permissible purposes for admitting the declaration of actual innocence.  Should Plaintiffs wish to move into evidence the declaration, they may do so only after consulting Defendants' counsel to draft a stipulation or limiting instruction.[4]  *See Patrick v. City of Chicago, Ill.*, 974 F.3d 824, 834 (7th Cir. 2020) (holding that a district court did not err in admitting a certificate of innocence and that the judge properly instructed the jury to minimize the risks of unfair prejudice and confusing the jury); *cf. Lewis v. City of Chicago, Ill.* No. 11-5323, 2013 WL 12618018, at *5 (N.D. Ill. Apr. 9, 2013) (deferring ruling on a motion *in limine* and

---

[4] Absent a stipulation or jointly proposed limiting instruction, Plaintiffs can request at trial that this Court give a limiting instruction.

directing the parties to "confer and attempt to agree on a stipulation that notes the disposition of [the] Plaintiff['s'] criminal charges and explains what it means for a case to be stricken with leave to reinstate and that it is not necessarily evidence of actual innocence"). As to any other evidence of Plaintiffs' innocence, the Court will consider such evidence at trial when it can examine the evidence with proper context. *See Murphy*, 2017 WL 11414374, at *2.

**Plaintiffs' Motion *in Limine* No. 2 Regarding Excessive and Personal References to Gangs**

Plaintiffs move this Court to bar Defendants from referring to Plaintiffs' alleged gang affiliation and from making other comments about gangs. (Dkt. No. 322 at 15.) They say that such evidence is irrelevant under Rule 402, is highly prejudicial in violation of Rule 403, and constitutes inadmissible propensity evidence under Rule 404(b). (Id. at 18-19.) Defendants counter, arguing that Ken Price ("Price") and Rashun Williams ("Williams")—the allegedly coerced witnesses—were members of the Hoover Crips gang, and both believed Plaintiffs Carpenter and Scott were members of a rival gang. (Dkt. No. 333 at 6.) Those beliefs, Defendants aver, tend to show that Price and Williams were motivated to make false statements due to their alleged rival gang membership, not because of any alleged coercion or fabrication by Defendants. (Id.) This Court denies Plaintiffs' Motion without prejudice.

To be sure, evidence of gang affiliation may be "excluded as irrelevant and unduly prejudicial where there is no evidence the arresting officer knew of such affiliation." *Hawkins v. Walsh*, No. 16-98, 2018 WL 1463351, at *4 (N.D. Miss. Mar. 23, 2018); *see also Anderson v. City of Chicago*, No. 09-2311, 2010 WL 4811937, at *2 (N.D. Ill. Nov. 19, 2010) (barring the defendant officers from introducing evidence of the plaintiffs' gang membership for a particular purpose because there was no sign that the officers knew about such gang affiliation before their alleged violations and because of the substantially prejudicial effect of such evidence). But when such

evidence shows that an officer knew of a person's gang affiliation, that evidence may be relevant as a defense to a § 1983 claim. *See Hawkins*, 2018 WL 1463351, at *4. What is more, evidence showing that the recanting witnesses had independent motivations to give false statements to police may tend to disprove Plaintiffs' case.

Such is the case here. Defendants allege that during Price's recorded interview with Defendant Meek, Price discussed his gang membership and his belief that Plaintiff Scott belonged to a rival gang, putting Defendant Meek on notice of potential gang membership. (Dkt. No. 333 at 7.) In addition, there is evidence to suggest that both Price and Williams wanted revenge against Plaintiffs because of Plaintiffs' alleged membership in then-recent gang-related activities. (Id. at 8.) At this pre-trial stage, this Court cannot properly evaluate the probative and prejudicial value of gang-membership evidence. This Court accordingly denies Plaintiffs' Motion *in Limine* No. 2 without prejudice.

Of course, evidence of Plaintiffs' gang affiliation carries with it a significant danger of undue prejudice. So, should Defendants seek to admit such evidence, Plaintiffs may raise specific and timely objections or suggest a limiting instruction. This Court will be better situated to rule on those objections at trial.[5]

---

[5] In their reply brief, Plaintiffs argue—for the first time—for the exclusion of a specific Tulsa County Sheriff Intelligence Report. (Dkt. No. 342 at 3.) The report mentions that Williams told "law enforcement that Plaintiff Carpenter [had] participated in a gang-related shoot-out a week prior to the [Summers] homicide." (Id.) Defendants say that the report constitutes inadmissible hearsay, inadmissible character evidence, irrelevant evidence, and unduly prejudicial evidence. (Id. at 3-4.) But this argument is doubly flawed. First, this Court does not consider arguments raised for the first time in a reply brief when the argument could have been raised in the opening brief. *See Rural Water Dist. No. 5 Wagoner Cnty. v. City of Coweta*, 949 F. Supp. 2d 1091, 1099 (N.D. Okla. 2013). Second, the report could be offered for admissible non-hearsay purposes, *see infra* at 12-13 (discussing permissible uses of statements that would otherwise be hearsay), or admissible purposes under Rule 404(b), *see infra* at 8. And, as this Court has repeatedly explained, evaluating probative value and prejudicial effect is a calculation better left for trial.

**Plaintiffs' Motion *in Limine* No. 3 Regarding Prior Bad Acts, Prior Convictions, and Character Evidence**

Plaintiffs press this Court to bar Defendants from referring to "any prior or alleged subsequent bad acts or character evidence of the Plaintiffs and third-party witnesses at trial." (Dkt. No. 322 at 20.)  Conversely, Defendants say that such evidence may be required—and permissible—depending on Plaintiffs' presentation at trial.  (Dkt. No. 333 at 10-11.)  This Court agrees with Defendants.

Rule 404 prohibits propensity evidence, that is, evidence of a person's character or character trait offered "to prove that on a particular occasion the person acted in accordance with th[at] character or trait."  Fed. R. Evid. 404(a)(1).  Yet the Rule does permit a party to introduce "[e]vidence of any other crime, wrong, or act . . . for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  The admissibility of such evidence "depend[s] heavily on the context in which the evidence is offered." *United States v. Haas*, No. 21-0160, 2021 WL 4499404, at *3 (N.D. Okla. Oct. 1, 2021).  Indeed, the Tenth Circuit has elucidated four factors for district courts to consider when evaluating evidence offered under Rule 404(b): "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests."  *United States v. Cardinas Garcia*, 596 F.3d 788, 797 (10th Cir. 2010) (quoting *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006)).

Given this multi-factor, context-dependent determination—coupled with Defendants' plausible and potentially probative reasons for seeking to introduce evidence of prior bad acts—this Court finds it premature to rule in Plaintiffs' favor and, thus, denies without prejudice Plaintiffs' Motion *in Limine* No. 3.  Though the prior acts Defendants may seek to introduce could

be prejudicial, this Court cannot speculate as to the probative value of such evidence without the context of trial. *See Delaney*, 766 F. Supp. 3d at 1189. So this Court will address this issue at trial if Plaintiffs properly raise it.

**Plaintiffs' Motion *in Limine* No. 4 Regarding References to Dismissed Defendants and Claims**

Plaintiffs request that this Court bar evidence of any individuals and claims dismissed from this suit. (Dkt. No. 322 at 23.) Citing Rules 401, 402, and 403, they claim that such evidence is irrelevant and could mislead and unduly prejudice the jury. (Id. at 24.) Though Defendants agree that there is no reason to introduce evidence of the defendants and individuals dismissed from this suit, Defendants ask this Court to defer ruling on this Motion. (Dkt. No. 333 at 11-12.) Defendants contend that they should be able to raise the fact that certain defendants and claims were dismissed if Plaintiffs make arguments to the jury that relate to those dismissed defendants and claims. (Id. at 12.)

The Court finds that Plaintiffs' Motion is premature and will address the issue if it arises at trial. Accordingly, this Court denies Plaintiffs' Motion *in Limine* No. 4 without prejudice.

**Plaintiffs' Motion *in Limine* No. 5 Regarding Witnesses Commenting on the Credibility of Other Witnesses**

Plaintiffs ask this Court to preclude all witnesses from testifying on the "credibility of any other witness, party, or non-party." (Dkt. No. 322 at 25.) They contend that allowing such testimony would usurp the jury's role, improperly influence the jury, potentially extend the length of trial, and otherwise distract the jury from its task of determining the accuracy of witness testimony. (Id. at 26.) In response, Defendants urge this Court to deny Plaintiffs' Motion because Defendants should be "able to talk about . . . whether in their training and experience they believed the witnesses they talked to." (Dkt. No. 333 at 12.) Such evidence, Defendants submit, is relevant

and admissible in defending against Plaintiffs' allegations that Defendants manipulated evidence related to what witnesses told them.  (Id. at 12-13.)

Rule 608(a) permits parties to attack a witness's credibility with reputation or opinion evidence about the witness's truthfulness.  *See Payne v. Myers*, No. 14-39, 2016 WL 3884169, at *2 (N.D. Okla. Jan. 21, 2016) (finding that evidence of a witness's truthfulness is admissible under Rule 608(a) so long as it complies with that rule's requirements).  In that way, testimony about witness credibility could be permissible; but without adequate context, this Court cannot make the call in Plaintiffs' favor.  What is more, Defendant Meek's and Solomon's personal perceptions about whether <u>they</u> personally believed Plaintiffs do not impermissibly usurp the role of the jury.  So this Court denies Plaintiffs' Motion *in Limine* No. 5 without prejudice.  Should Defendants wish to introduce testimony improperly attacking the credibility of other witnesses, however, Plaintiffs may raise timely and specific objections thereto.

### Plaintiffs' Motion *in Limine* No. 7 Regarding Evidence of Defendants' Commendations and Other References to Good Character

Plaintiffs move this Court to exclude evidence of Defendants' commendations, awards, promotions, performance reviews, and other references to Defendants' good character under Rule 404(a).  (Dkt. No. 322 at 27-28.)  Defendants counter, arguing that the very nature of Plaintiffs' claims inherently impugns Defendants' character for truthfulness.  (Dkt. No. 333 at 14.)  And so, Defendants' argument goes, they must be able to offer—at the outset—the disputed evidence to rehabilitate their character for truthfulness under Rule 608(a).  This Court grants in part and denies in part Plaintiffs' Motion.  On the one hand, this Court does not permit Defendants to preemptively introduce evidence of their accolades.  Such evidence would run afoul of Rule 404(a).  On the other hand, Defendants' point is well-taken: their alleged misconduct underlying Plaintiffs' claims is such that Plaintiffs inevitably will impugn Defendants' character for truthfulness.  This Court

will evaluate at the time of trial whether Plaintiffs' proffers open the door for Defendants to introduce evidence of their accolades to rehabilitate their character. For these reasons, this Court grants in part and denies in part Plaintiffs' Motion *in Limine* No. 7.

**B.    Defendants' Motions *in Limine***

Having ruled on each of Plaintiffs' Motions, this Court turns to Defendants' Motions. To begin, this Court expeditiously disposes of several of Defendants' Motions. For one thing, Plaintiffs have not contested Defendants' Motions *in Limine* Nos. 10, 12, and 14.[6] So this Court grants those motions. And, for another thing, Defendants have failed to adequately develop several motions—specifically, Defendants' Motions *in Limine* Nos. 3, 4, 5, 7, and 9—so this Court denies those as well.[7] Take, for instance, Motion *in Limine* No. 3. Through it, Defendants seek to exclude "any evidence of any aspect of th[e] investigation other than the interviews of Ken Price and Rashun Williams." (Dkt. No. 321 at 15.) Consider, too, Motion *in Limine* No. 7, which seeks to bar "any evidence or mention of the interrogation of Plaintiffs during the investigation." (Id. at 19.) As presented to this Court, those motions *in limine* are cursory and overly broad. In other

---

[6] Defendants' Motion *in Limine* No. 10 seeks to exclude evidence of the investigation and prosecution of Defendant Carpenter for the shooting of Sheldon Reed in 2019. (Dkt. No. 321 at 21.) Defendants' Motion *in Limine* No. 12 requests exclusion of any assertions that minors were interviewed in violation of an Oklahoma state statute. (Id. at 22.) And Defendants' Motion *in Limine* No. 14 asks this Court to bar any evidence of media coverage relating to Plaintiffs' arrest, prosecution, conviction relief efforts, and vacated convictions. (Id. at 26.) Plaintiffs have not contested Defendants' Motions *in Limine* Nos. 10, 12, and 14. (Dkt. No. 334 at 33, 35, 44.)

[7] Defendants' Motion *in Limine* No. 3 urges this Court to bar any evidence of the investigation into the 1994 shooting besides the interviews of Price and Williams. (Dkt. No. 321 at 15.) In Defendants' Motion *in Limine* No. 4, they move to exclude any evidence of the investigation of Michael Wilson. (Id. at 16.) In Defendants' Motion *in Limine* No. 5, they press for excluding any evidence of statements made by Alonzo Johnson. (Id. at 17.) Defendants' Motion *in Limine* No. 7 implores this Court to preclude any evidence of the interrogation of Plaintiffs during the investigation into Summers' homicide. (Id. at 19.) And Defendants' Motion *in Limine* No. 9 entreats this Court to exclude evidence of any allegedly wrongful actions by a Tulsa Police Department officer besides Defendants. (Id. 20.)

words, the motions "fail[] to identify the evidence with particularity or to present arguments with specificity." *Read*, 2022 WL 17820158, at \*4; *see Kimzey v. Diversified Servs., Inc.*, No. 15-1369, 2017 WL 131614, at \*1 (D. Kan. Jan. 13, 2017) (explaining that a motion *in limine* attempting to prohibit "generic, unspecified 'prejudicial' testimony" is not useful and is properly denied). So this Court rejects them.[8]

### Defendants' Motion *in Limine* No. 1 Regarding Affidavits of Price, Williams, and Darrell Benson

Defendants move to exclude the affidavits of Price, Williams, and Darrell Benson ("Benson"). (Dkt. No. 321 at 7, 10.) They argue that these affidavits constitute inadmissible hearsay. (Id.)

Hearsay is "an out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement." *United States v. Peppers*, 138 F.4th 1299, 1308 (10th Cir. 2025) (alteration in original) (quoting Fed. R. Evid. 801(c)). It "is generally inadmissible as evidence because it is considered unreliable." *Id.* (quoting *United States v. Lozado*, 776 F.3d 1119, 1121 (10th Cir. 2015)). But a statement that is otherwise hearsay may be offered for a permissible purpose. *See, e.g.*, *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008) (explaining that a statement "admitted for impeachment purposes . . . is not hearsay"); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) ("Statements offered for the effect on the listener . . . are generally not hearsay."); *Creaghe v. Iowa Home Mut. Cas. Co.*, 323 F.2d 981, 984

---

[8] To be sure, Defendants do make some attempt in their reply brief to sharpen their arguments. But allowing them to make skeletal arguments in the opening brief and then to put meat on the arguments' bones in reply "would be manifestly unfair to [Plaintiffs,] who" would be deprived of any meaningful opportunity to submit a written response. *See Rural Water Dist. No. 5 Wagoner Cnty.*, 949 F. Supp. 2d at 1099 (quotation marks omitted) (quoting *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994)). This Court thus does not consider the more developed arguments raised in Defendants' reply brief.

(10th Cir. 1963) (not hearsay when offered "to prove only that a statement was made and not the truth of the statement" (citing *Smedra v. Stanek*, 187 F.2d 892, 894 (10th Cir. 1951))).

These legal principles frame this Court's assessment of Price's, Williams's, and Benson's affidavits. And because there are potentially permissible purposes for admitting each of the affidavits, this Court denies Defendants' Motion *in Limine* No. 1.

Start with Price's affidavits. Defendants move to exclude them on the grounds that they are inadmissible hearsay, and that Price is available to testify at trial, which precludes use of his affidavits. (Dkt. No. 321 at 10.) Plaintiffs, however, say that they will subpoena Price to testify at trial in lieu of seeking to admit his affidavits. (Dkt. No. 334 at 10-11.) In any event, Plaintiffs insist, the affidavits are potentially admissible for non-hearsay purposes, so this Court should defer ruling on the Motion until trial. (Id. at 11.) This Court agrees. At this pre-trial stage, this Court cannot speculate as to what non-hearsay purpose Price's affidavits will serve. So this Court denies without prejudice Defendants' Motion *in Limine* No. 1 as to Price's affidavits. Defendants may timely and specifically contest the admissibility of the affidavits at trial.

Then move to William's and Benson's affidavits. Citing the rules against hearsay, Defendants move to exclude them, arguing that there are no exceptions or non-hearsay purposes for their admission. (Dkt. No. 321 at 7-8, 10-11.) Plaintiffs disagree, contending that both Williams's and Benson's affidavits are admissible under Rules 804(b)(3)(A) and 807. (Dkt. No. 334 at 12, 16.) Plaintiffs are correct.

Rule 804(b)(3)(A) articulates the "statement-against-penal-interest" exception to the rule against hearsay. *United States v. Salas-Aguayo*, No. 12-3109, 2024 WL 453642, at *18 (D.N.M. Feb. 6, 2024). For Rule 804(b)(3)(A) to apply to a self-inculpatory, out-of-court statement, a party must establish that (1) "the declarant is unavailable," and (2) the statement is against the declarant's

penal interest because "a reasonable person in the declarant's position would not have made the statement unless she believed it to be true because, when made, it exposed [her] to criminal liability."[9] *Id.* (quoting *United States v. Hammers*, 942 F.3d 1001, 1010 (10th Cir. 2019)). "This hearsay exception 'is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true.'" *Peppers*, 138 F.4th at 1308 (quoting *United States v. Yellowhorse*, 86 F.4th 1304, 1307 (10th Cir. 2023)).

William's and Benson's affidavits satisfy these requirements. As to the first element, Plaintiffs allege that both Williams and Benson are deceased and thus unavailable. (Dkt. No. 334 at 12, 16.) As to the second, Williams and Benson later recanted their sworn testimony in the original trial, exposing themselves to criminal liability for submitting false affidavits. (*Id.*)

Because Williams's and Benson's affidavits may be admissible under Rule 804(b)(3)(A), and for other purposes besides proving the truth of the matter asserted, Defendants have therefore failed to show that such evidence is clearly inadmissible on all potential grounds. This Court defers deciding the admissibility of Williams's and Benson's affidavits until trial. And so, this Court denies without prejudice Defendants' Motion *in Limine* No. 1 as to Price's, Williams's, and Benson's affidavits.

### Defendants' Motion *in Limine* No. 2 Regarding Plaintiffs' Actual Innocence or Claim of "Innocence"

Defendants request that this Court exclude any evidence of Plaintiffs' innocence, including any determination of Plaintiffs' "actual innocence." (Dkt. No. 321 at 11.) They advance largely

---

[9] In a criminal case, a party must also prove that the statement was "supported by corroborating circumstances that clearly indicate its trustworthiness." *Salas-Aguayo*, 2024 WL 453642, at *18 (quoting Fed. R. Evid. 804(b)(3)(B)). This matter is, of course, a civil suit, so Rule 804(b)(3)(B)'s corroborating circumstances requirement does not apply.

the same arguments as in their Response to Plaintiffs' Motion *in Limine* No. 1.  (Dkt. No. 333 at 1-5.)  For the same reasons underlying the denial of Plaintiffs' Motion *in Limine* No. 1, this Court denies without prejudice Defendants' Motion *in Limine* No. 2.  Defendants may raise timely and specific objections to evidence of Plaintiffs' innocence at trial, at which time the Court will consider such evidence in its proper context.

### Defendants' Motion *in Limine* No. 6 Regarding the Failure to Conduct Forensic Testing

Defendants ask this Court to exclude any evidence of the failure to conduct forensic testing on physical evidence.  (Dkt. No. 321 at 18.)  Defendants maintain that, because this Court ruled that the failure to conduct forensic testing did not amount to a constitutional violation, (see Dkt. No. 302 at 20), there are no remaining claims to which such failure is relevant.  (Dkt. No. 321 at 18.)  Defendants also argue that failing to investigate a matter fully is mere negligence and does not establish Defendants' knowledge or recklessness.  (Id.)  Refuting Defendants' Motion, Plaintiffs aver that testimony about failing to conduct forensic testing concerns Defendants' state of mind, which is relevant to proving the *mens rea* element of Plaintiffs' substantive due process claims.  (Dkt. No. 334 at 30.)  Plaintiffs also contend that Defendants' inaction is relevant to proving that officers fabricated and suppressed evidence.  (Id. at 31.)  The Court denies Defendants' Motion.

Though this Court did rule that a failure to conduct forensic testing was not a constitutional violation, (Dkt. No. 302 at 20), evidence of that failure may be relevant to Plaintiffs' remaining claims.  For instance, as Plaintiffs argue, evidence of the failure to conduct forensic testing may be relevant to proving that Defendants "knowingly fabricated evidence"—an element of Plaintiffs' substantive due process claims—and that "the prosecution suppressed evidence"—an element of

Plaintiffs' *Brady* claim.  (Id. at 19, 21.)  Because Defendants have not shown that the evidence is clearly inadmissible on all potential grounds, this Court denies their Motion *in Limine* No. 6.

### Defendants' Motion *in Limine* No. 8 Regarding the Investigatory Steps Not Taken

Defendants move this Court to exclude any evidence of steps not taken during the investigation of the 1994 shooting.  (Dkt. No. 321 at 19.)  They identify two such steps: (1) not interviewing particular people and (2) not conducting a photo lineup that included Michael Wilson. (Id.)  According to Defendants, evidence of the investigatory steps not taken is not relevant to any remaining claims, would mislead the jury, would result in unfair prejudice that exceeds its probative value, and is not enough to show that Defendants acted knowingly.  (Id. at 19-20.) Plaintiffs assert that evidence of the investigatory steps not taken speaks to Defendants' state of mind.  (Dkt. No. 334 at 32.)  As Plaintiffs put it, Defendants' failure to take certain steps may show a deviation from acceptable police practices, which is relevant to whether Defendants knowingly and deliberately framed Plaintiffs.  (Dkt. Nos. 319 at 9, 334 at 32.)

This Court denies Defendants' Motion because evidence of the investigatory steps not taken may be relevant to one or more of the claims proceeding to trial.  For instance, to prevail on their substantive due process claims, Plaintiffs must prove that "the defendant knowingly fabricated evidence."  (Dkt. 302 at 21.)   And evidence of steps not taken during the investigation may help the jury resolve two outstanding questions of fact: (1) whether Defendant Solomon knowingly put inaccurate information in the police report and (2) whether Defendant Meek knowingly fabricated evidence by coercing Price and Williams to identify Plaintiffs as the shooters.  (Id. at 22.)  Such evidence may also be relevant to Plaintiffs' remaining *Monell* claim based on the single-incident failure-to-train theory of municipal liability.  This Court previously identified "a genuine issue of material fact as to whether [Tulsa Police Department ("TPD")]

officers were trained in adequate interview and interrogation practices and the obligations outlined in *Brady*." (Id. at 18.) And evidence of neglect—or, worse yet, intentional omissions—during the investigation may help the jury resolve this issue.

Given that the evidence Defendants seek to exclude is not clearly inadmissible on all potential grounds, the Court denies Defendants' Motion *in Limine* No. 8.

**Defendants' Motion *in Limine* No. 11 Regarding the Investigation and Prosecution of Corey Atchison or Other Lawsuits Against the City of Tulsa**

Defendants ask this Court to exclude any evidence of the investigation and prosecution of Corey Atchison ("Atchison"), who brought allegations like those here against Defendant Meek and others. (Dkt. No. 321 at 21-22.) They also ask this Court to bar evidence of other lawsuits previously filed against Defendant Tulsa. (Id. at 21.) Plaintiffs state that they do not intend to reference other lawsuits, but they argue that they may introduce evidence of Atchison's claims for the purposes enumerated in Rule 404(b)(2), such as for proving absence of mistake. (Dkt. No. 334 at 33-34.) Instead of wholesale exclusion, Plaintiffs maintain that a limiting instruction would more appropriately guard against unfair prejudice or confusion of issues. (Id. at 35.)

The Court finds that Defendants' Motion is premature and therefore denies it without prejudice. Should Plaintiffs seek to offer evidence at trial of other lawsuits filed against Defendant Tulsa, Defendants may raise timely and specific objections for this Court's consideration.

**Defendants' Motion *in Limine* No. 13 Regarding Prior Allegations Against Defendants' Expert John Ryan**

Defendants move the Court to bar Plaintiffs from cross-examining Defendants' expert John Ryan ("Ryan") about allegations and investigations related to cheating on promotional exams at the Providence Police Department. (Dkt. No. 321 at 24.) Defendants so move because they claim that Rule 608(b) precludes evidence of prior acts that are remote in time, and these allegations are

from over fifteen years ago.  (Id. at 25.)  And Defendants aver that such allegations are not relevant to any issue in the case and their prejudicial effect outweighs their probative value.  (Id.)

Plaintiffs dispute Defendants' Motion for several reasons.  First, Plaintiffs contend that Defendants mischaracterize Ryan's involvement in what was a "cheating scandal," which the FBI investigated, uncovering bribery, conspiracy, and extortion.  (Dkt. No. 334 at 37.)  Plaintiffs next argue that this incident is relevant and admissible because Rule 608(b) permits cross-examination when prior acts that did not result in a conviction are probative of untruthful conduct.  (Id. at 39-40.)  Plaintiffs then assert that the prior acts are relevant to assessing Ryan's credibility and exposing his financial bias.  (Id. at 40-41.)  And Plaintiffs finally press the argument that the Motion is premature and that evidence of the scandal "cannot possibly show *unfair* prejudice" because Plaintiffs retained Ryan as an expert witness.  (Id. at 42-43.)  This Court denies Defendants' Motion.

Under Rule 608(b):

> [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

*Entrata, Inc. v. Yardi Sys., Inc.*, No. 15-102, 2019 WL 4165121, at *6 (D. Utah Sep. 3, 2019) (quoting Fed. R. Evid. 608(b)(1)).  "Acts admissible under Rule 608(b) include 'forgery, uttering forged instruments, bribery, suppression of evidence, false pretenses, cheating, [and] embezzlement . . . .'"  *United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987) (citation omitted).

The allegations against Ryan concern an incident involving bribery and cheating—acts which are probative of Ryan's character for truthfulness and are thus admissible under Rule 608(b).  *See id.*  And this Court rejects Defendants' contention that the evidence is not relevant because

"once a witness takes the stand, his credibility is at issue." *Augé v. Stryker Corp.*, No. 14-1089, 2021 WL 3290693, at *2 (D.N.M. Aug. 2, 2021) (citation modified).  Given that evidence of Ryan's alleged involvement in the incident is probative of Ryan's character for truthfulness, and because the jury will need to assess Ryan's credibility, such evidence is relevant under Rule 401's liberal definition of relevance.[10]  *See Augé*, 2021 WL 3290693, at *2.

Nor does this Court find the allegations against Ryan to be so remote in time to warrant exclusion.  Evidence that is "so 'remote in time'" may be excluded under Rule 608(b) and "remoteness in time affects the probative nature of the evidence" under Rule 403.  *Id.* (citation modified) (quoting *United States v. Beltran-Garcia*, 338 F. App'x 765, 772 (10th Cir. 2009)).  But in *Hampton v. Dillard Dep't. Stores, Inc.*, the Tenth Circuit held that a district court did not err in allowing impeachment of a witness on a twenty-year-old fraud charge because the charge, though "remote in time," was probative of the witness's character for truthfulness and the witness could explain the incident.  247 F.3d 1091, 1114 (10th Cir. 2001).  The Tenth Circuit emphasized, too, that the application of Rule 608(b) "is explicitly within the discretion of the district court."  *Id.* Here, as in *Hampton*, Ryan's alleged involvement in the incident is remote in time (fifteen years old); but such evidence may still be probative of Ryan's character for truthfulness and Ryan may still be able to explain the incident.

Lastly, the Court declines to exclude the evidence under Rule 403 because that determination is premature.  This Court nonetheless cautions Plaintiffs to avoid excessive focus on Ryan's involvement in the scandal.  It is probative of Ryan's truthfulness, to be sure; but

---

[10] Relevant evidence is "that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *United States v. Parson*, 84 F.4th 930, 938 (10th Cir. 2023) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993) (quoting Fed. R. Evid. 401)).  "The relevancy standard set out in the Federal Rules of Evidence 'is a liberal one.'"  *Id.*

exorbitant questioning of Ryan's involvement in the fifteen-year-old scandal may become unduly prejudicial, warranting exclusion under Rule 403.

So, at this stage, this Court denies without prejudice Defendants' Motion *in Limine* No. 13. Defendants may raise timely objections to Plaintiffs' cross-examination at trial.

## IV.    CONCLUSION

Based on the foregoing, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motions (Dkt. No. 322) as follows:

1.    Plaintiffs' Motion *in Limine* No. 1 Regarding Evidence that Plaintiffs Were Declared Actually Innocent is **denied**;

2.    Plaintiffs' Motion *in Limine* No. 2 Regarding Excessive and Personal References to Gangs is **denied without prejudice**;

3.    Plaintiffs' Motion *in Limine* No. 3 Regarding Prior Bad Acts, Prior Convictions, and Character Evidence is **denied without prejudice**;

4.    Plaintiffs' Motion *in Limine* No. 4 Regarding References to Dismissed Defendants and Claims is **denied without prejudice**;

5.    Plaintiffs' Motion *in Limine* No. 5 Regarding Witnesses Commenting on the Credibility of Other Witnesses is **denied without prejudice**;

6.    Plaintiffs' Motion *in Limine* No. 6 Regarding References to Collateral Source Payments is **granted**;

7.    Plaintiffs' Motion *in Limine* No. 7 Regarding Evidence of Defendants' Commendations and Other References to Good Character is **granted in part and denied in part**;

8.    Plaintiffs' Motion *in Limine* No. 8 Regarding References to Plaintiffs' Decision Not to Testify at their Criminal Trial is **granted**; and

9. Plaintiffs' Motion *in Limine* No. 9 Regarding Arguments Appealing to Jurors' Pecuniary Interests as Taxpayers is **granted**.

**FURTHER** this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions (Dkt. No. 321) as follows:

1. Defendants' Motion *in Limine* No. 1 Regarding Affidavits of Ken Price, Rashun Williams, and Darrell Benson is **denied without prejudice**;

2. Defendants' Motion *in Limine* No. 2 Regarding Plaintiffs' Actual Innocence or Claim of "Innocence" is **denied without prejudice**;

3. Defendants' Motion *in Limine* No. 3 Regarding any Mention of this Investigation Other than the Interviews of Ken Price and Rashun Williams is **denied**;

4. Defendants' Motion *in Limine* No. 4 Regarding the Investigation and Prosecution of Michael Wilson is **denied**;

5. Defendants' Motion *in Limine* No. 5 Regarding the Statements of Alonzo Johnson is **denied**;

6. Defendants' Motion *in Limine* No. 6 Regarding the Failure to Conduct Forensic Testing is **denied**;

7. Defendants' Motion *in Limine* No. 7 Regarding the Interrogation of Plaintiffs is **denied**;

8. Defendants' Motion *in Limine* No. 8 Regarding the Investigatory Steps Not Taken is **denied**;

9. Defendants' Motion *in Limine* No. 9 Regarding the Wrongful Actions by Unnamed or Unidentified Police Officers is **denied**;

10. Defendants' Motion *in Limine* No. 10 Regarding the Investigation and Prosecution of De'Marchoe Carpenter for the Shooting of Sheldon Reed is **granted**;

11. Defendants' Motion *in Limine* No. 11 Regarding the Investigation and Prosecution of Corey Atchison or Other Lawsuits Against the City of Tulsa is **denied without prejudice**;

12. Defendants' Motion *in Limine* No. 12 Regarding any Assertion that Minors were Interviewed in Violation of a State Statute is **granted**;

13. Defendants' Motion *in Limine* No. 13 Regarding Prior Allegations Against Defendants' Expert John Ryan is **denied without prejudice**; and

14. Defendants' Motion *in Limine* No. 14 Regarding Evidence of Media Coverage Relating to Plaintiffs is **granted**.

**IT IS SO ORDERED.**

Given that this Court has resolved all pre-trial matters, this Court will issue a separate order with instructions for the parties.


DATED: August 29, 2025

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation